UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | CR 22-482-GW | Date: April 21, 2023 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

Interpreter **NONE**

| Javier Gonzalez | None Present | Brian R. Faerstein - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jerry Nehl Boylan | not | | ✔ | Georgina Wakefield | not | | ✔ |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANT JERRY NEHL BOYLAN'S MOTION TO COMPEL GOVERNMENT TO PERMIT DEFENSE EXAMINATION OF DIGITAL DEVICES; EXCLUDING DATA FROM THE DEVICES AT TRIAL IN THE ALTERNATIVE [28]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [28] set for hearing on April 24, 2023 at 11:00 a.m.

: 

Initials of Deputy Clerk   JG

<u>**United States of America v. Boylan**</u>, Case No. 22-CR-482-GW
Tentative Ruling on Motion to Compel Government to Permit Defense Examination of Digital Devices; Excluding Data From the Devices at Trial in the Alternative

      Defendant Jerry Nehl Boylan ("Defendant") is charged in a single-count indictment with violating 18 U.S.C. § 1115, covering "misconduct or neglect of ship officers," in connection with a fire and the resulting death of 34 individuals on board the passenger vessel *Conception* while it was located in navigable waters near Santa Cruz Island in the Pacific Ocean. He now moves to compel plaintiff United States of America ("Plaintiff") to permit a defense inspection of four digital devices – apparently three iPhones and one iPad, *see* Docket No. 34, at 4:7-9 – recovered from the wreck of the *Conception* from which data was able to be extracted or, in the alternative, to exclude data from those devices at trial. According to Defendant, Plaintiff has produced only limited material from the devices that its own agents have identified as relevant to the prosecution, but Defendant seeks the ability to inspect complete copies of the devices.

      Defendant presents several reasons why he should be given the requested material, but the first explanation is the focus of his argument.[1] He argues that the devices meet the requirements of two of the three categories of "documents and objects" the government must permit a defendant to inspect and copy upon request – that is, "if the item is within the government's possession, custody, or control" – under Rule 16 of the Federal Rules of Criminal Procedure because they are "material to preparing the defense" and "the government intends to use the item in its case-in-chief at trial." Fed. R. Crim P. 16(a)(1)(E)(i)-(ii).

      The Court has little difficulty in concluding that the devices are "material to preparing the defense" both because Defendant correctly observes that the materiality bar is a "low" one to surpass[2] and because Plaintiff clearly believes that the content of the devices is – or at least could have been, with respect to the device (the iPad) on which Plaintiff ultimately found no evidence it

---

[1] Because, as discussed *infra*, Defendant is able to show that the devices fall within the Rule 16(a)(1)(E)(i)-(ii) categories, the issues of whether: 1) the devices would also fit within material that must be turned over pursuant to Plaintiff's *Brady* obligation (an obligation that calls for *it* to make determinations regarding what to turn over), or 2) the Court should, merely as an exercise of its discretion, order Plaintiff to permit Defendant's inspection, need not be reached.

[2] *See, e.g.*, *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) and *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Information that is not exculpatory or impeaching may still be relevant to developing a possible defense. Even inculpatory evidence may be relevant [because it may alter trial strategy or lead to seeking a plea agreement].") (omitting internal citation).

1

considered relevant – relevant to prosecuting Defendant, meaning that Defendant will need to be prepared to address it in this action. Indeed, Plaintiff itself states that "one of the victim's phones contained a video, taken during the deadly fire, showing that the passengers were alive but trapped in the ship's bunkroom three minutes <u>after</u> defendant abandoned ship and ordered his crew to do the same." Docket No. 34, at 2:11-15. Even beyond that example of direct evidence, at a minimum Defendant will have to be prepared to understand and meaningfully-address the process by which Plaintiff claims to have prepared and successfully extracted data from the devices following their recovery from a ship on the bottom of the bay.

Plaintiff is understandably concerned about privacy-related issues in connection with Defendant's pursuit of the material in question.[3] In one approach to attempting to defeat the motion, Plaintiff insists that the devices have already been reviewed for "responsiveness." However, as Defendant points out, there is no obvious or logical reason why he should rely on the say-so of his litigation opponent in that respect.

Plaintiff's principal response on the motion is to argue that it no longer has "access to" the devices in question – and that, therefore, they are no longer in its "possession, custody, or control" – because the warrant giving them initial access to several of the devices does not operate in perpetuity (*i.e.*, it does not allow it to "re-access" those devices) and because the consent granted by decedents' relatives as to other devices was limited in scope.[4] *See, e.g.*, *United States v. Huizar*, No. 2:20-cr-00326-JFW, Docket No. 597, at 33:5-37:15 (C.D. Cal. July 6, 2022). Plaintiff asserts that "courts presented with such arguments have consistently reached the commonsense conclusion that defendants cannot compel the government to violate other people's Fourth Amendment rights." Docket No. 34, at 10:8-11.

Defendant responds in his Reply that Plaintiff relies on cases and principles reliant on Fourth Amendment protections, but argues that none of those cases involve the property of deceased individuals,[5] where the Fourth Amendment has no applicability. *See Guyton v. Phillips*,

---

[3] As discussed *infra*, part of the privacy concerns can be dealt with by a confidentiality/protective order.

[4] Even if Plaintiff no longer has physical possession of the devices themselves, there appears to be no dispute that they have possession of copies of them.

[5] Plaintiff understands the motion to be related only to devices owned by the victims of the *Conception* fire/sinking. *See* Docket No. 34, at 3:25-26 ("Defendant's motion to compel appears to be limited to the victims' digital devices seized from the *Conception* wreckage . . . .").

606 F.2d 248, 250 (9th Cir. 1979) ("A 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect."); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). It is well-understood that Fourth Amendment rights cannot be vicariously asserted. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014); *United States v. Payner*, 447 U.S. 727, 731 (1980) ("[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party."). Because the Fourth Amendment is inapplicable in the context of devices owned by decedents, he argues Plaintiff actually had no *need* to obtain either a warrant or consent to copy/search the devices, and that its possession, custody or control of at least the copies of the devices is thus not limited by the terms of the warrants and consent it did obtain. Coming as it does in Defendant's Reply brief, Plaintiff has not responded to this argument, but an obvious reason that it is incorrect or inapplicable is not readily apparent.[6]

In sum, it does appear that the devices in question – or at least complete copies of them – are "within the government's possession, custody, or control" and that Defendant has demonstrated both materiality and that Plaintiff intends to use material from the devices in its case-in-chief at trial, which are two independent grounds for giving Defendant a right of access to the materials. As a result, Plaintiff must turn over copies of the devices to Defendant.

Sensitive to privacy concerns related to an inspection of the material in question, Defendant indicates that he is amenable to entering into a protective order regarding the data in question. Thus far, however, because of its position taken with respect to Defendant's ability to access them, Plaintiff does not appear to have discussed the terms of such an order.

The Court grants Defendant's motion. The parties are to discuss the terms of an appropriate protective order.

---

[6] Defendant does not appear to have addressed the prospect that the devices in question may have passed, in terms of ownership, to the decedents' survivors. However and additionally, the fact that the property was recovered in navigable waters may give rise to ownership/possessory interest concepts under federal maritime law. *See, e.g., Gardner v. Ninety-Nine Gold Coins*, 111 F. 552 (D. Mass 1899) (coins and money found on the body of a floating man who had been a passenger on board a vessel that sank was subject to a salvage claim by the owners, master and crew that recovered them); *accord Broere v. Two Thousand One Hundred Thirty-Three Dollars*, 72 F.Supp. 115, 117 (E.D. N.Y. 1947).