CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>Defendant. | Case No. 22-cr-00482-GW<br><br>**DEFENDANT JERRY NEHL BOYLAN'S MOTION TO COMPEL GOVERNMENT TO COMPLY WITH RULE 16 AND *BRADY***<br><br>Proposed Date: August 24, 2023<br><br>Proposed Time: 8:00 a.m. |

1 | Defendant Jerry Nehl Boylan, by and through his attorneys of record, Deputy
2 | Federal Public Defenders Georgina Wakefield, Gabriela Rivera, and Julia Deixler,
3 | hereby moves this Court to order the government to comply with its discovery
4 | obligations.
5 | This motion is based upon the attached memorandum of points and authorities,
6 | the corresponding in camera declaration of counsel, all files and records in this case,
7 | and any further evidence and argument as may be presented at the hearing on this
8 | motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 21, 2023           By  /s/ Gabriela Rivera
                               GEORGINA WAKEFIELD
                               GABRIELA RIVERA
                               JULIA DEIXLER
                               Deputy Federal Public Defenders
                               Attorneys for JERRY NEHL BOYLAN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Since September 2, 2019, when a deadly fire broke out aboard the *Conception*, the United States Coast Guard has been actively and intimately involved in the investigation of Mr. Boylan that gave rise to the instant criminal case. Before the accident, the Coast Guard inspected the *Conception* annually and signed off on its Certificate of Inspection.

Two years after the fire, next of kin of the decedents named the Coast Guard as a defendant in a civil lawsuit, alleging that the Coast Guard was responsible for the conditions that allowed the fire to catch and spread. Both the civil and criminal case stem from the same tragic accident and involve the same federal agency—the Coast Guard. In fact, the Department of Justice is counsel of record for the Coast Guard in the civil action. The defense has asked the government to produce transcripts of depositions and other materials from the civil lawsuit, but the government has declined, saying that the items are not in its possession. (Declaration of Gabriela Rivera, ¶ 2.)

The government's position is legally erroneous. The materials sought are in the government's possession as a matter of law and must be produced under Rule 16 and *Brady*.[1]

## II. BACKGROUND

Mr. Boylan is charged by indictment with one count of violating 18 U.S.C. § 1115, which prohibits misconduct or gross negligence by a ship's officers. (ECF No. 1.) The charge stems from a tragic accident at sea that claimed the lives of thirty-four people. On September 2, 2019, a fire broke out aboard the passenger vessel the

---

[1] As the Court knows there is a pending application to continue the trial date. Just minutes before the government filed its opposition to the defense's application, it produced nearly 15,000 additional pages of discovery. The discovery produced did not include any of the materials from the civil lawsuit against the Coast Guard. The production of additional documents in discovery, along with the need for the government to produce the materials that are part of the civil lawsuit against the Coast Guard, are additional reasons justifying the requested continuance of the trial date.

3

1 *Conception* while it was anchored overnight at Santa Cruz Island.  The fire spread
2 quickly, and the boat burned to the waterline.  Five people, including Mr. Boylan, who
3 was serving as the captain of the *Conception*, escaped with their lives and survived the
4 accident.  Thirty-three passengers and one crewmember perished.  All the decedents
5 were sleeping in the boat's bunkroom below deck, and both exits from the bunkroom
6 led to the same area of the boat, which was engulfed in flames.  As a result, Mr. Boylan
7 and the other survivors were unable to access or save any of the thirty-four people
8 sleeping below deck.
9 　　　　On September 1, 2021, next of kin of the decedents filed a civil lawsuit against
10 the U.S. Coast Guard.  (*Nancy Fiedler et al v. United States of America*, 21-cv-07065-
11 PA-MRW, ECF No. 1.)  The complaint alleges that the Coast Guard was aware of or
12 should have been aware of conditions on the *Conception*—including, for example,
13 limited means of egress from the passenger berthing area, an inadequate electrical
14 system, and the presence of lithium-based batteries—that created the potential for
15 danger, yet failed to enforce its own regulations and continued to certify the *Conception*
16 for travel.  *Id*.  Plaintiffs have taken at least eight depositions, including depositions of
17 five of Coast Guard representatives pursuant to Fed. R. Civ. P. 30(b)(6), one percipient
18 Coast Guard witness, one Fed. R. Civ. P. 30(b)(6) witness from the vessel owner Truth
19 Aquatics, and the owner of Ventura Boat Yard. (ECF No. 78.)  In addition, the United
20 States has produced over 3,300 pages of documents responsive to Plaintiffs' written
21 discovery requests.  (ECF No. 78.)  Recently, the parties moved for a protective order
22 governing the production and disclosure of internal Coast Guard documents.  (ECF No.
23 76.)  As government counsel for the Coast Guard has put it, "There is thus a good deal
24 of evidence to digest" in the civil case. (ECF No. 78 at 2.)
25 　　　　On July 11, defense counsel requested that the government produce transcripts of
26 all depositions and any discovery produced by or to the Coast Guard in the civil action.
27 On July 20, the government responded and produced five deposition transcripts,
28 including transcripts from the depositions of three survivors of the *Conception* fire.

However, these transcripts are not from the federal lawsuit against the Coast Guard, but a state court lawsuit filed by the next of kin against the owner of Truth Aquatics. The government declined to produce discovery from the civil action against the Coast Guard, who is represented by the Department of Justice, writing that "we are not part of that civil case," and accordingly "have not received and do not have access to those materials." (Declaration of Gabriela Rivera ¶ 2).

## III.   ARGUMENT

### A.   Rule 16 Requires the Production of the Requested Documents

Rule 16(a)(1)(E) of the Federal Rules of Criminal procedure requires the government to produce to the defense, upon request, certain materials within its "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). Specifically, the government must permit the defense to inspect and copy or photograph items that are "material to preparing the defense," items that it "intends to use . . . in its case-in-chief," and items that were "obtained from or [that] belong[] to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii).

The standard for disclosure under Rule 16 is a "low threshold" that "is satisfied if the information requested would have 'helped' [the defendant]' prepare a defense." *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (quoting *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). Because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense," the production required under Rule 16 is "broader than *Brady*." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). The "materiality" standard under Rule 16 "normally is not a heavy burden," and includes evidence that will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quoting *United States v. Felt*, 491 F. Supp. 179, 186 (D.D.C. 1979). For purposes of Rule 16, "materiality" exists "so long as 'the information . . . help[s] [the defendant] prepare,'" even if that help is "simply caus[ing] a defendant to

completely abandon a planned defense and take an entirely different path." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (everything omitted).

Documents held by another executive branch agency are deemed to be "in the possession of the government" if the prosecutor has "knowledge of and access to" the documents. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). Knowledge and access are presumed if the agency participates in the investigation of the defendant. *Id*. ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."). The government's "possession and control" under Rule 16 extends beyond the prosecutors themselves, and even beyond the agencies participating in the investigation. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (rejecting argument that the government has 'possession and control' over files of only those agencies that participated in the investigation and finding prosecutors had knowledge of and access to BOP files because the prosecutors had obtained BOP materials as part of their investigation and because the BOP is part of the Department of Justice).

Here, the government cannot credibly contest that the requested documents are material to the defense. Both the civil lawsuit and the instant criminal case center on the September 2, 2019, fire aboard the *Conception* and the conditions and events that gave rise to it. As such, the criminal and civil cases revolve around the same set of facts and the same percipient witnesses. It is plain that the requested documents would assist in the preparation of a defense. *Lloyd*, 992 F.2d at 351; *Hernandez-Meza*, 720 F.3d 768.

Nor can the government argue that the requested documents are not in the government's possession. The prosecutors are presumed to have knowledge of and access to the requested documents because the Coast Guard has actively participated in the investigation of the instant criminal case. (Rivera Decl. at ¶ 3.)

### B. *Brady* Requires the Production of the Requested Documents

The Constitution imposes an independent duty on the government to turn over evidence favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf" and disclose it to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). *United States v. Ruiz*, 536 U.S. 622, 627-28 (2002) ("[A] federal criminal defendant's . . . right to receive from prosecutors exculpatory impeachment material [is] a right that the Constitution provides as part of its basic 'fair trial' guarantee"); *Kyles v. Whitley*, 514 U.S. 419 (1995).

The government's pretrial *Brady* obligation extends to favorable evidence, regardless of any assessment of materiality. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (("[T]rial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial."); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009); *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013). This includes impeachment evidence and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). In the pretrial context, the Ninth Circuit has instructed prosecutors to err on the side of disclosure: "[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses . . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made[.]" *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (quoting *United States v. Acosta*, 357 F.Supp.2d 1228, 1239-40 (D. Nev. 2005)).

Finally, *Brady* extends beyond what the trial prosecutors have in their possession. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (explaining that a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case"); *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) ("Because prosecutors are in a unique position to obtain information known

7

to other agents of the government, they have an obligation to disclose what they do not know but could have learned."); *United States v. Bundy*, 968 F.3d 1019, 1038 (9th Cir. 2020) ("The prosecution has an affirmative obligation to learn of potentially favorable evidence and provide it to the defense.").

The requested documents should be produced under *Brady* because they contain information that would be favorable to the defense, and, as explained above, they are in the possession and control of the government. It is no answer for the government to claim that it need not produce responsive documents because "we are not part of the civil case." By treating the civil case as if it is unrelated to the criminal case, the government violates its ongoing obligation to learn of evidence favorable to the defendant. The government clearly has the ability to obtain documents from the Coast Guard.

## IV.  CONCLUSION

For all these reasons, Mr. Boylan requests that the Court order the government to comply with its obligations under both Rule 16 and Brady and produce the requested documents.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 21, 2023            By  */s/ Gabriela Rivera*
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN