CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>JERRY NEHL BOYLAN,<br><br>   Defendant. | Case No. 2:22-CR-00482-GW<br><br>***EX PARTE* APPLICATION FOR ORDERS SEEKING TO RESTRAIN THE PARTIES FROM RELEASING FURTHER INFORMATION OR OPINIONS ABOUT THIS CASE TO THE MEDIA AND REQUIRING THAT CERTAIN MOTIONS IN LIMINE BE REDACTED OR FILED UNDER SEAL** |

Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, and Julia Deixler, hereby moves this Honorable Court *ex parte* for orders restraining the parties from releasing further information or opinions related to this case to the press or the public and requiring that certain motions in limine be redacted or filed under seal until the Court can make a preliminary determination about whether publicly filing the motion would risk Mr. Boylan's Sixth Amendment right to a fair trial.

This *ex parte* application is based upon the attached memorandum of points and authorities, declaration of counsel, the files and records in this case, and such further information as may be provided to the Court regarding this application. The government is opposed and intends to file a brief.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 6, 2023     By  /s/ *Georgina Wakefield*
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

2

## TABLE OF CONTENTS

**Page**

A. Procedural history ........................................................................................... 1

B. The September 1, 2023 Los Angeles Times article describing the confidential ATF report and the opinions of a government official involved in the investigation ........................................................................................... 3

C. Restraining contacts with the press is necessary to prevent further pollution of the jury pool and to preserve Mr. Boylan's due process rights. ........................ 7

D. Certain motions in limine should either be redacted or filed and maintained under seal to prevent prospective jurors from being further tainted by awareness of evidence that may be excluded at trial. ........................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Associated Press v. U.S. Dist. Ct. for Cent. Dist. of California*,
    705 F.2d 1143 (9th Cir. 1983) ................................................................... 13

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) .................................................................................. 10

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) .................................................................................... 10

*Radio & Television News Ass'n of S. California v. U.S. Dist. Ct. for Cent. Dist. of California*,
    781 F.2d 1443 (9th Cir. 1986) ................................................................... 11

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) .................................................................................... 10

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) .................................................................................... 11

*United States v. Campa*,
    459 F.3d 1121 (11th Cir. 2006) ........................................................... 11, 12

*United States v. Orlando-Figueroa*,
    229 F.3d 33 (1st Cir. 2000) ....................................................................... 12

*United States v. Richey*,
    924 F.2d 857 (9th Cir. 1991) ..................................................................... 11

**Federal Statutes**

First Amendment ............................................................................................ 11

Sixth Amendment ....................................................................................... 1, 14

**Other Authorities**

Aya Elamroussi and Taylor Romine, *Former California dive boat captain indicted on misconduct charge in connection with fire that killed 34*, CNN (Oct. 19, 2022), https://www.cnn.com/2022/10/19/us/california-dive-boat-captain-misconduct-indictment/index.html ............................................................................................................ 4

# TABLE OF AUTHORITIES

Page(s)

Dan Whitcomb, *Judge throws out indictment of captain in 2019 California boat fire that killed 34*, REUTERS (Sept. 2, 2022), https://www.reuters.com/world/us/judge-throws-out-indictment-captain-2019-california-boat-fire-that-killed-34-2022-09-02/ ............................................................... 4

Faith Karimi, *Flames blocked escape routes on boat and trapped sleeping divers, official says. 33 bodies have been found*, CNN (Sept. 4, 2019), https://www.cnn.com/2019/09/04/us/california-boat-fire-wednesday/index.html .......... 3

Gregory Yee, *Dive boat captain faces new charge in California's worst modern maritime disaster, which killed 34*, LOS ANGELES TIMES (Oct. 18, 2022), https://www.latimes.com/california/story/2022-10-18/captain-faces-new-charge-in-california-boat-fire-that-killed-34 ................................................................................. 4

https://en.wikipedia.org/wiki/Sinking_of_MV_Conception#cite_ref-Guardian-190904_3-0 ................................................................................................................. 3

Jayme Deerwester, *California dive-boat fire highlights need for more than one exit from sleeping quarters*, USA TODAY (Sept. 2, 2019), https://www.usatoday.com/story/travel/news/2019/09/02/california-boat-fire-highlights-need-secondary-emergency-exits/2191195001/ ............................................ 3

Jeremy Childs, *Conception boat captain indicted by federal grand jury for second time,* VENTURA COUNTY STAR (Oct. 18, 2022), https://www.vcstar.com/story/news/courts/2022/10/18/conception-boat-captain-jerry-boylan-indicted-grand-jury/10536822002/ ................................................................. 4

Jill Cowan, *What Was It Like Aboard the Conception?*, NEW YORK TIMES (Sept. 4, 2019), https://www.nytimes.com/2019/09/04/us/conception-boat-scuba-divers.html ................ 3

Mark Puente, et al., *Before Conception boat fire, some captains say Coast Guard safety rule was ignored*, LOS ANGELES TIMES (Dec. 29, 2019), https://www.latimes.com/california/story/2019-12-29/conception-boat-fire-several-captains-didnt-designate-roving-watches-to-spot-dangers ............................................. 3

Richard Winton, *Conception boat fire that killed 34 people started in plastic trash can, confidential report says*, LOS ANGELES TIMES (Sept. 2, 2023), https://www.latimes.com/california/story/2023-09-02/deadly-conception-boat-fire-started-in-plastic-trash-can-atf-report-reveals ......................................................... 4, 10

Richard Winton, *Feds say captain saved himself as California boat fire killed 34. But prosecution hits a wall*, LOS ANGELES TIMES (Sept. 3, 2022), https://www.latimes.com/california/story/2022-09-03/captain-conception-boat-fire-killed-34-people-prosecution-case ................................................................................. 4

## TABLE OF AUTHORITIES

**Page(s)**

Vimal Patel, *Manslaughter Indictment Dismissed in 2019 Dive Boat Fire That Killed 34*, NEW YORK TIMES (Sept. 2, 2022), https://www.nytimes.com/2022/09/02/us/jerry-boylan-conception-captain-indictment-dismissed.html ...................................................................................................................3

Wallace et al., *Dive Boat Disaster Likely Caused by Charging Batteries and Lack of Watchman, NTSB Says*, CNN (October 20, 2020), https://www.cnn.com/2020/10/20/politics/conception-dive-boat-disaster-causes-ntsb/index.html ...................................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

On September 1, 2023, the Los Angeles Times ran a front-page story that described the details of a confidential ATF report and quoted the opinions of an anonymous official who was "deeply involved in examining evidence from the *Conception* fire." While the defense does not know exactly who leaked the confidential report or provided the quote bolstering its conclusions, it is reasonable to conclude that someone with access to the confidential report and someone who was "deeply involved in examining evidence" and aware of the ATF's testing is likely a member of the prosecution team.[1] The Department of Justice Manual defines the prosecution team to include "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant."[2]

These statements to the media by an agent of the prosecution team, made mere weeks before trial is set to begin, carry a grave risk of tainting the jury pool for Mr. Boylan's trial, and thus undermine Mr. Boylan's due process rights. This Court should prevent further tainting of the jury pool by entering an order restraining the parties, including "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant," and the prospective witnesses in this case, from providing information or opinions to the press or the public about this case until the conclusion of trial.

**A. Procedural history**

Jerry Boylan was the captain of the *Conception*, a 75-foot passenger boat owned

---

[1] Department of Justice Manual, Title 9: Criminal, § 9-5.001(B)(2).

[2] The defense does not believe that an AUSA leaked the report or provided the quote. But all the law enforcement officers and agents who participated in the investigation are characterized as members of the prosecution team by case law and the Department of Justice (*see infra* note 1) and are bound by the same rules and obligations to avoid pretrial publicity and conduct that could plausibly taint the jury pool. *See, e.g.,* California Rules of Professional Conduct, Rules 3.8, 3.6.

1

by the Fritzler Family Trust and operated by Mr. Boylan's employer, Truth Aquatics, Inc. On September 2, 2019, a fire broke out aboard the *Conception* while it was anchored overnight at Santa Cruz Island. The fire spread quickly, and the boat burned to the waterline. Five people, including Mr. Boylan, who was serving as the captain of the *Conception*, escaped with their lives and survived the accident. Thirty-three passengers and one crewmember tragically perished. All the decedents were sleeping in the bunkroom below deck, and both exits from the bunkroom led to the same area of the boat, which was engulfed in flames. As a result, Mr. Boylan and the other survivors were unable to access or save any of the thirty-four people sleeping below deck.

The United States Attorney's Office led a criminal investigation with the Coast Guard Investigative Service (CGIS), the FBI, and the ATF. The ATF conducted an investigation into the potential cause and origin of the fire. The ATF issued a confidential report on January 4, 2021, which hypothesized that the fire originated in a garbage can on the main deck.[3] The ATF could not determine the cause of the fire. The NTSB also conducted an investigation and published a report on October 20, 2020. The NTSB concluded that the origin of the fire was likely inside the aft portion of the salon, not in the garbage can identified by the ATF. The report also identified contributing causes to the accident and to the loss of life.

On December 1, 2020, the government filed an indictment charging Mr. Boylan with seaman's manslaughter, and filed a First Superseding Indictment on July 19, 2022. On September 1, 2022, this Court dismissed the government's First Superseding Indictment for failure to allege an essential element of the offense, gross negligence. On October 18, 2022, the government filed the current indictment, which alleges that Mr. Boylan "acted with a wanton or reckless disregard for human life by engaging in

---

[3] The Court has not ruled on the admissibility of this opinion at trial.

misconduct, gross negligence, and inattention to his duties." (ECF No. 1). Trial is scheduled to begin on October 24, 2023.

### B. The September 1, 2023 Los Angeles Times article describing the confidential ATF report and the opinions of a government official involved in the investigation

The *Conception* fire has been the subject of sustained press coverage since the tragic accident in September 2019.[4] There is a Wikipedia article devoted to the accident.[5] There was an independent NTSB investigation, report, and public hearing that received and continues to receive media coverage.[6] And the Government's prosecution of Mr. Boylan has similarly received intense media coverage.

Numerous media outlets ran stories about the case in September 2022, when this Court dismissed the government's First Superseding Indictment for its failure to allege an essential element of the offense.[7] At the time, representatives from the United States

---

[4] *See, e.g.,* Faith Karimi, *Flames blocked escape routes on boat and trapped sleeping divers, official says. 33 bodies have been found*, CNN (Sept. 4, 2019), https://www.cnn.com/2019/09/04/us/california-boat-fire-wednesday/index.html; Jayme Deerwester, *California dive-boat fire highlights need for more than one exit from sleeping quarters*, USA TODAY (Sept. 2, 2019), https://www.usatoday.com/story/travel/news/2019/09/02/california-boat-fire-highlights-need-secondary-emergency-exits/2191195001/; Jill Cowan, *What Was It Like Aboard the Conception?*, NEW YORK TIMES (Sept. 4, 2019), https://www.nytimes.com/2019/09/04/us/conception-boat-scuba-divers.html; Mark Puente, et al., *Before Conception boat fire, some captains say Coast Guard safety rule was ignored*, LOS ANGELES TIMES (Dec. 29, 2019), https://www.latimes.com/california/story/2019-12-29/conception-boat-fire-several-captains-didnt-designate-roving-watches-to-spot-dangers.

[5] https://en.wikipedia.org/wiki/Sinking_of_MV_Conception#cite_ref-Guardian-190904_3-0

[6] Wallace et al., *Dive Boat Disaster Likely Caused by Charging Batteries and Lack of Watchman, NTSB Says*, CNN (October 20, 2020), https://www.cnn.com/2020/10/20/politics/conception-dive-boat-disaster-causes-ntsb/index.html

[7] *See, e.g.,* Richard Winton, *Feds say captain saved himself as California boat fire killed 34. But prosecution hits a wall*, LOS ANGELES TIMES (Sept. 3, 2022), https://www.latimes.com/california/story/2022-09-03/captain-conception-boat-fire-killed-34-people-prosecution-case; Vimal Patel, *Manslaughter Indictment Dismissed in 2019 Dive Boat Fire That Killed 34*, NEW YORK TIMES (Sept. 2, 2022), https://www.nytimes.com/2022/09/02/us/jerry-boylan-conception-captain-indictment-

Attorney's Office gave statements to the press.[8]  Mr. Boylan and the defense team did not speak to the press.[9]  Numerous local and national media outlets again reported on the case when the government re-indicted Mr. Boylan in October 2022.[10]  The press coverage has continued since.

Much of the coverage of the criminal case has been critical of Mr. Boylan.  For example, a headline in the Los Angeles Times that ran after the Indictment in the original case was dismissed states, "Feds say captain saved himself as California boat fire killed 34.  But prosecution hits a wall."[11]

Despite already sustained reporting and coverage of the accident and criminal case, an unknown individual leaked a confidential ATF report to the Los Angeles Times less than two months before trial.[12]  Another, or perhaps the same unknown individual, described as "an official who was deeply involved in examining evidence

---

dismissed.html; Dan Whitcomb, *Judge throws out indictment of captain in 2019 California boat fire that killed 34*, REUTERS (Sept. 2, 2022), https://www.reuters.com/world/us/judge-throws-out-indictment-captain-2019-california-boat-fire-that-killed-34-2022-09-02/.

[8] Patel, *supra*; *see also* Whitcomb, *supra*.

[9] Patel, *supra*; Whitcomb, *supra*.

[10] Gregory Yee, *Dive boat captain faces new charge in California's worst modern maritime disaster, which killed 34*, LOS ANGELES TIMES (Oct. 18, 2022), https://www.latimes.com/california/story/2022-10-18/captain-faces-new-charge-in-california-boat-fire-that-killed-34; Jeremy Childs, *Conception boat captain indicted by federal grand jury for second time,* VENTURA COUNTY STAR (Oct. 18, 2022), https://www.vcstar.com/story/news/courts/2022/10/18/conception-boat-captain-jerry-boylan-indicted-grand-jury/10536822002/; Aya Elamroussi and Taylor Romine, *Former California dive boat captain indicted on misconduct charge in connection with fire that killed 34*, CNN (Oct. 19, 2022), https://www.cnn.com/2022/10/19/us/california-dive-boat-captain-misconduct-indictment/index.html.

[11] Richard Winton, *Feds Say Captain Saved Himself as California Boat Fire Killed 34. But Prosecution Hits a Wall.*, LOS ANGELES TIMES (Sept. 3, 2019), https://www.latimes.com/california/story/2022-09-03/captain-conception-boat-fire-killed-34-people-prosecution-case

[12] Richard Winton, *Conception boat fire that killed 34 people started in plastic trash can, confidential report says*, LOS ANGELES TIMES (Sept. 2, 2023), https://www.latimes.com/california/story/2023-09-02/deadly-conception-boat-fire-started-in-plastic-trash-can-atf-report-reveals.

4

from the Conception fire but was not authorized to discuss it publicly" provided a quote bolstering the fire investigation that was done in this case. The article appeared on the front page of the newspaper and was titled "Conception boat fire that killed 34 people started in plastic trash can, confidential report says."[13] The article describes the methods by which the ATF attempted to determine the fire's "point of origin and cause," explaining that the ATF "conducted a series of burn tests at their Maryland research lab, which concluded the blaze began in a rubbish container and then quickly spread."[14] The Times reported that an ATF spokeswoman "said the bureau would not comment on the report, which has not been publicly disclosed because of ongoing criminal and civil court proceedings involving the inferno."[15]

But despite the fact that the ATF report is confidential, the article quotes from it extensively. The article does not state who leaked the confidential report to the press. The article also quotes a government "official who was deeply involved in examining evidence from the Conception fire but was not authorized to discuss it publicly."[16] This anonymous official told the Times: "This is one of the most thorough investigations of a vessel fire I have seen . . . . They did everything possible to re-create the fire."[17] A family member of one of the decedents is also quoted in the article, saying "the ATF report is important 'if it bolsters the manslaughter case and sends the captain to prison.'"[18]

The article references the conflicting conclusions drawn by the NTSB report—that the fire began in the salon of the *Conception*—and the ATF report—that it started in a trash can outside the salon. But the article describes the NTSB report as the result

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

5

of "initial investigations," and states, "[u]ltimately, ATF investigators focused on a 23-gallon Rubbermaid Slim Jim garbage bin that sat beneath the stairs of the main deck."[19] The article continues by quoting from the confidential ATF report: "The report, authored by ATF Special Agent Derek J. Hill in January 2021, concluded that 'after conducting a systematic fire scene examination, reviewing witness statements, examining pre-fire and fire photographs and videos, and conducting test fires, by inspecting physical evidence, interpreting fire patterns, considering fire dynamics,' agents determined 'the fire originated in the garbage container located under the staircase.'"[20] The article also states, "The 197-page report noted that Boylan smoked cigarettes, but he said he threw them overboard."[21] In total, the article names Mr. Boylan seven times, stating (incorrectly) that he "has been charged with 34 counts of manslaughter" and "is scheduled to be tried in federal court next month."[22]

The report has been picked up by other media outlets, including ABC 7 (a Los Angeles affiliate), KSBY (the NBC affiliate for the Central Coast), Noozhawk (a Santa Barbara news source), the Santa Barbara Edhat, and the Brunswick News. Videos about the report can be viewed on Youtube as well.

This is not the first time confidential information from the ATF, including by witnesses who may be called to testify by the government at trial, has been released. Mr. Hill and ATF employee Jonathan Butta, who conducted the on-scene investigation of the *Conception* fire and prepared reports that were incorporated into Mr. Hill's final report, arranged to give a presentation entitled "In-Depth Case Study: The *Conception*" at an annual conference and training for the International Association of Marine

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

Investigators ("IAMI") in February 2023. The conference was attended by over 100 attendees in the marine investigation industry.

While Mr. Hill ultimately could not attend the conference, he and Mr. Butta prepared lengthy PowerPoint presentations and Mr. Butta presented them at the conference. The presentation lasted three hours and covered a wide range of topics related to the ATF's investigation of the fire aboard the *Conception* and the ATF's theories related to how the fire started and how quickly it spread before claiming the boat. Among other things, Mr. Butta discussed his view of witness statements and fire testing. Mr. Butta relayed many portions of the confidential report to conference attendees. The defense team is not aware of any non-disclosure agreement that the participants had to sign to keep the information they received about the report or the investigation confidential even though this case was still pending trial.

## C. Restraining contacts with the press is necessary to prevent further pollution of the jury pool and to preserve Mr. Boylan's due process rights.

"Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, [t]he trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 553 (1976) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966)); *see also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070 (1991) ("The outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial . . . obviously threaten to undermine this basic tenet.").

In some cases, extensive pretrial publicity can become so prejudicial to the accused's due process rights that courts will restrain the press from publishing certain

statements or facts about a case. *Nebraska Press Ass'n*, 427 U.S. at 542-45. Such "gag orders" against the press raise difficult constitutional questions, requiring courts to balance the First Amendment rights of a free press against the due process rights of the accused. *Id.* at 562-66.

But restraints applicable only to participants in the trial proceedings—the parties, their agents, and their witnesses—pose no difficult tradeoffs, and are, instead, a favored, less drastic measure to protect the rights of the accused in a trial gaining widespread press attention. As the Supreme Court has explained:

> "Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures."

*Id.* at 553-54 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966)); *see also Radio & Television News Ass'n of S. California v. U.S. Dist. Ct. for Cent. Dist. of California*, 781 F.2d 1443, 1444 (9th Cir. 1986) ("We hold that restraints on the statements of trial participants, although indirectly denying the media access to those participants, do not infringe freedom of the press under the first amendment."); *United States v. Richey*, 924 F.2d 857, 863 (9th Cir. 1991) (holding that government employee is not protected by the First Amendment when he breaches duties of confidentiality in disclosures to the press).

Courts have explained that orders preventing press contacts or other public statements by trial participants can prevent the need for more drastic measures to protect the rights of the accused, such as changes of venue or lengthy continuances. For example, in *United States v. Campa*, 459 F.3d 1121 (11th Cir. 2006), the Eleventh Circuit held that the trial court did not abuse its discretion in denying a motion to change venue, despite extensive pretrial publicity. *Id.*

8

at 1144-45.  The Eleventh Circuit reasoned that the trial court avoided the need to change venue by "maintain[ing] strict control over the proceedings by employing various curative measures to insulate the jury from any outside influence." *Id*. at 1149.  These "curative measures," which the Eleventh Circuit described favorably, were extensive.  First and foremost, "[f]rom the commencement of the case, the parties, counsel, and witnesses were under a strict gag order, as well as a sequestration order, which prohibited them from releasing information or opinion that would interfere with the trial or otherwise prejudice the defendants." *Id*.  When, during the voir dire process, family members of the victims gave "fairly innocuous" statements to the press, the trial court extended the gag order to the victims' families and "instructed that it would no longer permit the victims' families to be present during voir dire 'if there are efforts made to pollute the jury pool.'" *Id.*at 1136.  Finally, the trial court "maintained control over the seating in the courtroom" by "designating certain rows to certain groups and requiring the media to sit in the back row," and the court "prevented the media from accessing the voir dire questions by sealing them during jury selection." *Id*. at 1149; *see also United States v. Orlando-Figueroa*, 229 F.3d 33, 42 (1st Cir. 2000) (affirming district court's denial of trial continuance, reasoning that order restraining press contacts by trial participants successfully mitigated prejudice of pretrial publicity).

      Here, to secure Mr. Boylan's due process rights, the Court should enter an order restraining the parties, members of the prosecution team, and the prospective witnesses in this case from "from releasing information or opinion" about the case until the end of the trial. *Campa*, 459 F.3d at 1149.  The extensive pretrial publicity about this case already poses a grave danger that Mr. Boylan's jury will not be "free from outside influences" and preconceived notions about the case. *Nebraska Press Ass'n*, 427 U.S. at 553.  This risk has now been substantially heightened by an official "deeply involved in examining evidence"

9

who knew about the ATF's experiments and provided his or her opinions about a confidential report—the ATF report—to the Los Angeles Times. The leak of the report and the agent's quoted statements describing it led to a front-page story in the most prominent newspaper in this district. Moreover, the agent's statements to the press bolster the credibility of the ATF's investigation and conclusions about a key issue in the trial—the origin of the fire—and correspondingly diminish the contrasting investigation and conclusions drawn by the NTSB. Indeed, the agent went so far as to tell the newspaper that the ATF report is the result of "one of the most thorough investigations of a vessel fire I have seen . . . . They did everything possible to re-create the fire."[23]

The comparative credibility of the ATF and NTSB's competing investigations and their conflicting conclusions will be a primary disputed issue at trial. But a government official now seems to be litigating this issue, prior to trial, in the press. This prejudicial and improper conduct needs to be restrained.

**D.    Certain motions in limine should either be redacted or filed and maintained under seal to prevent prospective jurors from being further tainted by awareness of evidence that may be excluded at trial.**

In cases with significant pretrial publicity, such as this one, courts discourage blanket orders requiring that all documents be filed under seal. *See, e.g.*, *Associated Press v. U.S. Dist. Ct. for Cent. Dist. of California*, 705 F.2d 1143 (9th Cir. 1983). However, there are "less drastic procedures that will ensure that parties who contemplate filing any documents that might actually prejudice the right to a fair trial will act responsibly." *Id*. at 1146. Those procedures include requiring the parties to "file the few documents of that nature that must be filed under seal." *Id*.

---

[23] Richard Winton, *Conception boat fire that killed 34 people started in plastic trash can, confidential report says*, LOS ANGELES TIMES (Sept. 2, 2023), https://www.latimes.com/california/story/2023-09-02/deadly-conception-boat-fire-started-in-plastic-trash-can-atf-report-reveals.

Here, there is at least one motion in limine the government intends to file that risks prejudicing Mr. Boylan's right to a fair trial: a motion to admit certain categories of evidence under Federal Rule of Evidence 404(b).[24] If reported on by the press and subsequently excluded by this Court at trial, there is a substantial risk that prospective jurors will learn of and be tainted by inadmissible evidence. Thus, Mr. Boylan seeks an order requiring the parties to file any motion in limine that risks public dissemination of possibly inadmissible evidence be redacted or filed under seal until the Court can make a determination of whether publicly filing the document would pose a risk to Mr. Boylan's Sixth Amendment right to a fair trial.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 6, 2023          By  /s/ *Georgina Wakefield*
                                   GEORGINA WAKEFIELD
                                   GABRIELA RIVERA
                                   JULIA DEIXLER
                                   Deputy Federal Public Defenders
                                   Attorneys for JERRY NEHL BOYLAN

---

[24] Exhibit A, which is a copy of two 404(b) notices sent by the government, will be lodged under seal.

11

# DECLARATION OF COUNSEL

I, Georgina Wakefield, hereby state and declare as follows:

1. I am a Deputy Federal Public Defender in the Central District of California assigned to represent Jerry Nehl Boylan in the above-titled action.

2. On September 2, 2023, I saw the article authored by Richard Winton of the Los Angeles Times referenced in this application. Over the next few days, I saw that the report had been picked up by other news outlets including ABC 7 (a Los Angeles affiliate), KSBY (the NBC affiliate for the Central Coast), Noozhawk (a Santa Barbara news source), the Santa Barbara Edhat, and the Brunswick News. Videos about the report can be viewed on Youtube as well. I have been contacted by other media outlets for comment about the Los Angeles Times article, but I have not provided any comment.

3. Earlier this year, I became aware Mr. Hill and Mr. Butta arranged to give a presentation entitled "In-Depth Case Study: The *Conception*" at an annual conference and training for the International Association of Marine Investigators ("IAMI") on February 27, 2023.

4. I have been informed that the conference was attended by over 100 attendees in the marine investigation industry. Mr. Hill ultimately could not attend the conference at the last minute. Mr. Butta, however, attended and gave the presentations he and Mr. Hill created. The presentation, which included PowerPoint presentations, lasted three hours and covered a wide range of topics related to the ATF's investigation of the fire aboard the *Conception* and the ATF's theories related to how the fire started and how quickly it spread before claiming the boat. Among other things, Mr. Butta discussed his view of witness statements and fire testing. Mr. Butta relayed many portions of the confidential report to conference attendees. The defense team is not aware of any non-disclosure agreement that the participants had to sign to keep the information they received about the report or the investigation confidential even though this case was still pending trial.

5.     On September 5 and 6, 2023, counsel for the government and I discussed this application. Counsel for the government indicated that they are opposed to the application and intend to file a brief in opposition.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: September 6, 2023          By  /s/ *Georgina Wakefield*
                                         GEORGINA WAKEFIELD

13