CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>Defendant. | Case No. 22-cr-00482-GW<br><br>**DEFENDANT'S MOTION IN LIMINE NO. 3; MOTION TO EXCLUDE EXPERT TESTIMONY OF CAPTAIN SEAN TORTORA; DECLARATION OF COUNSEL; EXHIBITS**<br><br>Pretrial Conference:<br>October 12, 2023, at 8:00 a.m.<br><br>The Honorable George H. Wu |

Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, and Julia Deixler, hereby files Defendant's Motion *In Limine* No. 3 to Exclude the Expert Testimony of Captain Sean P. Tortora pursuant to Federal Rules of Evidence 401, 402, 702, 704, and 403.

This motion *in limine* is based upon the attached memorandum of points and authorities, the declaration of counsel and exhibits contained therein filed in support of the instant motion, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 18, 2023       By   /s/ Gabriela Rivera

GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSH WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ............................................................. 1

II. FACTUAL BACKGROUND ................................................ 2

    A.  Summary of Relevant Facts ..................................... 2

        1.  The *Conception* ........................................ 2

        2.  The Applicable Credential and Regulations ................... 3

        3.  The Accident Voyage ..................................... 3

    B.  Captain Tortora's Proffered Testimony ........................ 4

III. ARGUMENT ............................................................... 6

    A.  The Court Should Exclude Captain Tortora's Testimony Under Rules 401, 402, and 702 Because It Lacks Relevance and Reliability and Will Not Be Helpful to the Jury ..................................... 7

        1.  Legal Standard .......................................... 7

        2.  Captain Tortora's Opinion is Not Relevant Because His Background and Experience are in a Highly-Specialized Maritime Practice Not at Issue Here ........................ 8

        3.  Captain Tortora's Opinion Lacks Reliability and Relevance Because it is Not Based on Discovery, Data, or Any Other Dependable Source ....................................... 11

        4.  Captain Tortora's Opinion that "Fire at Sea is Dreaded" Will Not Help the Jury ......................................... 14

    B.  At Minimum, the Court Should Exclude Captain Tortora's Testimony Regarding Coast Guard Regulations ....................... 16

        1.  Captain Tortora is not an expert on the law or Coast Guard regulations applicable to small passenger vessels .............. 16

        2.  The Proffered Testimony Constitutes an Impermissible Legal Conclusion on an Ultimate Issue of Law ..................... 17

    C.  This Court Should Further Exclude Captain Tortora's Testimony Under Rule 403 Because Any Relevance Is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion, and Undue Delay ........... 19

    D.  If the Court is Not Inclined to Exclude Captain Tortora, it Must Instead Hold a Pretrial Evidentiary Hearing on His Admissibility ................. 21

IV. CONCLUSION ........................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andrews v. Metro North Commuter R. Co.*,
    882 F.2d 705 (2d Cir. 1989) ........................................................................17

*Banuchi v. City of Homestead*,
    606 F.Supp.3d 1262 (S.D. Fl. 2022)............................................................15

*Chernetsky v. Nevada*,
    No. 3:06-CV-0252-RCJ-RAM, 2006 WL 8429763 (D. Nev. Nov. 16,
    2006) ............................................................................................................15

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) .........................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)................................................................................*passim*

*De Saracho v. Custom Food Mach., Inc.*,
    206 F.3d 874 (9th Cir. 2000) .......................................................................11

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F.Supp.3d 396 (S.D.N.Y. 2016) ...........................................................15

*In re M/V MSC FLAMINIA*, 339 F. Supp. 3d 185, 226 (S.D.N.Y. 2018),
    aff'd in part, rev'd in part and remanded sub nom. *In re M/V MSC
    Flaminia*, 72 F.4th 430 (2d Cir. 2023)  ......................................................13

*Jinro America, Inc. v. Secure Investments, Inc.*,
    266 F.3d 993 (9th Cir. 2001) .........................................................................7

*Koenig v. Johnson*,
    2:18-cv-3599-DCN, 2020 WL 2308305 (D.S.C. May 8, 2020)...................15

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...................................................................................7, 8

*Lust v. Merrell Dow Pharmaceuticals, Inc.*,
    89 F.3d 594 (9th Cir. 1996) ...........................................................................8

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
    676 F.3d 521 (6th Cir. 2012) .......................................................................14

ii

## TABLE OF AUTHORITIES

**Page(s)**

*Noel v. United Aircraft Corp.*,
219 F. Supp. 556 (D. Del. 1963) ................................................................ 15

*United States v. Boney*,
977 F.2d 624 (D.C. Cir. 1992) ................................................................ 14

*United States v. Brownlee*,
454 F.3d 131 (3d Cir. 2006) ..................................................................... 5

*United States v. Byers*,
730 F.2d 568 (9th Cir. 1984) ............................................................... 2, 8

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) ................................................................ 17

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ................................................................ 7

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ................................................................................ 11

*United States v. Hall*,
93 F.3d 1337 (7th Cir. 1996) ................................................................. 16

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) .................................................................. 8

*United States v. Hebah*,
164 F. App'x 678 (10th Cir. 2006) .......................................................... 10

*United States v. Ortland*,
109 F.3d 539 (9th Cir. 1997) ................................................................... 8

*United States v. Romo*,
413 F.3d 1044 (9th Cir. 2005) ................................................................ 14

*United States v. Sayre*,
434 Fed. App'x 622 (9th Cir. 2011) ........................................................ 13

*Sierra Forest Legacy v. Rey*,
526 F.3d 1228 (9th Cir. 2008) ................................................................ 15

*United States v. Vallejo*,
237 F.3d 1008 (9th Cir. 2001) ........................................................... 7, 19

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Statutes**

18 U.S.C. § 1115.................................................................................................1

**Regulations**

46 C.F.R. § 185.410............................................................................................4

46 C.F.R. § 175.110..........................................................................................16

**Federal Rules**

Fed. R. Evid. Rule 401................................................................................*passim*

Fed. R. Evid. Rule 402................................................................................*passim*

Fed. R. Evid. Rule 403................................................................................*passim*

Fed. R. Evid. Rule 702................................................................................*passim*

Fed. R. Evid. Rule 703...................................................................................2, 8

Fed. R. Evid. Rule 704............................................................................2, 6, 17

# I. INTRODUCTION

Mr. Boylan is charged by indictment with one count of violating 18 U.S.C. § 1115, which prohibits gross negligence by a ship's officers.  (ECF No. 1.)  The charge stems from a tragic accident on a small passenger vessel, the *Conception*, that caught fire and burned while carrying passengers for an overnight diving excursion.

The government has noticed the expert testimony of Captain Sean Tortora, but Captain Tortora's background and niche areas of expertise are in large-scale towing, cargo transportation, and firefighting and training in those specific marine contexts— but cargo and towing are not at issue in this case, and Captain Tortora's testimony is simply not relevant here.  The *Conception* was 75 feet long, weighed under 100 tons, was required to have a crew of 4 people, had a permitted route that required it to remain relatively close to the coast near the Santa Barbara area, typically ran diving excursions to the nearby Channel Islands, and upon its loss was valued at $1.4 million.  By comparison, Captain Tortora's expertise is based on his experience with vessels 750 feet long, weighing 40,000 tons, carrying crews of 250 people, transporting millions of tons of ammunition and jet fuel, with cargo valued at over $2 billion.

Not only is Captain Tortora's proposed testimony and experience irrelevant to the facts at issue here, his opinion as to the causes of marine fires and casualties is also unreliable as it is not based on the discovery, data, or any other dependable sources and, furthermore, it is in direct conflict with a study conducted by an independent agency investigating the fire aboard the *Conception*.  Captain Tortora's opinion that "fire at sea is dreaded" will not assist the jury as it is a commonly understood proposition that fire anywhere is dreaded, and he would usurp the role of the judge and jury by offering his opinion and interpretation of which regulations governed the Conception and whether Mr. Boylan negligently violated those regulations.  Additionally, Captain Tortora's proposed testimony carries with it plain Rule 403 issues and the unacceptable risk of misleading the jury.

In sum, Captain Tortora's proffered testimony fails to meet multiple threshold requirements for relevance and reliability under Rules 401 and 402, does not meet the admissibility test under Rule 702, attempts to provide impermissible testimony on the ultimate issue of defendant's guilt in violation of Rule 704, and raises numerous grounds for exclusion under Rule 403.

This Court has wide latitude to exclude expert testimony. *United States v. Byers*, 730 F.2d 568, 571 (9th Cir. 1984). It is especially important for the Court to exercise that discretion where, as here, the testimony would not aid the jury, and, furthermore, would confuse or mislead them and usurp their role as fact finder. Fed. R. Evid. 702, 703. This Court should preclude Captain Tortora from testifying at trial. To the extent the Court is not willing to do so at this point, Mr. Boylan respectfully requests a hearing in advance of trial to challenge the admissibility of the expert testimony.

## II. FACTUAL BACKGROUND

### A. Summary of Relevant Facts

#### 1. The *Conception*

The *Conception* was a small passenger vessel purpose-built to take recreational scuba divers on one-day and overnight trips to dive sites around the Channel Islands. The *Conception* was 75 feet long, weighed under 100 tons, and could accommodate up to 46 overnight passengers.[1] At the time of the accident voyage, the *Conception* had a valid Coast Guard-issued Certification of Inspection ("COI"). Per the COI, the vessel was required to be manned by a credentialed master and mate, as well as two uncredentialed deckhands.[2] The *Conception*'s permitted route was confined to the area

---

[1] Conception Marine Accident Report (Oct. 20, 2020) (hereinafter referred to as "the NTSB Report") at 1, Dkt. 1 of NTSB Public Docket for Marine Investigation Number DCA19MM047, *available at* https://data.ntsb.gov/Docket/Document/docBLOB?ID=11566688&FileExtension=pdf&FileName=MAR2003-Rel.pdf

[2] *See* Certificate of Inspection for Conception, Dkt. 16 of NTSB Public Docket for Marine Investigation Number DCA19MM047, *available at* https://data.ntsb.gov/Docket/Document/docBLOB?ID=8650289&FileExtension=pdf&FileName=CONCEPTIONCOI-Amended19Mar2019-Rel.pdf

of the Pacific Ocean between the San Luis Obispo and Monterey County lines no more than 100 miles from the mainland shore.[3]  It typically operated short trips from the Santa Barbara Harbor, where it was docked, to the nearby Channel Islands and back.[4] After the fire and sinking of the *Conception*, the loss of the vessel was estimated at $1.4 million.[5]

### 2.  The Applicable Credential and Regulations

Any captain of the *Conception* was required to posses a valid merchant mariner credential as a master of self-propelled vessels of less than 100 tons.[6]

The construction and operation of small passenger vessels like the *Conception* that are under 100 gross tons and have overnight accommodations for 49 or fewer passengers are governed by Title 46 Code of Federal Regulations (CFR) Subchapter T.[7] The current regulations under this subchapter were significantly updated in 1996, and vessels constructed after 1996 are required to comply with all of the current regulations. Vessels that were constructed before 1996 are required to comply with portions of the current regulations as well as certain regulations that were in force at the time the vessel was built.  As a vessel built in 1981, the *Conception* was subject to portions of both the pre- and post-1996 Subchapter T regulations.[8]

### 3.  The Accident Voyage

The *Conception* was chartered by a scuba diving tour company to take a group of 33 passengers on a 3-day dive trip to sites around the Channel Islands over the 2019 Labor Day weekend.  On September 2, 2019, a fire broke out aboard the *Conception*

---

[3] *Id*.

[4] NTSB Report at 1.

[5] NTSB Report at vi.

[6] NTSB Report at 1, 49.

[7] *See* 46 C.F.R. § 175.110 (stating that subchapter T regulations apply only to small passenger vessels "of less than 100 gross tons that carr[y] 150 or less passengers"); *see also* NTSB Report at 20.

[8] *Id*.

3

while it was anchored overnight at Santa Cruz Island.  The fire spread quickly, and the boat burned to the waterline.  Five people, including Jerry Boylan, who was serving as the captain of the *Conception*, escaped with their lives and survived the accident. Thirty-three passengers and one crewmember tragically perished.  All the decedents were sleeping in the bunkroom below deck, and both exits from the bunkroom led to the same area of the boat, which was engulfed in flames.  As a result, Mr. Boylan and the other survivors were unable to access or save any of the thirty-four people sleeping below deck.[9]

The United States Attorney's Office led a criminal investigation with the Coast Guard Investigative Service (CGIS), the FBI, and the ATF.  The NTSB conducted its own independent investigation into the fire aboard the *Conception* and published a report on October 20, 2020.  The NTSB concluded that the origin of the fire was likely inside the aft portion of the salon.[10]

On December 1, 2020, the government filed an indictment charging Mr. Boylan with seaman's manslaughter, and filed a First Superseding Indictment on July 19, 2022. On September 1, 2022, this Court dismissed the government's First Superseding Indictment for failure to allege an essential element of the offense, gross negligence. On October 18, 2022, the government filed the current indictment, which alleges that Mr. Boylan "acted with a wanton or reckless disregard for human life by engaging in misconduct, gross negligence, and inattention to his duties on [the *Conception*] through, among other things: 1) his failure to maintain a night watch or roving patrol, despite his duty to do so set forth in the [COI] . . . and 46 C.F.R. § 185.410."  (ECF No. 1).

**B. Captain Tortora's Proffered Testimony**

The government has proffered the testimony of Captain Sean Tortora, an associate professor of marine transportation at the U.S. Merchant Marine Academy in

---

[9] NTSB Report at 7-12.

[10] See NTSB Report at 59 ("The NTSB concludes that the origin of the fire on the Conception was likely inside the aft portion of the salon.").

Kings Point, N.Y.  (Exhibit A (Tortora expert disclosure); Exhibit B (Tortora CV).

Captain Tortora holds a license for unlimited tonnage, is an unlimited Master of towing

vessels and Master of underway replenishment vessels, and is a Coast Guard

Designated Examiner for the U.S. Coast Guard Towing Assessment and Operator

Record.

Captain Tortora's background and interests are focused on commercial towing

and cargo transportation as well as marine firefighting in those contexts.  For example,

Captain Tortora holds a master's degree in International Transportation Management.

During his career at sea, he had command of various vessels including tankers, dry

cargo, break bulk (cargo packed individually or loosely), ammunition, ocean towing

and salvage, special mission, and Underway Replenishment vessels.

Captain Tortora previously served as a Master with 23 years of experience with

the U.S. Navy's Military Sealift Command (an organization that controls the

replenishment and military transport ships of the United States Navy) where "he led

diverse, challenging at-sea missions directing underway replenishment, logistic policy,

procedures, and systems, special operations, vessel towing and salvage, and rescue

operations." (Exh. A.)   During this time, Captain Tortora directed and supervised

vessels with a 250-person crew and operated vessels that were hundreds of feet long

and weighed tens of thousands of tons.  For example, Captain Tortora was the captain

of the USNS Carl Brashear, a dry cargo ship, which measured more than 650 feet long

at the waterline and weighed anywhere from 23,000 to 40,000 tons depending on how

much cargo it carried.  On the USNS Carl Brashear, Captain Tortora presided over the

transportation of millions of tons of ammunition and 1 million gallons of highly

flammable jet fuel tanks.  To take another example, Captain Tortora served as First

Officer on the USNS Supply, a "fast combat" replenishment auxiliary ship, which

measured more than 750 feet in length and weighed almost 50,000 tons.  Captain

Tortora and crew guided the transport of 2 million pounds of ammunition and 7 million

gallons of highly flammable jet fuel tanks.

5

Based on this training, experience, and interest in transportation management, commercial towing, and marine firefighting, the government proffers that Captain Tortora will testify to the following: (1) "fire at sea is dreaded because it is the most dangerous event that can occur to a mariner" and the only way to survive is for the captain to train his crew in fire prevention, firefighting, and fire safety; (2) "marine casualties are often the result of vessel crew not adequately addressing what start as small, containable incidents, which exacerbates the incident leading to a large or larger number of casualties."; (3) "the primary causes of marine fires include careless smoking, spontaneous ignition, faulty electrical circuits and equipment, and galley operations (e.g., hot cooking oils, electric ranges, etc.)" and thus the captain must "develop and implement formal fire training for his crew"; (4) "the crew must know the proper procedure upon the discovery of a fire, regardless of a fire's size;" (5) "Coast Guard regulations applicable to the *Conception* required a night watch / roving patrol, whose purpose is to identify and act upon fire and flooding in all spaces." (Exh. A.) Additionally, notes from the government's interview of Captain Tortora reflect that Captain Tortora opined that a lack of roving patrol "would be the first link in the error chain," and "Regarding the vessel *Conception*, in his opinion the master was negligent." (Exhibit C (notes of interview).)

The expert disclosure and nine-page CV for Captain Tortora fail to reference any experience with small passenger vessels, dive boats, the regulations governing small passenger vessels, or the training and fire risks on small passenger vessels like the *Conception*.

### III. ARGUMENT

Captain Tortora's proffered testimony fails to meet multiple threshold requirements for relevance and reliability under Rules 401 and 402, admissibility under Rule 702, attempts to provide impermissible testimony on the ultimate issue of defendant's guilt in violation of Rule 704, and raises numerous grounds for exclusion under Rule 403. This Court should preclude Captain Tortora from testifying at trial.

**A. The Court Should Exclude Captain Tortora's Testimony Under Rules 401, 402, and 702 Because It Lacks Relevance and Reliability, Will Not Be Helpful to the Jury, and Presents a Danger of Unfair Prejudice, Confusion, and Undue Delay**

**1. Legal Standard**

In evaluating proposed expert testimony, courts play a critical gatekeeping role because of the powerful and potentially misleading effect of expert evidence on a jury. *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592-95 (1993); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (stressing that the gatekeeping function "cannot be overstated" and is "especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it[]"). This gatekeeping role applies to all expert testimony, not only scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

A trial court evaluating proposed expert opinion is required to hold tight to first principles. Indeed, "[t]he proper exercise of [the District Court's] gatekeeping function is critically important 'to ensure the reliability and relevancy of expert testimony.'" *Jinro America, Inc. v. Secure Investments, Inc*., 266 F.3d 993, 1005 (9th Cir. 2001) (quoting *Kumho Tire Co*., 526 U.S. at 152) (emphasis added)). Accordingly, expert testimony, like all other evidence, may be excluded if it is irrelevant under Federal Rules of Evidence 401 and 402. *See United States v. Vallejo*, 237 F.3d 1008, 1015-16 (9th Cir. 2001) (evaluating expert testimony under Rule 401). Expert testimony is only admissible if it "will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Stated differently, it must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 592.

In addition to Rules 401 and 402, a trial must also evaluate proposed expert testimony under Rules 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of

7

an opinion, or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The proponent of the expert testimony bears the burden of demonstrating its admissibility. *Lust v. Merrell Dow Pharmaceuticals, Inc*., 89 F.3d 594, 598 (9th Cir. 1996); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). To satisfy *Daubert* and *Kumho Tire*, the offering party must make a showing to the Court that the expert opinion is necessary, relevant, reliable, and based on proper qualifications.

District courts enjoy wide latitude in excluding expert testimony, *Byers*, 730 F.2d at 571, which is why such decisions are reviewed for abuse discretion, *United States v. Ortland*, 109 F.3d 539, 544 (9th Cir. 1997). It is especially important for the Court to exercise that discretion where, as here, the testimony would not aid the jury, but rather would confuse or mislead them and usurp their role as fact finder. Fed. R. Evid. 702, 703. The proponent of the testimony must show admissibility.

## 2. Captain Tortora's Opinion is Not Relevant Because His Background and Experience are in a Highly-Specialized Maritime Practice Not at Issue Here

As a threshold matter, Captain Tortora is not qualified to offer an expert opinion on fire risks or the required firefighting training for a small passenger vessel purpose-built for diving excursions off the coast of Santa Barbara. Fed. R. Evid. 401, 402, 702; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (identifying factors). As noted above, Captain Tortora appears to have extensive experience as a mariner, however, his background and experience are specific to the context of cargo, towing, and logistics, and firefighting in that context. Captain Tortora has no identified experience with or expertise in small passenger vessels such as the *Conception*, the Subchapter T regulations governing small passenger vessels, overnight diving

8

excursions, fires risks and fires aboard small passenger vessels, or any of the unique challenges related to firefighting and training on small passenger vessels.  Absent such experience or knowledge, his testimony should be precluded as it would not be based on expertise relevant to the evidence and testimony that will be presented to the jury at trial.

Indeed, Captain Tortora's expertise and experience on vessels is perhaps as dramatically different from the vessels and conduct at issue here as is possible, as Captain Tortora has been in command of vessels orders of magnitude longer and larger than the *Conception*, with crews scores of time larger than that of the *Conception*, carrying cargo rather than trip-goers, and governed by different regulations.  For example, while Captain Tortora developed his background and expertise on 689-foot-long boats like USNS Carl Brashear,[11] the jury will hear that the *Conception* was 75-feet long.  While Captain Tortora gained experience serving as a Master and First Officer of boats weighing 40,000 tons,[12] the jury will hear that the *Conception* weighed under 100 tons.  Captain Tortora holds credentials permitting him to operate vessels of unlimited tonnage,[13] while Mr. Boylan held a 100-Ton credential.  Captain Tortora developed his experience and opinions while running millions of tons of ammunition and jet fuel tanks,[14] while the *Conception* ferried passengers around on scuba dive trips and water color excursions.  Captain Tortora oversaw a crew of 250+ persons,[15] while the *Conception* typically operated with no more than 6 employees on the vessel and the COI required only 4 crew.[16]  Captain Tortora received training on advanced firefighting

---

[11] *See* Exh. B at 8 (Tortora CV reflecting experience on USNS Carl Brashear); "USNS Carl Brashear (T-AKE 7)" Naval Vessel Register. United States Navy. *available at* https://www.nvr.navy.mil/SHIPDETAILS/SHIPSDETAIL_AKE_7.HTML

[12] *Id.*

[13] Ex. B (Tortora CV) at 1.

[14] Ex. B (Tortora CV) at 8.

[15] Ex. B (Tortora CV) at 3 (citing "250+ supervision").

[16] NTSB Report at 1.

and now teaches a course on the subject,[17] while Truth Aquatics employees never received such training.  Captain Tortora "tightly controlled an annual budget of $8.6 million and managed ship and cargo valued at $2 billion,"[18] while the *Conception* was valued at $1.4 million.[19]  In other words, Captain Tortora and Mr. Boylan did not only operate in different oceans—they practiced in different fields of the marine industry entirely.  Because his experience is limited to a very different type of maritime activity than the one at issue in this case, there is no basis to believe that Captain Tortora has any specialized knowledge or expertise about the operations of small passenger vessels, the training or management of small crews on those vessels, or the regulations that are applicable to small passenger vessels and not the larger vessels Captain Tortora spent his career working on.

In other words, Captain Tortora's qualifications in one niche area of the maritime industry—cargo logistics or towing and firefighting related to those contexts—do not permit him to offer opinion testimony in another niche area of the maritime industry—small passenger vessels and diving excursions.  *See, e.g.*, *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."); *United States v. Hebah*, 164 F. App'x 678, 690 (10th Cir. 2006) (affirming exclusion where psychologist's "resume failed to establish . . . any expertise in the area of false confessions, and specifically omitted any reference to his training, research, or published articles on the topic").[20]

---

[17] Ex. B (Tortora CV) at 1, 2.

[18] Ex. B (Tortora CV) at 4.

[19] NTSB Report at vi.

[20] An amendment to Rule 702 is set to take effect later this year and seeks to clarify the standard for admissibility of an expert's opinion testimony.  According to the Advisory Committee, the amendment to Rule 702 serves to clarify and emphasize two issues: (1) that the proponent of an expert opinion must demonstrate the proffered

Because Captain Tortora's expertise and background lie in a different niche area of the maritime industry, his proffered testimony "'will not speak to the case at hand and hence will be irrelevant.'"  *See De Saracho v. Custom Food Mach., Inc*., 206 F.3d 874, 879 n. 5 (9th Cir. 2000) (quoting *Bradley v. Armstrong Rubber Co*., 130 F.3d 168, 177 (5th Cir. 1997)).  It must be excluded.

### 3. Captain Tortora's Opinion Lacks Reliability and Relevance Because it is Not Based on Discovery, Data, or Any Other Dependable Source

Even a supremely qualified expert cannot sail into the courtroom and render opinions unless those opinions are based upon some recognized method and are reliable and relevant under *Daubert*.  Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Even if Captain Tortora were qualified to offer expert opinion in the niche area of small passenger vessels (he is not), his testimony must still be excluded because it is not based on the relevant facts of this case and appears unsupported by discovery or data.  First, Captain Tortora's opinion that Coast Guard regulations applicable to the *Conception* required a roving watch and, further, that Mr. Boylan's alleged failure to post a roving watch was negligent, should be excluded because Captain Tortora formed this opinion not only before reviewing discovery but before any criminal charges were even filed against Mr. Boylan.[21]  On September 18, 2020—hardly two weeks after the accident voyage—Captain Tortora met with members of the prosecution team regarding the fire aboard the Conception.  During that meeting, Captain Tortora opined

---

testimony meets the Rule's admissibility requirements by the preponderance of the evidence (that it more likely than not meets the requirements), and (2) that the expert's testimony must remain within the bounds of what can be concluded from the reliable application of the expert's methodology.  *See* Proposed Amendments to Federal Rules of Evidence at https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf.

[21] This proffered opinion must be excluded for the additional reason that it is an improper legal conclusion and goes to the ultimate question. *See* supra at 17.

11

that a lack of roving patrol "would be the first link in the error chain," and "Regarding the vessel *Conception*, in his opinion the master was negligent." (Exhibit C (notes of interview).)

Second, there is no identifiable support for Captain Tortora's proffered opinion regarding the primary causes of marine casualties and marine fires. Nothing in Captain Tortora's CV or expert notice suggests that he has developed expertise or specialized knowledge in marine casualties such that he can opine that that they are "often" the result of fire. Similarly, neither his expert notice nor his CV suggest that he is qualified to provide opinion testimony on the likely causes of marine fires in general, much less marine fires on small passenger vessels primarily used for diving excursions. Neither the expert notice nor Captain Tortora's CV set forth any factual bases or data Captain Tortora relied upon to reach these conclusions.

Indeed, not only does Captain Tortora's proposed testimony appear to be unsupported, it also appears to be incorrect and in direct conflict with a study conducted by the NTSB in connection with its independent investigation of the fire aboard the *Conception*. There, the NTSB examined the frequency of marine accidents for small passenger vessels similar to the *Conception* to assess the risk among different types of small passenger vessels operating domestically over the past two decades. The NTSB prepared a data report for incidents involving small passenger vessels by analyzing vessel events (such as fires), personnel casualty (fatality and injury), and other incident data from the Coast Guard's Marine Information for Safety and Law Enforcement (MISLE) database for the period 2002-2019. The NTSB's study revealed that of over 10,000 incidents reviewed, the most frequent initial event type was "material failure/malfunction," which represented 43 percent (4,575 incidents) of events, while fire represented 2 percent (163 incidents). Of all the small passenger vessels involved in the incidents not linked to the initial event type "personnel casualty," just over 1 percent (97 vessels) were attributed to vessels defined as diving

boats, and the initiating event for 65 of these 97 diving boats was hull/machinery/equipment damage."[22]

Captain Tortora provides no foundation explaining how he arrived at his "expert" opinion about the causes and frequency of marine casualties and marine fires. All he provides is his say-so. But his say-so is insufficient to admit his opinions under Federal Rule of Evidence 702. *See United States v. Sayre*, 434 Fed. App'x 622, 624 (9th Cir. 2011) (affirming district court's exclusion of a defense expert and observing that "[N]othing in either *Daubert* . . . or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Another federal court has found Captain Tortora's expert opinion unreliable, unconnected to the facts of the case, and unpersuasive. In connection with litigation related to a fire aboard the *MSC Flaminia*—a 900-foot, 75,000-ton container ship—one of the parties proffered Captain Tortora as a firefighting expert.[23] (As explained below, the trial court excluded as "improper" Captain Tortora's proffered legal opinions and conclusions regarding the vessel operator's compliance with laws and regulations.) Among other things, Captain Tortora testified that the *MSC Flaminia* crew did not properly drill and train, but the court stated that, "the Court's factual determination is to the contrary."[24] And while Captain Tortora focused on whether the fire had not been properly "starved" of oxygen, the court had already found that the fire was not caused by the introduction of oxygen.[25] The court found that Captain Tortora's opinion that the crew's actions led to disorder was unsupported by the facts. Ultimately, the court

---

[22] Appendix C, NTSB Report at 84.

[23] *In re M/V MSC FLAMINIA*, 339 F. Supp. 3d 185, 226 (S.D.N.Y. 2018), aff'd in part, rev'd in part and remanded sub nom. *In re M/V MSC Flaminia*, 72 F.4th 430 (2d Cir. 2023)

[24] *Id.*

[25] *Id.*

13

1 "found Captain Hall more persuasive and therefore relies on his testimony and not on
2 that of Captain Tortora."[26]

3       Ultimately, for all of these reasons, Captain Tortora's opinions lack a sufficient
4 and reliable basis for admission. *See, e.g.*, *Newell Rubbermaid, Inc. v. Raymond Corp.*,
5 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert
6 include reliance on anecdotal evidence, improper extrapolation, failure to consider
7 other possible causes, lack of testing, and subjectivity. In addition, if a purported
8 expert's opinion was prepared solely for litigation, that may also be considered as a
9 basis for exclusion." (citation omitted)).

10       **4.  Captain Tortora's Opinion that "Fire at Sea is Dreaded" Will Not
11          Help the Jury**

12       The threshold requirement of Rule 702 is that the expert testimony "will help the
13 trier of fact to understand the evidence or to determine a favor in issue[.]" Fed. R. Evid.
14 702.  Expert testimony should "not extend to matters within the knowledge of laymen."
15 *United States v. Boney*, 977 F.2d 624, 628 (D.C. Cir. 1992).  Testimony based on a
16 witness's expertise is unhelpful if it speaks to a point that the average juror would have
17 no difficulty assessing without help. *E.g.*, *United States v. Romo*, 413 F.3d 1044, 1050
18 (9th Cir. 2005) (holding that testimony of White House employee that language of
19 defendant's letter would be threatening to a reasonable person was improperly admitted
20 because a juror would need no expert help in assessing the question).  On the other
21 hand, expert testimony can be particularly helpful where the average juror's
22 understanding of an area, such as the unreliability of eyewitness identification is
23 particularly limited.  *See United States v. Brownlee*, 454 F.3d 131, 141 (3d Cir. 2006)
24 (reversing conviction where defense expert testimony on accuracy of eyewitness
25 identification was erroneously excluded).

---
[26] *Id.*

14

Captain Tortora's purported expert testimony that "fire at sea is dreaded" would not assist the jury.  It is a matter of common sense and common experience that fire— whether at sea, on air, or on land—is to be avoided.  *See, e.g.*, *Noel v. United Aircraft Corp.*, 219 F. Supp. 556, 559 (D. Del. 1963), aff'd in part, remanded in part, 342 F.2d 232 (3d Cir. 1964) ("Fire in flight is the greatest dread of an airline pilot."); *Sierra Forest Legacy v. Rey*, 526 F.3d 1228, 1233 (9th Cir. 2008), opinion withdrawn and superseded on reh'g, 577 F.3d 1015 (9th Cir. 2009) ("Surely the avoidance of catastrophic fire in the national forests must rate a high priority among the needs of the nation."); *Chernetsky v. Nevada*, No. 3:06-CV-0252-RCJ-RAM, 2006 WL 8429763, at *4 (D. Nev. Nov. 16, 2006) ("Fire is inherently dangerous and unlimited access in a prison setting would expose the State to unreasonable security risks.")  Put differently, it is widely known and understood that fire is dangerous and to be avoided, and, as such, Captain Tortora's expert opinion that "fire at sea is dreaded" is hardly an opinion at all and is insufficient to guide the jury.

Courts routinely find that expert testimony derived from common sense rather than specialized knowledge is unnecessary and therefore inadmissible.  *See, e.g.*, *Koenig v. Johnson*, 2:18-cv-3599-DCN, 2020 WL 2308305, at *6 (D.S.C. May 8, 2020) ("An expert's common-sense testimony based on knowledge well within the grasp of a jury is inadmissible, even where that common-sense testimony is extrapolated from legitimate expert testimony."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F.Supp.3d 396, 484 (S.D.N.Y. 2016) ("If [an expert's] opinion is based on simple common sense, it is not helpful; the jury does not need expert opinion because its common sense will suffice.") *Banuchi v. City of Homestead*, 606 F.Supp.3d 1262, 1286 (S.D. Fl. 2022) (excluding expert testimony on an issue that was not "beyond the common sense understanding of the average layperson").  Courts have also acknowledged that "[u]nless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence . . . ." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996).

15

"Fire at sea is dreaded" is a common sense, commonly understood proposition that is well within a jury's understanding. Consequently, Captain Tortora's testimony on that issue offers no valuable insight to the jury. It is unnecessary and should be excluded.

**B. At Minimum, the Court Should Exclude Captain Tortora's Testimony Regarding Coast Guard Regulations**

The Government's expert notice states that Captain Tortora will testify about regulations promulgated by the Coast Guard. Specifically, it states that he will testify that: (1) the Coast Guard's regulations applicable to the Conception required an overnight roving patrol; (2) that the purpose of the regulation's requirement is "to identify and act upon fire and flooding in all spaces"; and (3) that Mr. Boylan was negligent for failing to post a roving patrol on the Conception. These opinions about the Coast regulations are inadmissible, as they have nothing to do with Captain Tortora's supposed area of expertise, training, or experience, and further call on him to draw an improper legal conclusion.[27]

**1. Captain Tortora is not an expert on the law or Coast Guard regulations applicable to small passenger vessels**

Captain Tortora has no training or experience rendering him an expert qualified to interpret or opine about regulations promulgated by the Coast Guard. And he is especially not qualified to opine about the specific regulations that are applicable only to small passenger vessels like the *Conception*—not the larger vessels Captain Tortora has spent his career working on.[28] He has no legal training, never worked for the Coast Guard as an inspector implementing the regulations, and the notice offers no reason to

---

[27] Mr. Boylan will be filing a separate motion arguing that the Coast Guard regulations named in the indictment are inadmissible. But regardless of the Court's ruling on that general motion, Captain Tortora's proffered testimony about the regulations should be excluded.

[28] *See* 46 C.F.R. § 175.110 (stating that subchapter T regulations apply only to small passenger vessels "of less than 100 gross tons that carr[y] 150 or less passengers").

1  believe he is qualified to opine about the regulations.  His proffered testimony—about

2  which regulations applied to the *Conception*; the purpose animating those regulations;

3  and whether Mr. Boylan failed to comply with those regulations—is entirely without a

4  basis in his area of expertise.  At bottom, this proffered testimony asks Captain Tortora

5  to interpret legal texts.  He is not qualified to offer this testimony under Rule 702.  *See*

6  Fed. R. Evid. 702 (expert must be qualified based on specialized "knowledge, skill,

7  expertise, training, or education").

8              **2.  The Proffered Testimony Constitutes an Impermissible Legal**

9                     **Conclusion on an Ultimate Issue of Law**

10         Under Federal Rule of Evidence 704(a), expert testimony is not objectionable

11  solely "because it embraces an ultimate issue"; however, "an expert witness cannot

12  give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law."

13  *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original).  The

14  reasoning behind this prohibition is that "when an expert undertakes to tell the jury

15  what result to reach, this does not *aid* the jury in making a decision, but rather attempts

16  to substitute the expert's judgment for the jury's." *Id*. (quoting *United States v. Duncan*,

17  42 F.3d 97, 101 (2d Cir. 1994) (emphasis in original)).

18         Captain Tortora's opinion that Coast Guard regulations required the posting of a

19  night watch and Mr. Boylan was negligent for his alleged failure to post one must be

20  excluded.  *Andrews v. Metro North Commuter R. Co*., 882 F.2d 705, 709-10 (2d Cir.

21  1989) (vacating a judgment on the grounds that the trial allowed an expert witness to

22  testify on the issue of negligence of the defendant, finding that the court abused its

23  discretion when it permitted an expert to testify in a train accident suit that the railroad

24  was negligent in its operation of the train where a determination of negligence rested on

25  a finding of a breach of duty, the existence and nature of which had to be defined as a

26  matter of law by the trial judge.)

27         Captain Tortora's proffered opinion that Mr. Boylan was negligent for failing to

28  post a roving watch is especially improper.  For starters, whether or not Mr. Boylan was

17

"negligent" is irrelevant in this case, since, as this Court previously held, a manslaughter charge asks whether he was *grossly* negligent.  Permitting Captain Tortora to opine about whether Mr. Boylan's conduct met the wrong, less stringent legal standard would be both irrelevant and highly misleading and prejudicial.  *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

Moreover, Captain Tortora's opinion that failing to have a roving watch automatically renders a captain negligent improperly imputes a negligence per se standard into this case.  But the standard of care for a criminal manslaughter charge cannot be established *per se* by showing that the defendant violated a civil regulation or statute.  *See United States v. Garcia*, 729 F.3d 1171, 1175–77 (9th Cir. 2013) (reversing manslaughter conviction under 18 U.S.C. § 1112 since the jury instruction erroneously implied that a violation of a traffic regulation *per se* established the manslaughter standard of care); *United States v. Pardee*, 368 F.2d 368, 373-75 (4th Cir. 1966) (reversing manslaughter conviction because "We do not agree with the Government's contention that any unlawful act proximately causing the death is sufficient to" establish manslaughter).  Instead, the decision of what conduct rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it rises to criminally liable conduct.  *Pardee*, 368 F.2d at 375; *see also United States v. Garcia*, 729 F.3d 1171, 1176–77 (9th Cir. 2013) (jury instruction is erroneous if it implies that violation of civil law itself establishes standard of care for criminal manslaughter); *United States v. Keith*, 605 F.2d 462, 463–65 (9th Cir. 1979) (relying on *Pardee* and reversing manslaughter conviction).

Indeed, Captain Tortora has been precluded before from offering as expert testimony his legal conclusions based on his interpretations of the governing laws and regulations and their alleged violations.  In *In Re M/V MSC Flaminia*, Captain Tortora was offered as an expert witness in a bench trial concerning a fire aboard the *MSC*

18

*Flaminia*, which was a 75,000 ton, 900-foot container ship that sustained a fire while it was about 1,200 miles from the nearest land. (Case No. 12-cv-08892-GBD-SLC, S.D. N.Y.) Captain Tortora was retained to assess whether the owners of the vessel were adequately prepared for a fire emergency and whether their response was appropriate. The trial court found that even though the trial would be a bench trial, that did not diminish, let alone eliminate the requirements of Rule 702. (*Id*. at ECF No. 1282.) The court determined to exclude Tortora's opinion as to whether the fire could have been prevented, finding it unexplained and unsupported. The court then found Captain Tortora's testimony as to proper marine firefighting on the large container ship was appropriate but excluded as "improper" Captain Tortora's proffered legal opinions and conclusions regarding compliance with laws and regulations.

Captain Tortora's proffered testimony about the regulations would usurp the role of the jury in reaching an ultimate issue of law—whether Mr. Boylan acted negligently; would do so by opining on the wrong legal standard—simple, as opposed to gross negligence; and would incorrectly analyze that ultimate question as a negligence per se claim. His opinion must be excluded.

## C. This Court Should Further Exclude Captain Tortora's Testimony Under Rule 403 Because Any Relevance Is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion, and Undue Delay

Like all evidence, a district court may refuse to admit relevant expert testimony under Rule 403, *Vallejo*, 237 F.3d at 1021, which permits exclusion of otherwise relevant evidence where its probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Supreme Court has observed: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more

19

1   control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal
2   quotation marks omitted).

3          Here, even if this Court were to find Captain Tortora's testimony relevant and
4   reliable, his testimony would be substantially outweighed by the danger of unfair
5   prejudice, confusion, and a waste of time. Captain Tortora's testimony risks confusing
6   the jury about what vessels and regulations are at issue and, significantly, about what
7   the industry standard actually is in terms of training and firefighting preparedness.  As
8   explained above, Captain Tortora's background and experience is with vessels several
9   orders of magnitude larger than the *Conception* that had crews scores of times bigger
10  than the crew of the *Conception* and that ran missions dramatically different from the
11  diving excursions run by the *Conception*.  Furthermore, Captain Tortora has received
12  advanced training in firefighting and now teaches a course on the subject, but nothing
13  in the evidence suggests that Mr. Boylan or other operators of small passenger vessels
14  in the Santa Barbara area ever received such training, and nothing in Captain Tortora's
15  expert disclosure or CV connect his proposed testimony to small passenger vessels in
16  the Santa Barbara area.  Put simply, Captain Tortora's proposed testimony is
17  unconnected from the evidence that will be presented to the jury and it thus risks
18  confusing the jury about not only what vessels and regulations are at issue but also
19  about what the industry standard actually is with respect to firefighting and training.

20         For all of these reasons, the Court is well within its power to exclude Captain
21  Tortora's testimony under Rule 403 and should do so.

22     **D. If the Court is Not Inclined to Exclude Captain Tortora, it Must Instead**
23         **Hold a Pretrial Evidentiary Hearing on His Admissibility**

24         In determining the admissibility of expert testimony under Rule 702, a trial court
25  must engage in a rigorous three-part inquiry, considering whether: "(1) the testimony is
26  based upon sufficient facts or data, (2) the testimony is the product of reliable
27  principles and methods, and (3) the witness has applied the principles and methods
28  reliably to the facts of the case." See Rule 702. The Advisory Committee's Note to the

2000 amendment specifically explains that, like *Daubert*, "[t]he amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." *Id*.

If the Court is unwilling to exclude Captain Tortora's testimony outright, Mr. Boylan requests a hearing in advance of trial to challenge the admissibility of the expert testimony.

## IV. CONCLUSION

For the foregoing reasons, Mr. Boylan respectfully requests that this Court grant his motion in limine to exclude the expert testimony of Captain Sean Tortora.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  September 18, 2023        By   */s/ Gabriela Rivera*
_____
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSH WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN