CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JERRY NEHL BOYLAN, <br><br> Defendant. | Case No. 2:22-CR-00482-GW <br><br> **DEFENDANT'S MOTION IN LIMINE NO. 7: MOTION TO PRECLUDE IMPROPER LAY WITNESS OPINIONS** <br><br> **PRETRIAL CONFERENCE:** <br> **October 12, 2023 at 8:00 a.m.** <br><br> **The Honorable George H. Wu** |

1

Jerry Nehl Boylan, through his counsel of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, Julia Deixler, and Josh Weiss, hereby moves this Honorable Court for an order to preclude the government from eliciting improper opinion testimony from lay witnesses.

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 21, 2023        By  *Julia Deixler*
                                 GEORGINA WAKEFIELD
                                 GABRIELA RIVERA
                                 JULIA DEIXLER
                                 JOSHUA WEISS
                                 Deputy Federal Public Defenders
                                 Attorney for JERRY NEHL BOYLAN

## I. INTRODUCTION

Again and again throughout the course of its pretrial investigation, the government has asked lay witnesses with no legal training to opine on whether Jerry Boylan committed negligence or breached his duties as a captain. The defense previously filed a Motion to Dismiss based on this improperly suggestive questioning because it has tampered with the evidence that will be presented at trial. The defense now seeks a further order to preclude the government from asking similarly improper questions at trial. Eliciting opinion testimony from lay witnesses regarding legal conclusions such as what caused the tragic accident on the *Conception* or what constitutes "negligence," a "breach of duty," or "inattention to duty" is clearly improper and inadmissible under Rules of Evidence 701 and 704. So too are speculative hypotheticals about what lay witnesses would have done in Mr. Boylan's shoes. The Court should preclude the government from eliciting such testimony.

## II. FACTUAL BACKGROUND

**A.   Throughout its Investigation, the Government has Asked Lay Witnesses to Provide Legal Conclusions About Whether Mr. Boylan Violated Regulations or Committed Negligence.**

**1.   Milton French**

The government intends to call Milton French, the first deckhand on the *Conception* during the accident voyage, as a percipient witness at trial. During the interview of Mr. French, the prosecutor asked him to draw legal conclusions about whether Mr. Boylan was "in compliance with the law." MTD Ex. 3 at 82.[1] The prosecutor engaged in the following exchange with Mr. French, who has no legal training and does not even hold a captain's license:

---

[1] In order to avoid repetition of exhibits, this motion cross-references the exhibits in support of the defense's previously filed Motion to Dismiss (Dkt. 79) and the reply brief in support (Dkt. 110).

1

| | | |
|---|---|---|
| AUSA Johns: | | If I would tell you that Certificate of Inspection requires a roving patrol to look for dangerous situations and to sound the alarm in case of fire and man overboard things like that |
| Milton French: | | Hmm. |
| AUSA Johns: | | When anybody is down in the bunk or berthing area ... um whether at night or during the day. |
| Milton French: | | Hmm. |
| AUSA Johns: | | How would you feel about Truth Aquatics compliance with its operating license? |
| Milton French: | | Um |
| AUSA Johns: | | Would you say… would you feel if they were in compliance with their operating license and C.O.I? |
| Milton French: | | No. |
| AUSA Johns: | | If I were to tell you that there is a regulation of t-boat regulations [UI] regulations 185 point 4-10 which requires at any time at night. Whether on the way or not [UI] passengers are below um the bunking area that there must be a watch stood on that vessel to sound the alarm in case of fire, man over board or other dangerous situation. Would you feel that Truth Aquatics and Captain Boylan were in the compliance with the law? |
| Milton French: | | No. |

*Id*. at 81-82.

### 2. Brian Priddin

The government is also expected to call Brian Priddin as a fact witness at trial. Mr. Priddin worked at Truth Aquatics for just 15 days.  During Mr. Priddin's interview, the prosecutor asked him if a failure to maintain a roving patrol constituted a "breach[ of] your duties as a credentialed merchant mariner." MTD Ex. D at 76.  The prosecutor then clarified that he did not mean to "put it on [Mr. Priddin]," but was "actually trying to understand how we put in context Captain Boylan's [in]attention to duties." *Id.*[2]

---

[2] In its Opposition to the Motion to Dismiss, the government accuses the defense of misquoting AUSA Johns, asserting that he actually said "attention to duties." *See* Dkt. 85 at 11 n.4.  But the audio of Mr. Priddin's interview makes clear that AUSA Johns actually said "Captain Boylan's *in*attention to duties." Ex. A (Priddin Audio) at 1:49:15-29.  In any case, the question is improper with either phrasing.

2

### 3. Matthew Curto

The government also intends to call Matthew Curto as a fact witness at trial. Mr. Curto told the government that he would occasionally fill in as crew on Truth Aquatics trips, and had only worked on an estimated ten trips on Truth Aquatics boats throughout his 20-year career. MTD Ex. G at 3-4. During an interview of Mr. Curto, the case agent asked, "And if a captain fails to comply with the stipulations of a COI, would you say that he's negligent in his duties?" *Id*. at 21. Mr. Curto responded, "Yeah. But every boat has a different COI, so you don't really know what the regulations are on each boat." *Id*.

### 4. Other Potential Trial Witnesses

There are several other examples of the government engaging in improper questioning of lay witnesses during its investigation. At this time, it is unclear whether the government intends to call the other witnesses that were identified in the defense's Motion to Dismiss, including Taylor Fitts, Chris Russello, Robert Horne, Don Lee Rowell, James Hrabak, and Jeffrey Beller. The government has said it does not intend to call Roy Hauser as a witness. But the questions asked by prosecutors and case agents of each of these witnesses provide a clear warning of the improper questioning that the government may continue to engage in with lay witnesses during trial.

- A case agent asked former crewmember Taylor Fitts, "would you agree, that if a captain failed to abide by what's required of him on the COI, that he is negligent in his duties?" MTD Ex. E at 60.
- Chris Rosello, a former passenger and crewmember on Truth Aquatics boats, was asked if "it was safe to say" that a crew member who failed to properly conduct a night watch "was negligent in what he was supposed to be doing." MTD Ex. J2 at 24. The agent then asked, "If the captain or crew fails to comply with the COI, is that negligence as well, in your view?" *Id*. Russello responded,

3

"I'm not an attorney. Negligence is such a broad term. How you define it, I don't know." *Id.*

- Former crewmember Robert Horne was asked a question that prompted him to say "that if a captain failed to abide by the COI, they were negligent in their duties." MTD Ex. K at 3.

- Former crewmember Don Lee Rowell was also apparently asked directly about "negligence." The report of his interview states, "Rowell said that if a captain failed to do what was required on the Certificate of Inspection he would call this negligence." MTD Ex. L at 3.

- In interviewing former employee Jeffrey Beller, the government explicitly informed Mr. Beller that Mr. Boylan violated a regulation, and asked him to provide a legal opinion about any other regulations that were violated. The agent "asked Beller if he was aware of any other violation of the CFR's while serving aboard the Conception." MTD Ex. Q at 3. Mr. Beller replied that "he did not think there were any violations of the CFR until [the case agent] pointed out the lack of a 24 hour roving patrol, but was not aware of anything else." *Id.*

- Roy Hauser, the former owner of Truth Aquatics, was asked by the prosecutor that if a master of a vessel doesn't comply with a safety regulation, "that's a breach of their duty, is it not? As the captain?" MTD Ex. A at 97.

**B. The Government Has Improperly Asked Lay Witnesses to Opine on the Legal Element of Causation.**

Other interview reports suggest that the government also asked witnesses to speculate about whether a lack of a roving patrol was a but-for cause of the deaths in the accident, which is an element of the gross negligence offense that will be litigated at trial. For example, the report on the interview of James Hrabak, a former Truth Aquatics captain, says "Hrabak stated, 'If we would have had a roving watch, this may not have happened.'" MTD Ex. P at 3.

4

The prosecutor made an even more direct assertion of causation when interviewing Roy Hauser, stating, "You do understand that if Captain Boylan and if Glen[] Fritzler had made sure that Captain Boylan is complying with the watchmen requirement, and if Captain Boylan was also complying with the roving patrol requirement, you do understand that that fire would have been found and detected, and 34 people would be alive." MTD Ex. A at 143.

## III. ARGUMENT

To comply with Rule 701, an opinion from a lay witness must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The distinction "incorporate[d]" into Rule 701 "is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Id.*, advisory committee's note to 2000 amendment. Opinions of non-experts are only admissible in limited circumstances "where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion." *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1981). As the Ninth Circuit explains:

> If it is impossible or difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed.

*Id*. The proponent of the lay opinion testimony bears the burden of demonstrating an adequate foundation for the testimony.

5

Here, there is no basis for the government to introduce lay opinion testimony that calls for legal conclusions or answers speculative hypotheticals about Mr. Boylan's conduct. Such testimony would not only be unhelpful to the jury, it would improperly usurp the jury's fact-finding role. *See United States v. Diaz*, 951 F.3d 148, 156 (3d. Cir. 2020) (lay testimony that defendant worked as a subordinate of another individual to bag and distribute drugs was "conclusory," "obviously unhelpful," and should have been excluded). The jury is perfectly capable of understanding testimony within the lay witnesses' personal knowledge and observations without those witnesses providing opinions about the ultimate issues the jury will decide in this case.

### A. The Government Should be Precluded From Eliciting Impermissible Legal Conclusions from Lay Witnesses, Including that Mr. Boylan was Negligent, Inattentive to Duties, or Breached His Duties.

Lay opinion testimony should not usurp the fact-finding role of the jury. *United States v. Garcia,* 413 F.3d 201, 210- 11 (2d Cir. 2005); *United States v. Grinage,* 390 F.3d 746, 750- 51 (2d Cir. 2004) (holding that agent's interpretation of wiretapped phone calls was unhelpful to jury). Under Rule of Evidence 704(a), testimony is not objectionable solely "because it embraces an ultimate issue." Fed. R. 704(a). "But a witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original). A lay witness opinion is also barred where "its primary value is to dictate a certain conclusion." *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016). Such conclusory testimony undermines the goal of Rule 701 to exclude assertions "which amount to little more than choosing up sides." Fed. R. Evid. 701 advisory committee note. *See also United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013) (Rule 701 barred an officer's testimony which essentially "spoon-fed his interpretations of the phone calls and the government's theory of the case to the jury"); *United States v. Rollins,* 544 F.3d 820, 833 (7th Cir. 2008) (admitting agent's

impressions of intercepted conversation because the agent "was not merely telling the jury what result to reach as to the defendants' culpability").

Throughout its pretrial investigation and trial preparation, the government has repeatedly asked witnesses to opine on the ultimate issue of the case by asking about "negligence," a "breach of duties," "inattention to duties," and similar phrases. The government's prior tactic (which is likely ongoing, as the government believes such questions are perfectly appropriate) raises serious concerns that the government will attempt to elicit similar information from lay witnesses at trial. To do so would be entirely improper. Opinions about whether Mr. Boylan or Truth Aquatics breached or violated a law, duty, or regulation rely on legal terms of art that the lay witnesses are not qualified to opine on. Such opinions are highly likely to mislead the jury, particularly when the witnesses themselves do not have a specialized knowledge of the terms' meanings. *See, e.g.*, Ex. F at 24 ("I'm not an attorney. Negligence is such a broad term. How you define it, I don't know."). The Seventh Circuit has explained the particular dangers of this type of testimony:

> When, as here, a witness is asked whether the conduct in issue was "unlawful" or "willful" or whether the defendants "conspired," terms that demand an understanding of the nature and scope of the criminal law, the trial court may properly conclude that any response would not be helpful to the trier of fact. The witness, unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is. If either event is true the jury may accord too much weight to such a legal conclusion.

*United States v. Baskes,* 649 F.2d 471, 478 (7th Cir. 1980).

Further, even if a lay witnesses at trial had some foundation to provide expert opinions (although no witness does for the opinions addressed in this motion), Rule 701 "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." F. R. Evid. 701, advisory committee notes (2000). In some cases, the

same witness can provide both lay and expert testimony. But the government cannot "evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson." *Id*. Here, although some lay witnesses in this case may have general knowledge of Coast Guard t-boat regulations or other rules, this does not qualify them to provide expert opinion as to whether those rules or regulations were violated in this case. Many witnesses may have, for example, reviewed a certificate of inspection, either for the *Conception* or another vessel. Some may have instituted their own version of a "roving patrol," or other practices in response to rules and regulations governing their vessels. But these observations and experiences alone are not enough to permit opinion testimony if that opinion is derived—even in part—from specialized knowledge. "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (DEA agent testifying as lay witness should not have been permitted to testify that defendant was engaging in countersurveillance or that defendant's conduct was "consistent with the practices of an experienced drug trafficker").

**B. The Government Should Be Precluded from Eliciting Lay Testimony that the Accident Could Have Been Avoided or Mitigated But For the Use of a Roving Patrol or Any Other Particular Factor.**

The government has also asked several lay witnesses whether the accident could have been avoided, had there been a roving patrol on the *Conception* or had some other hypothetical factor or requirement been met. This testimony must be excluded because there is no foundation for it. No single witness can credibly testify to a counterfactual about how the accident may have hypothetically been avoided. Federal Rules of Evidence 602 and 701 prevent speculation on matters outside of the witness's personal knowledge. "It is axiomatic that a witness will not be permitted to speculate, guess, or voice suspicions." 27 FED. PRAC. & PROC. EVID. § 6026 (2d ed.). Lay opinions

must be based on the witness's personal perception of the facts at issue, and not based on hearsay, assumptions, or speculation. *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015).

Furthermore, such questions call for a legal conclusion because they encompass the element of causation that the government must prove at trial. Were a trial witness to say, as AUSA Johns did, that if Mr. Boylan had "compl[ied] with the roving patrol requirement . . . 34 people would be alive," it would be tantamount to providing a legal conclusion regarding the causation element of the offense and usurping that element from the jury's deliberation. The government should be precluded from asking questions of this variety for the same reasons that it should be precluded from eliciting opinions about negligence or a breach of duty. *See, e.g., United States v. Urena*, 659 F.3d 903, 908 (C.D. Cal. 2011) (doctor's "opinion on issues of causation required expert testimony").

## C. The Government Should be Precluded from Asking Hypothetical Questions to Lay Witnesses.

Based on this prohibition against speculative testimony, courts routinely exclude testimony about what a witness would have done if confronted with a hypothetical set of circumstances. *See United States v. Henderson,* 409 F.3d 1293, 1300 (11th Cir. 2005) ( "[T]he ability to answer hypothetical questions is the essential difference between expert and lay witnesses."); *Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1202 n.16 (3d Cir.1995); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592, (1993). Given the requirement that lay witnesses have personal knowledge of the matter on which they are testifying, "a lay witness generally cannot answer hypothetical questions because speculative testimony about what 'might have happened' or what a witness 'would have done under different circumstances cannot possibly be based on the witness's perception.'" *Sempra Energy v. Marsh USA, Inc.*, Case No. 07-cv-05431-SJO, 2008 WL 11335050, *13 (C.D. Cal. Oct. 15, 2008).

Here, asking witnesses to respond to hypothetical questions about what they would have done in Mr. Boylan's shoes either before or during the accident would elicit impermissible speculation. Such speculation would not be based on the witness's personal knowledge as Rules 602 and 701 require. Thus, the Court should preclude the government from asking such questions.

Moreover, hypothetical questions to lay witnesses should be excluded under Federal Rule of Evidence 403. Such evidence has little, if any, probative value and that is substantially outweighed by the risk of undue prejudice or jury confusion. Allowing lay witnesses to give opinions on what they would have done in Mr. Boylan's shoes usurps the role of the jury. It is the jury's job to determine whether Mr. Boylan's actions were reasonable, not a lay witness who was not present for the events at issue.

### IV. CONCLUSION

For the foregoing reasons, Mr. Boylan respectfully requests that the Court issue an order precluding the government from engaging in improper questioning of lay witnesses at trial, including by asking them to provide improper opinions, legal conclusions, or answer improper hypotheticals.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 21, 2023      By  *Julia Deixler*
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA WEISS
Deputy Federal Public Defenders
Attorney for JERRY NEHL BOYLAN

10