CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>Defendant. | Case No. 22-cr-00482-GW<br><br>**OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO REVISIONS TO COAST GUARD REGULATIONS AFTER SEPTEMBER 2, 2019**<br><br>Pretrial Conference:<br>October 12, 2023, at 8:00 a.m.<br><br>The Honorable George H. Wu |

Jerry Nehl Boylan, through counsel, files this opposition to the government's motion in limine to exclude any evidence or argument regarding the Coast Guard's revisions to regulations after the *Conception* accident on September 2, 2019. (Dkt. No. 108.)

//

//

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  September 21, 2023          By   /s/ Joshua D. Weiss

GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

2

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT................................................................................................ 4

      A.   The Coast Guard's post-accident regulatory changes are probative to assessing Mr. Boylan's guilt or innocence, not to cast blame on the Coast Guard ....................................................................................... 4

           1.   The post-accident regulatory changes are probative to whether Mr. Boylan acted with "wanton or reckless disregard for human life" ........................................................................................ 4

           2.   The post-accident regulatory changes are probative of the knowledge element of the manslaughter charge............................. 6

           3.   The post-accident regulatory changes are probative of the causation element................................................................... 8

      B.   Even if the only probative value of the post-accident regulatory changes was to shift blame to the Coast Guard—which it is not—that would be a valid trial defense ...................................................... 9

      C.   Rule 407 does not apply here ................................................................ 10

III.  CONCLUSION .......................................................................................... 13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*United States v. DSD Shipping, A.S.*,
  No. 15-102, 2015 WL 5722805 (S.D. Ala. Sept. 29, 2015) ..............................11

*United States v. Garcia*,
  729 F.3d 1171 (9th Cir. 2013) ...........................................................................4

*United States v. Keith*,
  605 F.2d 462 (9th Cir. 1979) .....................................................................*passim*

*United States v. Kilty*,
  No. 19-50351, 2022 WL 152446 (9th Cir. Jan. 18, 2022) .............................7, 9

*O'Dell v. Hercules, Inc.*,
  904 F.2d 1194 (8th Cir. 1990) ..........................................................................10

*United States v. Pac. Gas & Elec. Co.*,
  178 F. Supp. 3d 927 (N.D. Cal. 2016) ........................................................10, 11

*United States v. Pardee*,
  368 F.2d 368 (4th Cir. 1966) .....................................................................1, 4, 5

*United States v. Parker*,
  634 F. Supp. 3d 583 (W.D. Ark. 2022) ............................................................10

*United States v. Patel*,
  No. 3:21-CR-220 (VAB), 2023 WL 2643815 (D. Conn. Mar. 27, 2023) ..........10

*Pau v. Yosemite Park & Curry Co.*,
  928 F.2d 880 (9th Cir. 1991) ............................................................................10

*Raymond v. Raymond Corp.*,
  938 F.2d 1518 (1st Cir. 1991) ...........................................................................10

*White v. Knipp*,
  No. 2:11-CV-3016, 2013 WL 5375611 (E.D. Cal. Sept. 24, 2013) ....................9

**Federal Statutes, Rule, and Regulations**

18 U.S.C. § 1112 ....................................................................................................4

46 C.F.R. § 185.410 ...............................................................................................6

# **TABLE OF AUTHORITIES**

**Page(s)**

86 Federal Register No. 245 (Dec. 27, 2021), *available at*
   https://www.govinfo.gov/content/pkg/FR-2021-12-27/pdf/2021-
   27549.pdf .................................................................................................. 6, 8

Fed. R. Evid. 407 .................................................................................. *passim*

Fed. R. Evid. 403 ......................................................................................... 9

iii

# I. INTRODUCTION

The government has indicated it intends to have various expert witnesses testify about three regulations promulgated by the Coast Guard that are named in the indictment.  (*See* Dkt. No. 1.)  At the same time, it has filed a motion in limine to exclude evidence or argument relating to revisions the Coast Guard made to these and other applicable regulations after the *Conception* accident.  (*See* Dkt. No. 108, hereinafter "Mot.")  The government cannot have it both ways.  As was addressed in a separately filed motion, the Court should exclude all evidence or argument relating to any Coast Guard regulations.  Many of the government's arguments regarding the prejudice and confusion that could result from admitting regulatory revisions post-dating the accident apply even more so to the government's attempts to introduce these regulations in the first place.  But, as will be addressed here, if the Court is going to admit any regulations, then it should admit the full universe of applicable regulations so that the jury can evaluate all the relevant duties, risks, and causes of the fire that Mr. Boylan could and could not have been aware of at the time of the accident.  *See United States v. Pardee*, 368 F.2d 368, 375 (4th Cir. 1966) (decision of what conduct rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it rises to criminally liable conduct); *see also United States v. Keith*, 605 F.2d 462, 463–65 (9th Cir. 1979) (relying on *Pardee* and reversing manslaughter conviction).

The government's entire motion attempts to knock down a straw man.  Its motion depends on its assertion that "[t]he only possible relevance of subsequent modifications would be to somehow paint the Coast Guard as being responsible for defendant's gross negligence based on the Coast Guard's subsequent remedial measures, which, as discussed below, is not a proper purpose for such evidence." (Mot. 7.)  This is simply a false premise.  To the extent that any regulations are relevant to understanding a captain's duties and standard of care, the Coast Guard's post-

1

accident regulatory changes are critical to understanding the level of culpability that can be assigned to Mr. Boylan.  This inquiry has nothing to do with casting blame on the Coast Guard; the issue is whether Mr. Boylan can be blamed for the tragedy, or whether it was a tragic but innocent accident in light of the industry's understanding of adequate safety measures at that time.

At trial, the jury will need to decide whether Mr. Boylan's actions as a captain met the threshold of "reckless disregard for human life" given what he knew at the time of the accident, in 2019.  *Keith*, 605 F.2d at 463; (*see also* Indictment, Dkt. No. 1).  It will be critically important to distinguish for the jury what are now widely understood by the industry to be critical safety measures, in light of the *Conception* accident, as opposed to what were understood to be safety priorities prior to that tragedy.  The Coast Guard's post-accident regulatory changes are highly probative to combating an impulse to blame Mr. Boylan based on the knowledge the industry has obtained in hindsight, as a result of the tragedy.  Stated otherwise, these regulatory changes are probative to understanding which safety measures the industry was and was not prioritizing at the time of the accident, which in turn is critical to determine the standard of care in 2019, as opposed to 2023.

Similarly, the Coast Guard's post-accident regulatory changes are critical evidence going to the causation element of manslaughter—an element that the government's motion ignores entirely.  For example, at the time of the accident, the regulations required a vessel like the *Conception* to have two exits from the passengers' sleeping quarters, but they permitted both exits to lead to the same area of the vessel. In compliance with that requirement, the *Conception* had two exits from the bunkroom, but both led to the inside of the salon, which was engulfed in flames during the accident.  As a result, Mr. Boylan and the other survivors were unable to access or save any of the people sleeping below deck.  After the accident, the Coast Guard altered its regulations to require each exit from the sleeping quarters to lead to different areas of a vessel.  This regulatory change will be probative, not to blame the Coast Guard in

hindsight, but to show that an alternate cause of the tragedy was not the fault of Mr. Boylan but was the result of the fact that this vessel design was, at the time, understood to comply with industry standards that we now understand were insufficient.

Moreover, even taken on its own terms, the Government's motion is meritless. Even assuming that the only possible probative value of the Coast Guard's post-accident regulatory changes could be to blame the Coast Guard for the *Conception* tragedy—which, again, it is not—the government is incorrect in insisting that faulting a different actor for the accident would be an improper trial strategy and thus an improper basis to admit evidence. It is, in fact, a typical trial defense to argue that someone other than the defendant in a manslaughter case was at fault for an accident.

Finally, the Government's reliance on Federal Rule of Evidence 407 is misplaced. To the extent it can ever apply in a criminal case, binding Ninth Circuit precedent is clear that it can apply only to prevent the introduction of a *defendant's* subsequent remedial measures to prove his or her guilt. The rule is entirely inapplicable where, as here, the subsequent measures were undertaken by someone other than the defendant. Finally, even if Rule 407 could apply here, the Rule does not bar the introduction of evidence for the purposes for which Mr. Boylan might seek to introduce the post-accident regulatory changes.

As noted above, the defense's position is that no civil regulations should be admitted at the trial. But if the government is going to be permitted to introduce some Coast Guard regulations, it should not be permitted to selectively introduce only the regulations that support its case.

## II. ARGUMENT

### A. The Coast Guard's post-accident regulatory changes are probative to assessing Mr. Boylan's guilt or innocence, not to cast blame on the Coast Guard

Contrary to the government's claim, the Coast Guard's post-accident regulatory changes are highly probative, not to cast blame on the Coast Guard, but to assess Mr. Boylan's guilt or innocence on its own terms.  Specifically, the post-accident regulations are probative to three of the elements of the charged offense: (1) whether Mr. Boylan acted with "wanton or reckless disregard for human life"; (2) whether he "had actual knowledge that his conduct was a threat to the lives of others," or "had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others"; and (3) whether his alleged gross negligence *caused* the deaths of 34 individuals.  (*See* Dkt. No. 1 (charging these elements)); *see also Keith*, 605 F.2d at 463; Ninth Circuit Model Criminal Jury Instruction No. 16.4 (involuntary manslaughter).  The government's entire motion is premised on the claim that the post-accident regulations have no relevance to any issue other than to cast blame on the Coast Guard; because this premise is wrong, the motion should be denied.

#### 1. The post-accident regulatory changes are probative to whether Mr. Boylan acted with "wanton or reckless disregard for human life"

The government's attempt to limit the universe of Coast Guard regulations known to the jury might make sense if seaman's manslaughter could be established *per se* by proof of a violation of a civil regulation.  But it is well established that criminal manslaughter is not a negligence *per se* charge.  *See United States v. Garcia*, 729 F.3d 1171, 1175–77 (9th Cir. 2013) (reversing manslaughter conviction under 18 U.S.C. § 1112 since the jury instruction erroneously implied that a violation of a traffic regulation *per se* established the manslaughter standard of care); *Pardee*, 368 F.2d at

4

373-75 (reversing manslaughter conviction because "We do not agree with the Government's contention that any unlawful act proximately causing the death is sufficient to" establish manslaughter).  Instead, the decision of what conduct rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against *all of the existing circumstances* and determine therefrom whether" it rises to criminally liable conduct.  *Pardee*, 368 F.2d at 375 (emphasis added); *see also Keith*, 605 F.2d at 463–65 (9th Cir. 1979) (relying on *Pardee* and reversing manslaughter conviction).

The government's motion, at times, appears to recognize this totality of the circumstances standard.  It acknowledges, for example, that Mr. Boylan "is free to argue that he did not understand certain regulations or did not think they were important." (Mot. 7.)  This admission gives away the game.  There were myriad issues that could go wrong on a vessel like the *Conception*, and myriad safety precautions and regulations governing those potential risks.  The relative priority Mr. Boylan gave certain precautions as compared to others, and whether his prioritization amounted to a reckless disregard for human life, is a critical question for the jury to determine in "measur[ing] the conduct of the defendant against all of the existing circumstances." *Pardee*, 368 F.2d at 375.  In assessing whether Mr. Boylan's priorities amounted to a reckless disregard for human life, the jury will need to measure his conduct against the safety standards of the industry in 2019.  To the extent the government believes that Coast Guard regulations are probative in establishing that standard, the changes made to those regulations in light of the accident show how the industry's standard today differs from the one in place in 2019.  Clarifying this point—the difference between the industry standard today and the one in place in 2019—will be critical to countering claims of government witnesses, made with the benefit of hindsight, about which safety measures must be a captain's top priority.

For example, a focal claim of the government's case is that Mr. Boylan failed to designate a roving patrol.  It will thus be a primary disputed issue in trial to determine

5

what, exactly, the industry standard was regarding roving patrol in 2019, and how high a priority a non-reckless captain would have placed on a roving patrol, as compared to other essential safety functions that required the attention of his crew.  As addressed in Mr. Boylan's pending motion to dismiss, other captains and industry employees informed government investigators that roving patrol requirements were not strictly adhered to prior to the accident, but attitudes about the importance of a roving watch have become much stricter after the accident.  (Dkt. No. 79 at 3-12.)  Few captains today are willing to admit to their practices prior to 2019—before the tragically clarifying event of the *Conception* fire.  (*Id.* at 15-16.)  The Coast Guard's regulatory changes after the *Conception* tragedy are important evidence to clarify the industry standard in 2019, as opposed to the one in place today.  Thus, if the jury will be permitted to learn that there was a civil regulation addressing roving patrol, it should also learn that the Coast Guard amended the regulation after the *Conception* tragedy to require vessels to install monitoring devices to ensure compliance with roving patrol requirements.  *See* , 46 C.F.R. § 185.410(b) (2021).[1]  This change demonstrates a change in the industry's emphasis on the roving patrol requirement after the *Conception* accident.  That is, this post-accident regulatory change is important evidence to counter the government's claim, made now in hindsight, that roving patrol was always critical in the minds of industry professionals.

## 2.  The post-accident regulatory changes are probative of the knowledge element of the manslaughter charge

The post-accident regulatory changes are also probative of the knowledge element of the manslaughter charge.  *See Keith*, 605 F.2d at 463; Ninth Circuit Model Criminal Jury Instruction No. 16.4 (involuntary manslaughter).  The government acknowledges that a valid defense would be that Mr. Boylan "did not understand

---

[1] This change is explained in more detail in the Federal Register description of all of the post-accident regulatory changes.  *See* 86 Federal Register No. 245 at Table 1 (Dec. 27, 2021), *available at* https://www.govinfo.gov/content/pkg/FR-2021-12-27/pdf/2021-27549.pdf (hereinafter, "Federal Register Summary").

certain regulations or did not think they were important," but it argues that "[r]egulatory changes after September 2019 have nothing to do with defendant's state of mind." (Mot. 7 & 9, respectively.)  This is incorrect.  Evidence that the Coast Guard changed certain regulations after the accident to make their requirements stricter, more clear, or more enforceable would bolster a claim that, at the time of the accident, Mr. Boylan either did not understand that a particular requirement was in place or that it was a priority of the safety regime implemented by the Coast Guard.

Indeed, post-accident regulatory changes were introduced as part of a knowledge defense in a recent involuntary manslaughter trial in this district.  *See United States v. Kilty*, No. 19-50351, 2022 WL 152446, at *3 (9th Cir. Jan. 18, 2022).  In *Kilty*, the defendant was a truck driver who was charged with manslaughter for parking illegally and thereby causing a fatal accident.  *Id.*  At trial, the truck driver's defense was, among other things, that it was reasonable for him to park at the location of the accident "based on both local practice and confusing road signage."  Brief of United States at *15 , *United States v. Kilty*, No. 19-50351, 2021 WL 3556217 (describing trial).  To prove that the road signage was confusing, the defendant was permitted to introduce subsequent remedial measures made by the military base controlling the roadway, including changes to the signage at the location where the accident occurred.  *Id.*  By comparing the old and new signs to each other he was able to at least argue that the signage in place at the time of the accident was confusing and rendered his conduct reasonable, or, at least, not knowingly reckless.  *See id.*

So too, here.  Post accident regulatory changes can be used to show the ways in which the regulations in place at the time of the accident were ambiguous or otherwise failed to put a captain on notice that certain safety precautions needed to be of top priority.  For example, as addressed at length in Defendant's Motion In Limine Number 6, the roving patrol regulation in place at the time of the accident was highly ambiguous, indeed unconstitutionally vague, in describing a roving patrol requirement. (Dkt. No. 139 at 10-14.)  The post-accident revisions that clarify the scope of the roving

patrol requirement are probative to demonstrate what was unclear about the original regulation.[2]  Similarly, the regulatory changes mandating roving watch enforcement are relevant in assessing whether a non-reckless captain should have known to give this requirement the same priority the industry now places on it.[3]  These regulatory changes are thus probative in assessing whether Mr. Boylan had the requisite knowledge, as the government alleges, that his roving patrol practices posed a risk to human life.

### 3.  The post-accident regulatory changes are probative of the causation element

The Coast Guard's post-accident regulatory changes are also probative evidence going to the causation element of manslaughter—an element that the government's motion ignores entirely.  *See Keith*, 605 F.2d at 463; Ninth Circuit Model Criminal Jury Instruction No. 16.4.  For example, at the time of the accident, the regulations required a vessel like the *Conception* to have two exits from the passengers' sleeping quarters, but they permitted both exits to lead to the same area of the vessel.  In compliance with that requirement, the *Conception* had two exits from the bunkroom, but both led to the inside of the salon, which was engulfed in flames during the accident.  As a result, Mr. Boylan and the other survivors were unable to access or save any of the people sleeping below deck.  After the accident, the Coast Guard altered its regulations to require "two independent means of escape that prevent one incident blocking both means of escape."[4]  This regulatory change will be probative, not to blame the Coast Guard in hindsight, but to show that an alternate cause of the tragic deaths of 34 persons was not the fault of Mr. Boylan but was the result of the fact that this vessel design was, at the time, understood to comply with industry standards that we now understand were insufficient.

---

[2] *See* Federal Register Summary, *supra* note 1, at 73164 (describing changes).
[3] *See id.*
[4] Federal Register Summary, *supra* note 1, at 73167.

8

**B. Even if the only probative value of the post-accident regulatory changes was to shift blame to the Coast Guard—which it is not—that would be a valid trial defense**

The government asserts that shifting blame for the *Conception* tragedy onto the Coast Guard would somehow be an improper trial defense.  (Mot. 3-6.)  It offers no authority for this claim, and for good reason: shifting fault onto another actor is a wholly permissible trial defense in a homicide case.  In *Kilty*, for example, the defendant truck driver argued at trial that he was not guilty of manslaughter because the accident was the fault of the bus driver (who drove into his parked truck) and the regulators who created confusing signage.  *See* Brief of United States at *15 , *United States v. Kilty*, No. 19-50351, 2021 WL 3556217 (describing trial proceedings); *see also White v. Knipp*, No. 2:11-CV-3016, 2013 WL 5375611, at *30-*32 (E.D. Cal. Sept. 24, 2013) (discussing petitioner's second-degree murder trial, which involved testimony shifting blame between accomplices).  This is a permissible defense to at least one of the elements of manslaughter; if some other person or entity caused the deaths charged, then the defendant could not have caused them.

Mr. Boylan is not committing to pursuing this type of blame-shifting defense, and, as addressed above, the evidence targeted by the government's motion is admissible (to the extent any regulations are) for other proper purposes ignored by the government.  But the government's motion fails, even on its own terms, since it would not be improper, and thus unduly prejudicial under Rule 403, to argue that the Coast Guard's insufficient regulatory regime and oversight were the causes of the *Conception* tragedy.  The government's general citations for the uncontroversial proposition that prejudicial and distracting evidence is inadmissible under Rule 403 does not change the analysis.

9

### C.  Rule 407 does not apply here

The government's reliance on Federal Rule of Evidence 407 is wholly misplaced. As the government acknowledges, it is not even clear if the rule applies in criminal cases at all.  (Mot. 6-7); *see also United States v. Parker*, 634 F. Supp. 3d 583, 588 (W.D. Ark. 2022) ("Rule 407 is designed for civil actions. . . . Eighth Circuit law exclusively contemplates Rule 407 within the context of a civil action.").  Regardless, the rule does not apply here for two definitive reasons:

<u>First</u>, whether in a criminal or civil case, "rule 407 only applies to a *defendant's* voluntary actions."  *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) (emphasis in original).  In *Pau*, the Ninth Circuit explained that "Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them."  *Id.* "A nondefendant will not be inhibited from taking remedial measures if such actions" are admitted at a trial where someone else is a defendant.  *Id.*  The Ninth Circuit therefore concluded that the district court abused its discretion in excluding evidence of subsequent remedial measures undertaken by the United States Parks Service, which was not the defendant in the case.  *Id.*

In short, Rule 407 does not call for exclusion at trial of subsequent remedial measures undertaken by anyone other than the defendant in that trial.  *Id.*; *see also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir. 1991); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Parker*, 634 F. Supp. 3d at 588.

Consequently, in the rare cases where courts have applied Rule 407 in criminal cases, it has been to exclude evidence of subsequent remedial measures undertaken by the criminal defendant, which the government tried to introduce to prove guilt.  *See, e.g.*, *United States v. Patel*, No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *28 (D. Conn. Mar. 27, 2023) (excluding remedial measures of defendant that government wanted to introduce to prove criminal culpability).  The same is true of the only criminal case the government relies upon:  *United States v. Pac. Gas & Elec. Co.*, 178

10

F. Supp. 3d 927 (N.D. Cal. 2016).  There, the government wanted to introduce the subsequent remedial measures undertaken by the defendant—PG&E—and the government argued that Rule 407 does not apply to criminal cases.  *Id.* at 951.  The district court disagreed and applied Rule 407 to exclude evidence of the defendant's subsequent remedial measures.  *See id.*; *see also United States v. DSD Shipping, A.S.*, No. 15-102, 2015 WL 5722805, at *1 (S.D. Ala. Sept. 29, 2015) (case relied on by *Pac. Gas & Elec. Co.*, where court excluded evidence of *defendant's* subsequent remedial measures despite government's argument that Rule 407 does not apply to criminal cases).

Here, the government is attempting to exclude evidence of the Coast Guard's subsequent remedial measures.  Rule 407 does not apply because the Coast Guard is not the defendant in this case.

Second, Rule 407 only bars the introduction of evidence for certain purposes, which are not the purposes for which Mr. Boylan would seek to introduce the Coast Guard's post-accident regulatory changes.  Specifically, Rule 407 states that evidence of subsequent remedial measures "is not admissible to prove:  negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407.  The rule further clarifies that "the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures."  *Id.*

As addressed above, Mr. Boylan is not seeking to introduce the Coast Guard's regulatory changes to prove "negligence" or "culpable conduct"—quite the opposite, he would introduce these measures to show that he was *not* negligent or culpable.  More specifically, he would introduce this evidence to rebut the government's claim that he acted with reckless disregard for human life, that he did so knowingly, and that he caused the deaths of 34 people.  These purposes are not excluded by the Rule.

The Government makes the perplexing claim that "Rule 407 permits the introduction of subsequent remedial measures for only limited purposes, including

11

'proving ownership, control, or feasibility of precautionary measures.'" (Mot. 9 (quoting Rule 407).)  This gets the rule exactly backwards.  The rule only excludes evidence introduced for the four listed impermissible purposes, and then it states that "the court may admit this evidence for another purpose, *such as* impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407 (emphasis added).  The permissible purposes are not an exclusive list; on the contrary, it is the list of *impermissible* purposes that is exhaustive.  As the committee notes to the rule state:  "Exclusion is called for only when the evidence of subsequent remedial measures is offered as proof of negligence or culpable conduct." *Id.* Advisory Committee Note.  Any other purpose is permissible.  *See id.*

Finally, the government is wrong that none of the specifically listed permissible purposes in the Rule are at issue here.  (*Contra* Mot. 9.)  For example, if the government argues at trial that it was incumbent on captains to self-enforce the Coast Guard's rules since the Coast Guard could not realistically enforce them, then the Coast Guard's post-accident regulatory changes, which enacted enforcement mechanisms, will be probative to proving the "feasibility of precautionary measures," which is one of the permissible bases listed in the rule.  Fed. R. Evid. 407.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

## III. CONCLUSION

For the foregoing reasons, Mr. Boylan respectfully requests that the Court deny the government's motion in limine to exclude any evidence or argument regarding the Coast Guard's revisions to regulations after the *Conception* accident on September 2, 2019.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  September 21, 2023          By   */s/ Joshua D. Weiss*

GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

13