CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Joshua_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JERRY NEHL BOYLAN,<br><br>　　　　　Defendant. | Case No. 22-cr-00482-GW<br><br>**MOTION TO STRIKE AND FOR CURATIVE INSTRUCTION REGARDING IMPROPER TESTIMONY OF GOVERNMENT WITNESS BRIAN PRIDDIN**<br><br>October 30, 2023 at 9:30 a.m.<br><br>The Honorable George H. Wu |

Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, Julia Deixler, and Joshua D. Weiss hereby moves this Honorable Court for an order to strike improper testimony by government witness Brian Priddin that was elicited in direct violation of the Court's prior order to exclude testimony under Rule 404(b), and a curative instruction regarding the improper and misleading testimony.

1

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 30, 2023     By  */s/ Georgina Wakefield*
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorney for JERRY NEHL BOYLAN

2

# I. INTRODUCTION & FACTUAL BACKGROUND

In advance of trial, the government moved under Federal Rule of Evidence 404(b) to introduce evidence at trial that Jerry Boylan "improperly dumped human waste into the ocean." Dkt. 115 at 10.  At the pretrial conference held on October 12, 2023, the Court correctly and unequivocally ruled to exclude such evidence as irrelevant and inadmissible under Rule 403.  *See* Tr. of Under Seal Hrg. (Oct. 12, 2023) at 13:07-11.  The witness through which the government sought to admit the evidence of improper sewage disposal was Brian Priddin, the last witness called to testify during last Friday's trial proceedings.  Mr. Priddin stated in an interview with the NTSB that he quit his position at Truth Aquatics because he had observed "they were dumping raw sewage within that marine area." Ex. A at 9.  Mr. Priddin felt that Mr. Boylan knew what the Coast Guard required him to do, but chose to disregard it. *Id*.  Mr. Priddin also told investigators that because of this sewage issue, he said, "I don't want to risk my license because this is wrong and I don't agree with it." *Id*.  Based on the Court's October 12 ruling, none of this evidence was admissible at trial.

On Friday, the government violated the Court's clear ruling by eliciting testimony related to this issue but omitting any specific reference to sewage dumping.  Government counsel asked Mr. Priddin why he quit his job at Truth Aquatics.  Over defense counsel's objections, Mr. Priddin testified,

> "I felt I was putting my captain's license in jeopardy[.]  There were times when the defendant stated to me, I know that this is what the Coast Guard would want you to do . . . That's what he told me . . . So the defendant told me directly, I know that's what the Coast Guard would want you to do, but I want you to do this.  And I felt that the things that he was asking me to do could cost me my captain's license."

Ex. B (Partial Tr. Oct. 27, 2023) at 103:15-07.  Based on his prior recorded statements, defense counsel was aware that Mr. Priddin was referring specifically to his

1

conversations with Mr. Boylan regarding sewage disposal. Defense counsel immediately requested a sidebar to address this issue, which the Court denied. *Id*. at 104:06-07. Mr. Priddin continued his testimony to state that the second reason he quit his job with Truth Aquatics was that he "did not feel safe." *Id*. at 104:10-11. The government then concluded its direct examination, leaving this as the last line of testimony heard by the jury before breaking for the weekend.

The Court must strike Mr. Priddin's testimony regarding the reasons he quit his job at Truth Aquatics because it directly violated the Court's prior order and is unduly prejudicial and misleading. Without explicitly stating that he was referring to the issue of sewage dumping, Mr. Priddin testified to the precise issue that was subject to the Court's order. There is no other issue that Mr. Priddin has ever stated he brought to Mr. Boylan's attention and was instructed to violate despite Coast Guard rules. There is no other issue that Mr. Priddin has ever stated caused him to fear he would lose his captain's license. Yet Mr. Priddin's testimony on these points came after a long discussion regarding roving patrol requirements; a core issue in this case.[1] *See, e.g., id*. at 96:16-19 ("Q: Is that unusual, in your experience? A: That is. I have never been on another vessel where we were either an anchor or underway at night and not have somebody awake, have an anchor watch, or roving night watch"); *see also id*. at 96:20-25 (testifying as to why a "roving night watch is important"); *id*. at 97:01-11 (testifying again that he "never experienced another vessel that did not have a watch at night").

In eliciting testimony from Mr. Priddin about why he quit Truth Aquatics, the government did not just circumvent the Court's prior order; it also knowingly left the jury with the false impression that Mr. Priddin's testimony related to a roving patrol requirement or other safety-related issue, rather than a completely irrelevant regulation regarding sewage disposal. This impression, in turn, creates the false impression that

---

[1] As the Court acknowledged at sidebar, the government posed several questions to Mr. Priddin seeking expert testimony, despite the fact that he was called to testify as a percipient witness and was never noticed as an expert. *See* Ex. B. at 101:23-102:12.

2

Mr. Boylan told Mr. Priddin that he knew that he was violating Coast Guard regulations with respect to roving patrol and knowingly disobeyed it. It is harder to imagine a more prejudicial false impression that could be created in this gross negligence case, in which the government is arguing that Mr. Boylan knowingly and recklessly disregarded roving patrol requirements, which caused the decedents' deaths. The government's failure to correct Mr. Priddin's misleading testimony and its violation of the Court's order are grounds to strike the testimony from the record and admonish the government in the presence of the jury.

The particular problem with Mr. Priddin's misleading testimony, as the government is well aware, is that the defense cannot simply correct the jury's impression on cross-examination. To do so would require the defense to reveal highly prejudicial, irrelevant, and lurid facts that the Court unequivocally ruled had no place in this trial. A curative instruction is therefore also necessary to correct the jury's likely misimpression of the meaning of Mr. Priddin's testimony.

## II. LEGAL FRAMEWORK

The prosecution's failure to correct misleading testimony violates a defendant's right to due process, even where the testimony is not clearly false. *See Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (government may not permit witness to give a material false impression of the evidence). In *Alcorta*, the Supreme Court recognized that the prosecutor had knowingly fostered a false impression in his examination of a key prosecution witness. The Court reversed the conviction and ordered a new trial because the witness conveyed a false impression, despite the fact that the testimony was not clearly false. The misleading testimony strengthened the prosecution case, and more truthful testimony would have corroborated the defendant's claim of sudden passion and also impeached the witness's credibility. The Court determined that the question

was not whether the testimony elicited was actually false but whether the "testimony, taken as a whole, gave the jury [a] false impression."). *Id.*

Similarly, in *United States v. Alzate*, 47 F.3d 1103 (11th Cir. 1995), the Court reversed a conviction and ordered a new trial where the prosecutor used cross-examination to create a false impression and declined to call the witness who would have provided contrary information.  Specifically, the prosecutor cross-examined a defendant in a drug distribution case who claimed that there was another box of narcotics nearby in the hotel in which he was arrested. *Id*. at 11108.  Based on the information known to the prosecutor at the time, he vigorously cross-examined the defendant to assert that there was only one seizure of narcotics in the hotel. *Id*.  Later, the prosecutor learned through the case agent that there was in fact another seizure of narcotics.  But the government did not call the case agent in rebuttal to correct the false impression created during the cross-examination of the defendant.  The Eleventh Circuit reversed the conviction and ordered a new trial. *Id*.  Although the case did not "deal with false testimony," the prosecutor's "implicit factual representations to the jury" still rose to the level of misconduct and "corruption of the truth-seeking function." *Id*. at 1110; *see also Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (the government "violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected when it appears").

When improper or unduly prejudicial evidence is admitted at trial, ordinarily the proper remedy is to strike the evidence and instruct the jury to disregard it. *Lewis v. United States*, 74 F.2d 173, 179 (9th Cir. 1934).  "There are, however, instances in which evidence is so prejudicial that even the instruction of the court to the jury to disregard the same may be considered insufficient to correct the error." *Id*.  In such cases, a mistrial may be appropriate.  Here, the defense seeks a limiting instruction that

4

corrects the misimpression created by Mr. Priddin's testimony and advises the jury of the reason for the Court's order to strike.

### III. ARGUMENT

**A.  The Court Should Strike the Improper Portions of Mr. Priddin's Testimony and Provide a Curative Instruction to Remedy the Misleading Nature of Mr. Priddin's Testimony.**

As in *Alcorta* and *Alzate*, the government has knowingly created a false impression through Mr. Priddin's testimony. This false impression is one that the defense cannot adequately correct through cross-examination without getting into details of highly prejudicial and irrelevant information that is likely to inflame the jury. The proper remedy is therefore an instruction by the Court that corrects the false impression created by Mr. Priddin's testimony without revealing the details of the excluded evidence. The Court must also advise the jury of the government's bad faith in eliciting this testimony. If the Court does not inform the jury that the testimony is being stricken because it violated a prior order, the jury may be left to wonder the significance of the Court's order to strike and pay outsized attention to the testimony. To that end, the defense requests that the Court provide the following instruction before Mr. Priddin resumes his testimony:

> On Friday, you heard testimony that Brian Priddin quit Truth Aquatics because he believed Mr. Boylan was violating Coast Guard regulations and that he felt his captain's license was at risk. That testimony was misleading because it implied that Mr. Priddin quit because of a roving patrol requirement or some other safety issue. In fact, Mr. Priddin's testimony on this matter was regarding an unrelated sanitary issue. The government violated a previous order by the Court in eliciting such testimony. The testimony is to be stricken from the

record, and you are ordered to disregard it.  You may not consider the testimony at any point during your deliberations in this case.

## IV. CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court strike the testimony appearing in lines 103:15-104:05 of the transcript of Friday's proceedings and provide a curative jury instruction to correct the jury's misimpression and inform the jury of the government's bad faith in eliciting such testimony.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  October 30, 2023          By  /s/ Georgina Wakefield
GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorney for JERRY NEHL BOYLAN

6