CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GEORGINA WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
JULIA DEIXLER (Bar No. 301954)
(E-Mail: Julia_Deixler@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JERRY NEHL BOYLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>Defendant. | Case No. 2:22-CR-00482-GW<br><br>**NOTICE OF MOTION AND MOTION FOR A NEW TRIAL BASED ON ERROR IN LESSER-INCLUDED OFFENSE INSTRUCTION; EXHIBITS A & B**<br><br>**Hearing: 4/11/2024, at 8:00 a.m.** |

Jerry Nehl Boylan, through his attorneys of record, Deputy Federal Public Defenders Georgina Wakefield, Gabriela Rivera, Julia Deixler, and Joshua D. Weiss, hereby moves this Honorable Court for a new trial under Federal Rule of Criminal Procedure 33.

//

1

This Motion is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and any further evidence and argument as the Court may permit.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 22, 2024         By  */s/ Joshua D. Weiss*

GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

2

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ............................................... 2

    A.  The timeline: 39 minutes elapsed between Michael Kohls confirming that nothing was amiss and Mr. Boylan issuing the mayday call ............... 2

    B.  Testimony on roving patrol and periodicity .................................................. 4

    C.  The Court instructed the jury on the lesser-included offense but excluded the roving patrol allegations from that instruction ...................... 5

    D.  During closing arguments, the defense disputed two elements: gross negligence and causation .......................................................................... 7

    E.  During deliberations, the jury asked whether it could consider the roving patrol allegation as part of the lesser-included offense, and the Court answered "no" ................................................................................ 9

III. LEGAL STANDARD FOR RULE 33 MOTION .................................................. 9

IV. ARGUMENT ........................................................................................ 10

    A.  This Court was correct in concluding that 46 U.S.C. § 2302(b) is a lesser-included offense of 18 U.S.C. § 1115 ........................................... 11

    B.  The Court erred by excluding the roving patrol allegation from the lesser-included offense instruction .......................................................... 13

        1.  An instruction on a lesser-included offense is required so long as a conviction on the lesser offense and an acquittal on the greater is a "rational possibility" ................................................................. 14

        2.  The Court erred in excluding the roving patrol allegations from the jury's consideration of the lesser-included offense because it was a "rational possibility" that the jury could convict on the lesser offense and acquit on the greater with respect to the roving patrol allegations ................................................................. 18

# **TABLE OF CONTENTS**

Page

3.    It was also erroneous to exclude the roving patrol allegations from the lesser-included instruction because the lesser-included offense analysis is based on the elements of the offense, not specific factual allegations.................................................................22

V.    CONCLUSION ........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Grady v. Corbin*,
495 U.S. 508 (1990), *overruled on other grounds by United States v.
Dixon*, 509 U.S. 688 (1993) ............................................................................... 12

*Keeble v. United States*,
412 U.S. 205 (1973) .................................................................................... 14, 22

*Richardson v. United States*,
526 U.S. 813 (1999) ........................................................................................... 24

*Schmuck v. United States*,
489 U.S. 705 (1989) ...................................................................................*passim*

*United States v. Arnt*,
474 F.3d 1159 (9th Cir. 2007) ..................................................... 10, 15, 19, 20

*United States v. Harvey*,
701 F.2d 800 (9th Cir. 1983), *overruled on other grounds by United
States v. Chapel*, 55 F.3d 1416 (9th Cir. 1995) ................................................ 12

*United States v. Hernandez*,
476 F.3d 791 (9th Cir. 2007) .....................................................................*passim*

*United States v. Keith*,
605 F.2d 462 (9th Cir. 1979) ............................................................................. 24

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) ........................................................................... 10

*United States v. Kramer*,
No. 16-CR-00322-EJD-1, 2020 WL 5408165 (N.D. Cal. Sept. 9, 2020) .......... 10

*United States v. Leung*,
796 F.3d 1032 (9th Cir. 2015) ............................................................................. 9

*United States v. McKee*,
68 F.4th 1100 (8th Cir. 2023) ........................................................................... 12

*United States v. Meckling*,
141 F. Supp. 608 (D. Md. 1956) ....................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*United States v. Medina-Suarez*,
    30 F.4th 816 (9th Cir. 2022) ......................................................*passim*

*United States v. Mendoza*,
    No. 16-CR-00150-BLF-3, 2022 WL 958381 (N.D. Cal. Mar. 30, 2022) ..........10

*United States v. Pardee*,
    368 F.2d 368 (4th Cir. 1966) ......................................................24

*United States v. Powell*,
    932 F.2d 1337 (9th Cir. 1991) ....................................................17

*United States v. Rivera-Alonzo*,
    584 F.3d 829 (9th Cir. 2009) ......................................................16

*United States v. Skeet*,
    665 F.2d 983 (9th Cir. 1982) ....................................14, 18, 19, 22

*United States v. Young*,
    No. 13-CR-00764-WHO-11, 2023 WL 8788764 (N.D. Cal. Dec. 19,
    2023) ......................................................................10

**Statutes, Rules, and Regulations**

18 U.S.C. § 1115 ......................................................*passim*

46 U.S.C. § 2302(b) ..................................................*passim*

46 C.F.R. § 185.410 ......................................................5

Fed. R. Cr. P. 33(a) ......................................................9

Fed. R. Cr. P. 29 ......................................................15, 18

**Other Authorities**

Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 515 (5th ed.) ................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Jerry Boylan was charged with seaman's manslaughter, under 18 U.S.C. § 1115. And, as the Court correctly determined at trial, that charge contains the lesser-included offense of 46 U.S.C. § 2302(b).  The Court was also correct in submitting the lesser-included offense to the jury, since "the evidence would allow a rational jury to convict [Mr. Boylan] of the lesser offense and acquit him of the greater."  *United States v. Hernandez*, 476 F.3d 791, 800 (9th Cir. 2007).  But the Court gave the lesser-included instruction with an important caveat: the instruction stated that "18 U.S.C. § 1115 includes the lesser crime of 46 U.S.C. § 2302(b) as to all bases except as to the charge that Defendant violated Section 115 because of his alleged failure to have night watchmen /roving patrols."  (Dkt. No. 320 at 6.)  Then, during deliberations, the jury returned a note asking if it could consider the roving patrol allegations in reference to the lesser-included offense, and the Court answered "No."

Excluding a single factual allegation from the lesser-included offense instruction was erroneous and warrants a new trial.  Ninth Circuit precedent commands that in determining whether to instruct a jury on a lesser-included offense, a trial court may not weigh the evidence and must instead instruct on the lesser offense so long as *any* rational jury could acquit of the greater offense and convict of the lesser.  The evidence here easily cleared that low threshold, including with respect to the roving patrol allegations.  Additionally, both the greater and lesser offenses here required the jury to evaluate the totality of the evidence, and it was error to single-out and exclude one of the government's factual allegations from the jury's consideration of the lesser-included offense.  For both reasons, the Court erred in excluding the roving patrol allegation from the jury's consideration of the lesser offense, and, as demonstrated by the jury note on this precise issue, the error was substantial and warrants a new trial under Ninth Circuit precedent.

1

## II.  STATEMENT OF RELEVANT FACTS[1]

### A. The timeline: 39 minutes elapsed between Michael Kohls confirming that nothing was amiss and Mr. Boylan issuing the mayday call

The trial evidence established a firm timeline bookending the tragic events that led to this prosecution.  Galleyhand Michael Kohls testified that on the morning of September 2, 2019, he woke up at 1:30 a.m., walked down from his sleeping quarters in the wheelhouse of the *Conception* to the main deck, and then spent over an hour cleaning and organizing the galley and salon.  (Dkt. No. 340 at 6.)  When he finished cleaning, he looked at a clock located in the salon and saw that it said 2:35 a.m., and he then went upstairs and back to sleep.  (Dkt. No. 340 at 7, 46-47.)  When he went to sleep at 2:35 a.m., "nothing seemed amiss or unsafe on the boat."  (Dkt. No. 340 at 25.)

At some point after going back to bed, Mr. Kohls heard a noise, got out of bed, and saw a "glow."  (Dkt. No. 340 at 13-15.)  After a "couple seconds," Mr. Kohls realized that he was seeing a fire and he yelled "fire, fire."  (Dkt. No. 340 at 15.)  He then ran aft from the wheelhouse onto the sundeck and saw that he "could not go down the staircase" to the main deck because of the fire.  (Dkt. No. 340 at 16.)  He then ran forward on the boat, back toward the wheelhouse, yelling "fire, fire" and then got down to the main deck by jumping over the railings.  (Dkt. No. 340 at 16.)  When he got to the main deck, he attempted to go into the galley to get a fire extinguisher located inside, but he could not enter the galley because "that was all engulfed in flames, the whole galley."  (Dkt. No. 340 at 17.)  After seeing that he could not enter the galley or get access to the fire extinguisher inside, Mr. Kohls eventually ran forward toward the bow of the boat along the port-side walkway, where he met deckhand Milton French and galleyhand Ryan Sims.  (Dkt. No. 340 at 19-20.)  At this point, the starboard side of the boat was impassable since it was "engulfed in flames."  (Dkt. No. 340 at 20.)

---

[1] This brief summary presents factual background relevant to this motion.  It is not intended to present a complete picture of the trial evidence or proceedings.

2

Additionally, the flames had developed and blocked the portside walkway in the seconds after he ran to the forward end of the boat. (Dkt. No. 340 at 20.) While at the front end of the boat, Mr. Kohls heard Mr. Boylan yell from the wheelhouse, "oh, my god" and stated "we thought he was burning." (Dkt. No. 340 at 22.) Mr. Kohls then saw Mr. Boylan jump from the wheelhouse into the water. (Dkt. No. 340 at 22.) Mr. Boylan then said "oh, my God, oh, my God. All those people," and began "swimming to the stern of the boat." (Dkt. No. 340 at 22.)

Deckhand Milton French also testified about the night of the fire. He was asleep in the wheelhouse when he woke up to "shouts of 'fire." (Dkt. No. 336 at 56.) He got up and saw 15-foot flames coming from the main deck over the rails of the starboard side of the upper deck, and he saw that the rear staircase down to the main deck was impassable. (Dkt. No. 336 at 57-58, 104.) He then ran forward to the wheelhouse, where the crew did a "five-second little huddle up" and Mr. Boylan told everyone to "get to the main deck and get people out of the bunkroom." (Dkt. No. 336 at 58.) At that point, all of the crew members who had been in the wheelhouse except for Mr. Boylan climbed down to the main deck. (Dkt. No. 336 at 58-60.) When Mr. French got to the main deck toward the forward end of the boat, he saw that the portside walkway leading to the aft was blocked by flames and smoke coming out of the windows from the galley and salon. (Dkt. No. 336 at 60.) While he was at the front of the boat, Mr. French looked up and saw Mr. Boylan on the radio in the wheelhouse, but when he looked back less than 10 seconds later, he could not see Mr. Boylan because of all the smoke filling the wheelhouse. (Dkt. No. 336 at 62, 110.) Mr. Boylan then jumped out of the wheelhouse "seemingly engulfed in smoke. . . . I thought he was on fire." (Dkt. No. 336 at 62, 111.)

After Mr. Boylan jumped in the water, Mr. French and second captain Cullen Molitor eventually entered the water and swam to the back of the boat, where they were able to board the back deck. (Dkt. No. 336 at 63-66.) Mr. Boylan followed more

slowly and eventually boarded the back deck as well.  (Dkt. No. 336 at 70.)  Once on the back deck, Mr. French saw that the back of the salon was "completely engulfed," as were the fire stations outside the salon.  (Dkt. No. 336 at 66.)  Despite extensive efforts, he could not enter the salon or fight the "raging inferno."  (Dkt. No. 336 at 66-70.)  Mr. French also testified that there was no "fire protective clothing," or "turnout gear," kept on the *Conception*.  (Dkt. No. 336 at 116.)  The surviving crew eventually boarded the skiff located at the rear deck of the salon and escaped.

Other objective evidence established what Mr. Boylan was doing in the wheelhouse before he jumped into the water engulfed in smoke and flames: he made a mayday call to the Coastguard at 3:14 a.m.  (Dkt. No. 361 at 13.)

Thus, a total of 39 minutes elapsed between the time Mr. Kohls looked at the clock in the salon at 2:35 a.m., when "nothing seemed amiss or unsafe," and when Mr. Boylan issued the mayday call at 3:14 a.m., by which time the wheelhouse was engulfed in smoke and the salon, galley, and starboard of the main deck were engulfed in flames.

## B. Testimony on roving patrol and periodicity

Multiple witnesses testified about the concept of a "roving patrol," which, as Mr. French explained, "means that when a vessel is carrying passengers, you should have somebody awake and moving around making sure the boat is safe and as it should be." (Dkt. No. 336 at 30-31; *see also, e.g.,* Dkt. No. 352 at 45 (Captain David Harvey); Dkt. No. 337 at 76-77 (Captain Matthew Curto); Dkt. No. 369 at 89-90 (Coast Guard inspector Daniel Hager).)

The *Conception*'s Certificate of Inspection (COI) required that "a member of the vessel's crew shall be designated by the master as a roving patrol at all times, whether or not the vessel is underway, when the passenger's bunks are occupied."  (Gov. Trial Ex. 26 at 1.)  The jury also saw that a Coast Guard regulation states:

> The owner, charterer, master, or managing operator of a vessel carrying overnight passengers shall have a suitable number of watchmen patrol

4

throughout the vessel during the nighttime, whether or not the vessel is underway, to guard against, and give alarm in case of, a fire, man overboard, or other dangerous situation.

46 C.F.R. § 185.410; (Gov. Trial Ex. 452).

While the general requirement to have a roving patrol on an overnight trip was well-established by the trial evidence, there was less consistent testimony about what exactly a proper roving patrol entails. Two government witnesses provided more details about what is expected of a roving patrol, and, specifically, how frequently they would be expected to walk around a vessel like the *Conception*.

First, Brian Priddin testified that a roving patrol would, "typically," "go around the ship at least once every 20 minutes." (Dkt. No. 337 at 96.) Mr. Priddin testified that this 20-minute standard was based on his experience working on vessels far larger than the *Conception*, which were larger than 200 tons. (Dkt. No. 364 at 52-53.)

Second was Captain Sean Tortora, who testified as the government's expert in "prudent seamanship and as an expert in marine fire prevention, firefighting, and fire safety." (Dkt. No. 367 at 30.) Captain Tortora testified that the regulations do not specify how often a roving patrol would be expected to circulate throughout the vessel. (Dkt. No. 368 at 49-50.) But, the captain testified, "it's often industry standard continuous or at least once an hour." (Dkt. No. 368 at 55.) Captain Tortora repeated multiple times that "continuous or at least hourly" was the "industry standard" for how often a roving patrol should circulate through a vessel. (*See* Dkt. No. 368 at 55; *id.* at 94.)

**C. The Court instructed the jury on the lesser-included offense but excluded the roving patrol allegations from that instruction**

During trial, the defense filed a request that the jury be instructed on the lesser-included offense of 46 U.S.C. § 2302(b). (Dkt. No. 312.) After hearing arguments, the Court agreed that a rational jury could acquit Mr. Boylan of the charged offense—18 U.S.C. § 1115—and convict him of the lesser-included offense if the jury found that

5

"the defendant's grossly negligent conduct merely endangered the life, limb, or property of a person, but did not cause the death of the decedents in this particular case." (Dkt. No. 371 at 82.)

However, the Court concluded that a rational jury could not draw that distinction with respect to the government's allegation that Mr. Boylan failed to post a roving patrol, and the Court therefore stated that it "would not include the lesser-included insofar as the roving patrol." (Dkt. No. 371 at 88.) Both parties objected to this conclusion. The defense objected on two bases. First, the defense argued that the roving patrol allegation should not be excluded from the lesser-included offense instruction because, under the facts elicited at trial, a rational jury could acquit Mr. Boylan of the greater offense and convict him of the lesser with respect to the roving patrol allegation—that is, that a rational jury could conclude that the alleged failure to post a roving patrol was dangerous as a general matter but did not proximately cause the tragic loss of life in this case. (Dkt. No. 371 at 83-86, 89-90.) Second, the defense argued that the charged offense requires an analysis of the totality of circumstances in determining "whether there was gross negligence and whether that caused the deaths," so that one of the government's factual allegations—that Mr. Boylan failed to post a roving patrol—could not be isolated from the government's other allegations in presenting the offenses to the jury. (Dkt. No. 371 at 88-89.) The government agreed with this objection: "It's a totality analysis, as my colleague just said. You can't pick it out piece by piece, it's a whole thing or not."[2] (Dkt. No. 371 at 91; *see also id.* at 92 (government counsel arguing that it "is a mistake to treat it as anything other than a totality of the conduct that makes up gross negligence.").)

In the end, the Court instructed the jury on the lesser-included offense. (Dkt. No. 320 at 6 (final jury instructions).) But the Court gave that instruction with an important

---

[2] In objecting to the partial instruction on the lesser-included offense, the government argued that no lesser-included offense instruction should be given at all. (Dkt. No. 371 at 91.)

1  caveat: the instruction stated that "18 U.S.C. § 1115 includes the lesser crime of 46
2  U.S.C. § 2302(b) as to all bases except as to the charge that Defendant violated Section
3  115 because of his alleged failure to have night watchmen /roving patrols." (Dkt. No.
4  320 at 6.)  The verdict form provided to the jury similarly emphasized that "as
5  instructed, the 46 U.S.C. § 2302(b) offense is not a lesser included crime within 18
6  U.S.C. § 1115 and does not apply to the Defendant's alleged failure to post a roving
7  patrol." (Dkt. No. 330 at 3.)

8      **D. During closing arguments, the defense disputed two elements: gross**
9          **negligence and causation**

10      During closing arguments, the defense focused on two elements of the charged
11  offense:  the gross negligence element and the causation element.  (*See* Dkt. No. 375 at
12  55-56.)  The defense walked through each of the government's three primary
13  allegations of wrongdoing: (1) the failure to post a roving patrol; (2) "insufficiently
14  training and drilling the vessel's crew in firefighting and other safety procedures"; and
15  (3) failing to instruct or provide directions to crew members during the fire.  (Dkt. No.
16  375 at 56.)  With respect to each allegation, the defense argued that the government had
17  failed to prove beyond a reasonable doubt that Mr. Boylan acted with gross negligence
18  or that the alleged wrongdoing proximately caused the loss of life.  (Dkt. No. 375 at 57-
19  80.)

20      With respect to the roving patrol allegation, the defense extensively argued that
21  the government failed to prove beyond a reasonable doubt that any failure to post a
22  roving patrol proximately caused the loss of life.  (Dkt. No. 375 at 62.)  The defense
23  started by stating, "the timeline here is really, really important."  (Dkt. No. 375 at 61.)
24  Specifically, that Mr. Kohls was in the salon at 2:35 a.m., and that the mayday call was
25  at 3:14 a.m.  The defense then argued, [w]e know at the time the mayday call is made,
26  there's smoke in the wheelhouse, there are flames outside the wheelhouse.  So we have
27  39 minutes -- less than 39 minutes for this fire to develop."  (Dkt. No. 375 at 62.)

28

1    Because of that timeline, the government's case "relies on a slow fire. That's the only

2    way a roving patrol could have caught it in time to put it out." (Dkt. No. 375 at 62.)

3            The defense then talked about the fire modeling conducted by ATF agents, and

4    how the government's models using a fire beginning in the trash can outside the salon

5    took over 50 minutes to develop—too long. (Dkt. No. 375 at 62.) To model a fire that

6    was slow enough to blame Mr. Boylan for the loss of life, but fast enough to fit in the

7    39 minute timeline, the agents directed a fan at the model fires, despite the consistent

8    eyewitness testimony that there was no wind at the time of the fire. (Dkt. No. 375 at

9    63.) The defense then argued, "You heard the surviving crew who came into court and

10   testified about the fire that they saw. The fire they saw was fast. It was not slow."

11   (Dkt. No. 375 at 65.)

12           The defense then argued that the government's causation theory did not accord

13   with its own witnesses' testimony regarding the frequency with which a roving patrol

14   would be expected to circulate through the vessel. (Dkt. No. 375 at 66.) The defense

15   referenced Mr. Priddin, who said that a roving patrol should circulate every 20 minutes;

16   "Well, the garbage can fire with a fan was out of control before 20 minutes. And the

17   garbage can fire without a fan took over 50 minutes, longer than 39 minutes that we

18   need here." (Dkt. No. 375 at 66.) Mr. Kohls also testified that he heard "the sound of

19   what he recognized, a sound he'd heard before, someone getting up, bumping into a

20   chair, closing the bathroom door" about five minutes before he got up and saw the fire.

21   (Dkt. No. 375 at 66.)

22           Finally, the defense pointed to Captain Tortora's testimony, where he said that

23   "the industry standard is continuously roving or one hour." (Dkt. No. 375 at 67.) If a

24   vessel complying with the industry standard would have a patrolman circulate once an

25   hour, then the government could not prove beyond a reasonable doubt that the failure to

26   post a roving patrol caused the loss of life here. (Dkt. No. 375 at 67.) As the defense

27   put it:

28

Mikey Kohls was awake and on the main deck and saw nothing less than an hour that the roving patrol would have been required under Captain Tortora's own opinion. There were only 39 minutes, 39 minutes before flames were at the wheelhouse, before smoke was choking and making it impossible to grab a fire extinguisher. A roving patrol that walks around once every hour would not have changed the horrible tragedy here.

(Dkt. No. 375 at 68.)

**E. During deliberations, the jury asked whether it could consider the roving patrol allegation as part of the lesser-included offense, and the Court answered "no"**

During their deliberations, the jury sent a note to the Court asking, "Does the lesser charge include violation of the roving patrol?" (Dkt. No. 326 at 1.) The note was dated November 6, 2023 at 2:57 p.m. (Dkt. No. 326 at 1.) After hearing arguments from the parties, during which the defense reiterated that a rational juror could acquit Mr. Boylan of the greater charge but convict him of the lesser on the roving patrol allegation, the Court concluded that it would not deviate from its decision articulated in the jury instructions. (Dkt. No. 372 at 47-55.) The Court then responded to the jury's question in writing, stating: "As to the question: 'does the lesser charge include violation of the roving patrol' 'referencing lines 9-11 of the verdict form and page 5 of [the] jury instructions,' the answer is 'No.'" (Dkt. No. 326 at 2.) No further questions were received from the jury, and its guilty verdict was returned shortly after the Court answered the question regarding the lesser offense. (Dkt. No. 372 at 57-58, 65 (noting that proceedings concluded on November 6, 2023 at 4:36 p.m.).)

## III. LEGAL STANDARD FOR RULE 33 MOTION

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a).[3] "A district court's

---

[3] While Rule 33 sets a 14-day deadline for a motion for a new trial, that deadline is "subject to extension" by the Court. *United States v. Leung*, 796 F.3d 1032, 1034–35 (9th Cir. 2015). This motion is thus timely under the Court's scheduling order, which set a deadline of February 22, 2024 for Rule 33 motions. (Dkt. No. 350 at 2.)

power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (cleaned up). "[E]rroneous jury instructions are a proper basis for a new trial if the instructions were incorrect at the time they were given." *United States v. Young*, No. 13-CR-00764-WHO-11, 2023 WL 8788764, at *3 (N.D. Cal. Dec. 19, 2023) (citing *United States v. Kramer*, No. 16-CR-00322-EJD-1, 2020 WL 5408165, at *5 (N.D. Cal. Sept. 9, 2020)); *see also United States v. Mendoza*, No. 16-CR-00150-BLF-3, 2022 WL 958381, at *4 (N.D. Cal. Mar. 30, 2022). To merit a new trial, instructional error should be significant enough that it would result in reversal on appeal. *See Mendoza*, 2022 WL 958381, at *4. The Ninth Circuit regularly reverses convictions and orders new trials where it concludes that a district court erred by failing to provide a lesser-included offense instruction. *E.g.*, *United States v. Medina-Suarez*, 30 F.4th 816, 820–22 (9th Cir. 2022); *United States v. Arnt*, 474 F.3d 1159, 1164–65 (9th Cir. 2007). Thus, if the Court agrees that its decision to carve the roving patrol allegation out of the lesser-included offense instruction was erroneous, it should order a new trial in "the interest of justice" and to avoid the duplicative resources that would result from an appeal.

## IV. ARGUMENT

A trial court is required to provide a lesser-included offense instruction if "1) the elements of the lesser offense are a subset of the elements of the charged offense; and 2) the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater." *United States v. Medina-Suarez*, 30 F.4th 816, 819 (9th Cir. 2022) (alterations, citations and quotation marks omitted). The Court was correct to instruct the jury on the lesser-included offense of 46 U.S.C. § 2302(b). But, for two independent reasons, the Court erred in excluding the roving patrol allegation from the lesser-included offense instruction. First, Ninth Circuit precedent commands that in determining whether to instruct a jury on a lesser-included offense, a trial court

10

may not weigh the evidence and must instead instruct on the lesser offense so long as *any* rational jury could acquit of the greater offense and convict of the lesser.  The evidence here easily cleared that low threshold, given that the causation element of Section 1115 was hotly disputed, including with respect to the government's allegations that the failure to post a roving patrol proximately caused the tragic loss of life on the *Conception*.  Second, both the greater and lesser offenses here required the jury to evaluate the totality of the evidence, and it was error to single-out and exclude one of the government's factual allegations from the jury's consideration of the lesser-included offense.  As demonstrated by the jury note on this precise issue, the error was substantial and warrants a new trial under Ninth Circuit precedent.

## A. This Court was correct in concluding that 46 U.S.C. § 2302(b) is a lesser-included offense of 18 U.S.C. § 1115

The first step of the lesser-included inquiry is whether "the elements of the lesser offense are a subset of the elements of the charged offense" *Medina-Suarez*, 30 F.4th at 819.  For the elements of the lesser offense to be a subset of the greater, "the lesser must be such that it is impossible to commit the greater without first having committed the lesser." *Schmuck v. United States*, 489 U.S. 705, 719 (1989) (citation omitted); *see also* Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 515 (5th ed.) ("[A]n offense is a lesser-included offense if it is impossible to commit the greater without also committing the lesser.").  In resolving this first step of the inquiry, the Court was correct in instructing the jury that Section 1115 contains the lesser-included offense of 46 U.S.C. § 2302(b).

As the Court instructed the jury, the offense charged in the indictment, Section 1115, contains the following elements: (1) "the Defendant was a captain employed on a vessel"; (2) he engaged in gross negligence; (3) his gross negligence was the proximate cause of the death of a person; and (4) that the charged conduct

11

occurred in federal admiralty jurisdiction.[4]  (Dkt. No. 320 at 4); *see also* 18 U.S.C. § 1115.  And as the Court instructed the jury, the lesser offense, Section 2302(b), contains the following elements: (1) "the Defendant operated a commercial vessel"; (2) he did so with gross negligence; (3) the "Defendant's grossly negligent conduct endangered the life, limb, or property of a person"; and (4) the charged conduct occurred in federal admiralty jurisdiction.  (Dkt. No. 320 at 5); 46 U.S.C. § 2302(b); *United States v. McKee*, 68 F.4th 1100, 1108-1110 (8th Cir. 2023) (Section 2302(b) requires federal admiralty jurisdiction).

The difference between the statutes is that the lesser offense does not have a causation element:  Section 2302(b) asks whether the defendant *endangered* the life, limb, or property of a person, not whether he *caused* the life of a person to be destroyed.  Despite this difference, the elements of the lesser are contained in the greater because "it is impossible to commit the greater"—causing the loss of life— "without first having committed the lesser"—endangering that life.  *Schmuck*, 489 U.S. at 719.  For this reason, where one statute criminalizes conduct that creates a *risk* of harm to people or property and another criminalizes conduct that *causes* the loss of life, courts routinely treat the former as a lesser offense included in the latter.  For example, the Ninth Circuit has stated that "careless driving is a lesser included offense of vehicular involuntary manslaughter."  *United States v. Harvey*, 701 F.2d 800, 807 (9th Cir. 1983), *overruled on other grounds by United States v. Chapel*, 55 F.3d 1416 (9th Cir. 1995); *see also Grady v. Corbin*, 495 U.S. 508, 514 (1990), *overruled on other grounds by United States v. Dixon*, 509 U.S. 688 (1993) (citations omitted) (affirming state court decision barring prosecution for vehicular manslaughter on double jeopardy

---

[4] For purposes of this motion, the defense relies on the elements as they were instructed to the jury.  In doing so, the defense does not waive any objections to the jury instructions, including its contention that but-for causation is a required element of Section 1115.

12

grounds where the state court reasoned that "driving while intoxicated 'is unquestionably a lesser included offense of second degree vehicular manslaughter.'").

That endangering human life under Section 2302(b) is a necessary step toward causing the loss of life under Section 1115 is made clear by *United States v. Meckling*, 141 F. Supp. 608 (D. Md. 1956). There, a captain was charged with seaman's manslaughter, under Section 1115, and with a predecessor statute to Section 2302(b), based on his conduct on a voyage in which 14 passengers drowned during a storm. *Id.* at 618. The Court found the evidence insufficient to sustain a conviction under Section 1115 since there was not evidence proving beyond reasonable doubt that the captain's conduct *caused* the loss of life: as the Court concluded, the allegations of the captain's "misconduct, negligence, or inattention" "are only possibilities, or at the most probabilities, so far as the loss of life is concerned" and so could not establish the causation element beyond a reasonable doubt. *Id.* at 620. But the Court found there was sufficient evidence to establish beyond a reasonable doubt that the captain's negligence endangered human life, and it therefore entered a guilty verdict under the predecessor statute to § 2302(b). *Id.* That is, even though lives were lost during the tragedy, the evidence could prove only that the captain's conduct endangered those lives, not that he caused the deaths.

In short, because *endangering* life through gross negligence is a necessary precursor to causing the loss of life through gross negligence, "it is impossible to commit the greater without first having committed the lesser." *Schmuck*, 489 U.S. at 719. The Court was thus correct in instructing the jury that Section 1115 contains the lesser-included offense of Section 2302(b).

## B. The Court erred by excluding the roving patrol allegation from the lesser-included offense instruction

The second step of the inquiry is whether "the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the

13

greater." *Medina-Suarez*, 30 F.4th at 819-20 (cleaned up).  While the Court was correct that a rational jury here could convict Mr. Boylan of the lesser offense and acquit him of the greater—such that the jury was instructed on the lesser offense—the Court erred in excluding the roving patrol allegations from the jury's consideration of the lesser offense.

> ### 1. An instruction on a lesser-included offense is required so long as a conviction on the lesser offense and an acquittal on the greater is a "rational possibility"

Ninth Circuit "precedent commands that a court 'may not weigh the evidence in determining whether to give a lesser included offense instruction.'" *Medina-Suarez*, 30 F.4th at 821 (quoting *United States v. Hernandez*, 476 F.3d 791, 800 (9th Cir. 2007)). "[R]egardless of the weight of the evidence, a defendant is entitled to a lesser included offense instruction if the evidence would allow a rational jury to convict him of the lesser offense and acquit him of the greater." *Hernandez*, 476 F.3d 791 at 798 (citing *Keeble v. United States*, 412 U.S. 205, 208 (1973)).  Thus, even where the court "find[s] it difficult to believe" the view of the evidence that would permit a conviction on the lesser offense and an acquittal on the greater, the lesser must be instructed to the jury so long as it is a rational possibility.  *United States v. Skeet*, 665 F.2d 983, 987 (9th Cir. 1982); *see also Hernandez*, 476 F.3d 791 at 798.  If a conviction on the lesser and an acquittal on the greater is a "rational possibility," differentiating between the greater and lesser offenses is "properly a decision for the jury, not for the district court, to make." *Hernandez*, 476 F.3d 791 at 798, 801.

Crucially, "[t]he fact that the jury did ultimately return a felony conviction" does not alter the analysis. *Medina-Suarez*, 30 F.4th at 821.  That is because "one of the very purposes of a lesser-included offense instruction is to protect a defendant from the possibility that 'where the jury suspects that the defendant is plainly guilty of *some* offense, but one of the elements of the charged offense remains in doubt, . . . the jury

14

will likely fail to give full effect to the reasonable-doubt standard, resolving its doubts in favor of conviction.'" *Id.* at 820 (quoting *Schmuck*, 489 U.S. at 717 n.9) (alteration and emphasis in *Medina-Suarez*). Additionally, even if the government's evidence was "sufficient" to sustain a conviction on the greater charge under a Rule 29 analysis, a lesser-included instruction was required if the evidence did not "foreclose the possibility" that the jury could have instead convicted on the lesser charge. *Hernandez*, 476 F.3d at 799.

A survey of Ninth Circuit decisions demonstrates just how low the bar is for a "rational possibility" requiring an instruction on the lesser-included offense. For example, in *United States v. Arnt*, 474 F.3d 1159 (9th Cir. 2007), the Ninth Circuit reversed a conviction for voluntary manslaughter where the district court instructed the jury on murder and voluntary manslaughter but refused to instruct on the lesser-included offense of involuntary manslaughter. *Id.* at 1163-65. To acquit of the greater offenses (murder and voluntary manslaughter) and convict of the lesser (involuntary manslaughter), the jury would have had "to find that Arnt killed her husband unintentionally." *Id* at 1163-64. The Court noted that "the evidence supporting unintentional death is inconsistent with other evidence" produced at trial. *Id.* "However, if there is *some evidence* to support the jury instruction, it is the jury's province to determine which evidence it believed most accurately reflected the events surrounding the stabbing." *Id.* at 1164-65 (emphasis added). And because there was *some evidence* of an accidental killing, an instruction on the lesser charge of involuntary manslaughter was required. *Id.* The Court therefore reversed. *Id.* at 1165.

Similarly, in *Medina-Suarez*, the defendant was convicted at trial of felony attempted illegal entry, and the Ninth Circuit reversed and ordered a new trial because the district court did not instruct the jury on the lesser-included offense of misdemeanor attempted illegal entry. *Medina-Suarez*, 30 F.4th at 820. The only distinction between the two offenses was that the greater offense required the jury to find that the defendant

15

had a prior conviction for the same crime, and the district court had concluded that no rational jury could have acquitted of the greater offense based on that prior-offense element.  *Id.*  The Ninth Circuit disagreed, even though the government introduced into evidence a judgment of the prior conviction.  *Id.*  The Ninth Circuit explained that an instruction on the lesser offense was required because "the 'prior conviction' element of felony attempted illegal entry was disputed at trial," as demonstrated by the defense's cross-examination of the A-File custodian raising questions about whether the "judgment was entered against *this* 'Lucio Medina-Suarez' and not a different one." *Id.* at 821.  This cross examination created a rational possibility of a conviction on the lesser offense and acquittal on the greater, "even if the government is correct that" other trial evidence "tends to plug the holes punched by Medina-Suarez's cross-examination of the A-File custodian."  *Id.*  Despite the strength of the government's evidence on the prior-conviction element of the greater offense, the Ninth Circuit emphasized that court "may not weigh the evidence in determining whether to give a lesser included offense instruction."  *Id.* (citation omitted).  Because "a rational jury could have surveyed the evidence presented at trial—including the A-file custodian's testimony on cross-examination—and concluded that it had reasonable doubts about whether the Medina-Suarez charged in this case was the same Medina-Suarez named in the 2018 judgment," "a lesser-included offense instruction was required."  *Id.*

*Medina-Suarez* also surveyed cases where the Ninth Circuit had agreed that no lesser-included instruction was required, and concluded that they all "reflect the fact that a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses." *Medina-Suarez*, 30 F.4th at 822 (quotation marks and citation omitted); *see also, e.g.*, *United States v. Rivera-Alonzo*, 584 F.3d 829, 833–35 (9th Cir. 2009) (no lesser-included instruction on simple assault was required because if the jury agreed with the defense on the only disputed fact—whether the defendant acted in self-defense—that

would have required acquittal on all charges, including the lesser-included offense). But where "the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense," an instruction on the lesser offense is required. *Medina-Suarez*, 30 F.4th at 822 (quotation marks and citation omitted). Because the prior-felony element that distinguished the lesser and greater offenses was disputed in *Medina-Suarez*, the Ninth Circuit reversed the conviction and remanded for a new trial. *Id.*

Finally, in *Hernandez*, the defendant was convicted at trial of possession with intent to distribute methamphetamine, and the Ninth Circuit reversed for failure to instruct on the lesser-included offense of simple possession. *Hernandez*, 476 F.3d at 800. Defendant-Hernandez was caught entering the United States from Mexico with 159.1 grams of methamphetamine. *Id.* at 795. The Court noted that in some cases the quantity of drugs may be so great—on the order of many pounds—that "once a jury determines that a defendant possessed the drugs, 'it could not rationally conclude that there was no intent to distribute.'" *Id.* at 798 (quoting *United States v. Powell*, 932 F.2d 1337, 1342 (9th Cir. 1991), where no lesser-included instruction on simple possession was required because the defendant was caught with more than 11 pounds of cocaine as well scales, a cash counter, and $169,000 cash). But in *Hernandez*, the quantity was such that a rational jury could have concluded it was for personal use. *Id.* The Court noted that the government produced sufficient evidence to sustain a conviction for possession with intent to distribute, including expert testimony about the drug's purity, quantity and value, but "that does not foreclose the possibility that a rational jury could also have found Hernandez guilty of simple possession." *Id.* at 799. And that the defense did not present "affirmative evidence that he possessed the methamphetamine for personal use" did not change the analysis since it was not the defense's burden to disprove an element. *Id.*

17

The Ninth Circuit concluded that "[e]ven if it is more probable" that the defendant intended to distribute the methamphetamine, "we cannot say that a rational jury could not have" acquitted of that charge and convicted of the lesser offense of simple possession. *Id.* at 800. The Court concluded: "Because personal use of the drugs was a rational possibility, it was within the jury's province to determine that Hernandez was guilty of only simple possession." *Id.*; *see also United States v. Skeet*, 665 F.2d 983, 987 (9th Cir. 1982) (reversing for failure to instruct on lesser-included offense of simple assault, even though "this Court may find it difficult to believe" a view of the evidence supporting a simple assault conviction).

**2. The Court erred in excluding the roving patrol allegations from the jury's consideration of the lesser-included offense because it was a "rational possibility" that the jury could convict on the lesser offense and acquit on the greater with respect to the roving patrol allegations**

The Court erred in excluding the roving patrol allegations from the jury's consideration of the lesser-included offense because a rational jury could have acquitted Mr. Boylan of the greater offense, Section 1115, and convicted him of the lesser offense, Section 2302(b), based on the evidence adduced regarding roving patrols.[5] As addressed above, the difference between the statutes is that the lesser offense does not have a causation element: Section 2302(b) asks whether the defendant's gross negligence *endangered* the life, limb, or property of a person, whereas Section 1115 asks whether it *caused* a death. A rational jury could have concluded that Mr. Boylan's practices with respect to roving patrols were grossly

---

[5] The defense does not concede that a rational jury could have convicted Mr. Boylan of any crime for purposes of a Rule 29 challenge to the sufficiency of the evidence. All references here to a rational jury finding that Mr. Boylan violated one or more elements of the charged offense are not concessions that there was sufficient evidence as to any element, but are meant only to envision how a rational jury could differentiate between the greater and lesser offenses.

18

negligent, and thereby endangered the life, limb, or property of a person, but they did not proximately cause the loss of life in this case.  That is, the jury could have rationally concluded that Mr. Boylan's roving patrol practices were unsafe as a general matter but did not ultimately cause the loss of life in the *Conception* tragedy of September 2019.  Consequently, the lesser included instruction was required, including on the roving patrol allegations, because a rational jury could have found "the defendant guilty of the lesser offense and acquit[ted] him of the greater."  *Medina-Suarez*, 30 F.4th at 819-20 (cleaned up).

The element that differentiates the greater and lesser offenses here—proximate cause—was hotly contested at trial, and the defense's theory that there was not evidence beyond a reasonable doubt that the lack of a roving patrol proximately caused the loss of life was at least a "rational possibility" that was "properly a decision for the jury, not for the district court, to make."  *Hernandez*, 476 F.3d 791 at 798, 801.  Even if the Court disagrees with the defense's arguments that the government failed to prove proximate cause from the lack of roving patrol beyond a reasonable doubt, the lesser instruction was required because the defense's theory on causation was supported by at least "some evidence."  *Arnt*, 474 F.3d at 1164-65; *see also Skeet*, 665 F.2d at 987 (even where the court "find[s] it difficult to believe" the view of the evidence that would permit a conviction on the lesser offense and an acquittal on the greater, the lesser must be instructed to the jury so long as it is a rational possibility).

The defense presented extensive arguments in its closing argument showing that it was at least a rational possibility that Mr. Boylan's roving patrol practices did not proximately cause the loss of life.  To begin, the undisputed timeline established that Mr. Kohls was in the salon at 2:35 a.m., when nothing seemed amiss, and that the mayday call was at 3:14 a.m., at which point the fire was out of control.  (Dkt. No. 340 at 7, 25, 46-47 (Kohls testimony); Dkt. No. 361 at 13 (mayday call).)  Coupling that undisputed timeline with the testimony about the frequency with which an adequate

19

roving patrol would circulate through a vessel created at least the rational possibility that the government failed to prove the causation element beyond a reasonable doubt. Specifically, Brian Priddin testified that a roving patrol would, "typically," "go around the ship at least once every 20 minutes." (Dkt. No. 337 at 96.) But the government's expert, Captain Tortora, repeatedly testified that wile the regulations do not specify the frequency with which a roving patrol must circulate, "industry standard" dictates that they should walk around the vessel continuously "or at least once an hour." (Dkt. No. 368 at 55; *see also id.* at 94.)

Captain Tortora's testimony alone created a rational possibility—supported by at least "some evidence," *Arnt*, 474 F.3d at 1164-65—that even if the jury found Mr. Boylan grossly negligent with respect to roving patrol, it could acquit him of the greater offense and convict him of the lesser based on the causation element. As the defense put it in closing:

> Mikey Kohls was awake and on the main deck and saw nothing less than an hour that the roving patrol would have been required under Captain Tortora's own opinion. There were only 39 minutes, 39 minutes before flames were at the wheelhouse, before smoke was choking and making it impossible to grab a fire extinguisher. A roving patrol that walks around once every hour would not have changed the horrible tragedy here.

(Dkt. No. 375 at 68.)

Captain Tortora's testimony, coupled with the undisputed timeline, was sufficient on its own to create a dispute on the causation element warranting a jury instruction on the lesser-included offense that included the roving patrol allegations.

During a sidebar addressing the jury's note about the lesser-included offense, the Court indicated that it would be an unreasonable interpretation of the roving patrol regulation to permit someone to stand watch and circulate through the vessel only once an hour. (*See* Dkt. No. 372 at 50-51.) However, as the defense pointed out at the time, the government's expert did testify that a vessel would comply with his understanding of the roving patrol requirement if it circulated once an hour, and "a court may not

20

weigh the evidence in determining whether to give a lesser included offense instruction." *Medina-Suarez*, 30 F.4th at 821 (citation omitted).  Additionally, even after the *Conception* tragedy, the Coast Guard—which promulgates the regulations at issue—has instructed vessels of a similar size to the *Conception* that a night watch can stand watch and then circulate through the vessel with "no more than 2 hours between each round."[6]  (Ex. A at 3; Ex. B at 5.)

Captain Tortora's testimony was also not the only evidence the defense pointed to in its closing argument to dispute the causation element with respect to the roving patrol allegations.  The defense also argued that the fire modeling conducted by ATF agents supported its argument that the government failed to prove the causation element.  Specifically, the government's models using a fire beginning in the trash can outside the salon, without wind, took over 50 minutes to develop—too long for the 39-minute timeline established by the evidence.  (Dkt. No. 375 at 62.)  Conversely, the model fires with wind were "out of control before 20 minutes."  (Dkt. No. 375 at 66.) Mr. Kohls also testified that he heard "the sound of what he recognized, a sound he'd heard before, someone getting up, bumping into a chair, closing the bathroom door" about five minutes before he got up and saw the fire.  (Dkt. No. 375 at 66.)  All of this indicated that even if the jury accepted Mr. Priddin's more conservative testimony regarding the required frequency with which a roving patrol must circulate—every 20 minutes—it could have rationally concluded that a proper roving patrol would not have

---

[6] Exhibits A and B to this motion are Activity Summary Reports produced by the Coast Guard in the month after the *Conception* fire in 2019.  Each report addresses a vessel that is of the same type as the *Conception* (a passenger vessel under 100 gross tons, carrying overnight passengers), and each is about 65 feet long, smaller than the *Conception*. (Ex. A at 1; Ex. B at 1.)  In each report, the Coast Guard provides extensive details about safety protocols that need to be implemented after the *Conception* fire, including a "24-hour watch" during which the watchman will circulate through the vessel with "no more than 2 hours between each round." (Ex. A at 3; Ex. B at 5.)  Exhibits A and B were not introduced at trial, but they demonstrate that even after the *Conception* fire, the Coast Guard considered a night watch that circulates only every two hours to be compliant with its rules.

21

made a difference to the outcome under the particular facts of the fire present here. (*See* Dkt. No. 375 at 66.)

It appears from the Court's ruling on the lesser-included offense during trial that it may have found the defense's arguments on causation "difficult to believe," but it was nonetheless error for the Court to decide this factual dispute. *Skeet*, 665 F.2d at 987; *Hernandez*, 476 F.3d at 800 (reversing for failure to instruct on lesser-included because "[e]ven if it is more probable" that the defendant intended to distribute the methamphetamine, "we cannot say that a rational jury could not have" acquitted of that charge and convicted of the lesser offense of simple possession). "[R]egardless of the weight of the evidence, a defendant is entitled to a lesser included offense instruction if the evidence would allow a rational jury to convict him of the lesser offense and acquit him of the greater." *Hernandez*, 476 F.3d 791 at 798 (citing *Keeble,* 412 U.S. at 208). That standard is met here, and the Court therefore erred by instructing the jury that it could not consider the roving patrol allegation with respect to the lesser-included offense, even after the jury sent a note specifically asking if it could do so.

3. **It was also erroneous to exclude the roving patrol allegations from the lesser-included instruction because the lesser-included offense analysis is based on the elements of the offense, not specific factual allegations**

Regardless of the evidence regarding the roving patrol allegations specifically, it was independently erroneous to single-out and exclude the roving patrol allegations from the jury's consideration of the lesser-included offense for a more fundamental reason: once the Court determined that the lesser-included offense should be instructed to the jury, there was no legal basis to exclude from that instruction any factual allegations. Once the Court determined that Section 1115 contains the lesser-included offense of Section 2302(b), the Court was required to submit the lesser offense to the jury if "the evidence would permit a jury rationally to find the defendant guilty of the

22

lesser offense and acquit him of the greater."  *Medina-Suarez*, 30 F.4th at 819-20 (cleaned up).  This analysis focuses on the elements of the greater and lesser offenses, not on specific factual allegations:  in *Medina-Suarez*, for example, the Ninth Circuit concluded that a lesser-included instruction was required because "the 'prior conviction' *element* of felony attempted illegal entry was disputed at trial."  *Medina-Suarez*, 30 F.4th at 821 (emphasis added); *see also Schmuck*, 489 U.S. at 717 n.9 (lesser-included offense instructions are required to safeguard against erroneous conviction "where the jury suspects that the defendant is plainly guilty of some offense, but one of the *elements* of the charged offense remains in doubt" (emphasis added)).

This elements-based test was met here because a rational jury could acquit Mr. Boylan of the greater offense and acquit him of the lesser based on the causation element of the greater offense.  As the Court determined at trial, a rational jury could, for example, differentiate between the greater and lesser offenses if it found that Mr. Boylan's practices in training his crew were grossly negligent, and thus endangered the life or property of others as a general matter (thus meeting the elements of the lesser offense), but that his gross negligence did not proximately cause any loss of life because there was nothing a better-trained crew could have done to prevent the loss of life under the particular circumstances here.  (*See* Dkt. No. 371 at 87-88.)  Given that a rational jury could acquit of the greater offense and convict of the lesser based on the causation element of the greater, Mr. Boylan was "entitled to a lesser-included offense charge."  *Medina-Suarez*, 30 F.4th at 822 (citation omitted).

There is no room in this elements-based analysis for carving-out from the jury's consideration of the lesser offense certain factual allegations—indeed, the defense has not found a single other case where a court has done so.  The different allegations of misconduct raised by the government—the alleged deficiencies in Mr. Boylan's practices with respect to roving patrol, crew training, and the fire response—were not alternative elements of the offense, as demonstrated by the fact that no specific

23

unanimity instruction was provided. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (unanimity required where the jury is presented with alternative elements). They were instead factual allegations that the jury was tasked with considering in combination. (*See* Dkt. No. 320 at 6 (final jury instructions stating, "you must consider all of the relevant evidence regarding the existence or non-existence of gross negligence and the other elements of Section 1115.").)

Excluding one factual allegation from the jury's consideration of the lesser offense was especially problematic here because, as the government agreed at the hearing on the jury instructions, the charged offense required the jury to consider the totality of the evidence in considering whether Mr. Boylan's conduct rose to the level of gross negligence, and whether his gross negligence proximately caused the loss of life. *See* Dkt. No. 371 at 91, 92 (government counsel arguing that it "is a mistake to treat it as anything other than a totality of the conduct that makes up gross negligence"); *see also United States v. Pardee*, 368 F.2d 368, 375 (4th Cir. 1966) (decision of what conduct rises to the level of criminal negligence must be "left to the jury" so that it can "measure the conduct of the defendant against all of the existing circumstances and determine therefrom whether" it rises to criminally liable conduct); *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979) (relying on *Pardee* and concluding that manslaughter charge requires a showing of gross negligence); *United States v. Boylan,* 2:20-cr-600-GW, Dkt. No. 63 at 11 (relying on *Pardee* and *Keith* in concluding that Section 1115 requires a showing of gross negligence).

Because the different allegations were not elements of the offense, different members of the jury may have reached their decision based on a different combination of factors, and the jurors might also have concluded that no single factor—including the roving patrol issue—itself rose to the level of gross negligence. By removing the roving patrol allegation from the jury's consideration of the lesser offense, the instructions erroneously imbalanced the evidence the jury could consider, holistically,

24

in assessing the gross negligence element of the greater versus the lesser offenses.  But the gross negligence element of each offense was identical, and it was only the causation element that should have differentiated the two charges.

Once the Court concluded that a rational jury could acquit of the greater charge and convict of the lesser, it was required to submit the lesser offense to the jury.  There is no basis in law to exclude certain factual allegations from the jury's consideration. Finally, in specifically mentioning the roving patrol allegation in the instructions and stating that it could not be considered as part of the lesser-included offense, the instruction had the effect of emphasizing that allegation to the jury and implying that the roving patrol allegation was particularly weighty and indicative of more serious criminal conduct.  For all these reasons, it was error to exclude the roving patrol allegations from the jury's consideration of the lesser-included offense.

## V.CONCLUSION

For the foregoing reasons, the Court should order a new trial.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  February 22, 2024          By   /s/ Joshua D. Weiss

GEORGINA WAKEFIELD
GABRIELA RIVERA
JULIA DEIXLER
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorneys for JERRY NEHL BOYLAN

25