E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Chief, Environmental Crimes and Consumer Protection Section
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Deputy Chief, Appeals Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Public Corruption and Civil Rights Section
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3359/8644/3819/0304
     E-mail:  Mark.A.Williams@usdoj.gov
              Alexander.P.Robbins@usdoj.gov
              Matthew.O'Brien@usdoj.gov
              Brian.Faerstein@usdoj.gov
              Juan.Rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 22-482-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON ERROR IN LESSER INCLUDED OFFENSE INSTRUCTION |
| v. | |
| JERRY NEHL BOYLAN, | Hearing Date: April 11, 2024 |
| Defendant. | Hearing Time: 8:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark A. Williams, Alexander P. Robbins, Matthew W. O'Brien, Brian R. Faerstein, and

Juan M. Rodriguez, hereby files this opposition to defendant JERRY NEHL BOYLAN's Motion for a New Trial, in which defendant claims this Court's compromise lesser-included offense instruction constituted reversible error. ("Mot.," Dkt. 387.)

This Court was not even required to give such an instruction. The fact that it did so -- and gave the defense everything it asked for with one exception -- is not reversible error and does not warrant a new trial.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 14, 2024          Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney

                               MACK E. JENKINS
                               Assistant United States Attorney
                               Chief, Criminal Division


                               _____/s/_____
                               MARK A. WILLIAMS
                               ALEXANDER P. ROBBINS
                               MATTHEW W. O'BRIEN
                               BRIAN R. FAERSTEIN
                               JUAN M. RODRIGUEZ
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

I.    INTRODUCTION.................................................1

II.   RELEVANT TRIAL EVIDENCE......................................1

III.  JURY INSTRUCTIONS...........................................3

IV.   ARGUMENT....................................................6

      A.    As a Matter of Law, the Grossly Negligent Operation of
            a Vessel Is Not Categorically a Lesser Included
            Offense of Seaman's Manslaughter........................7

            1.    Legal Framework...................................8

            2.    Section 2302(b) Cannot Be a LesserIncluded
                  Offense Because the Elements of Section 2302(b)
                  Are Not a Subset of the Elements of Section 1115.....9

      B.    On the Facts of This Case, No Lesser-Included-Offense
            Instruction Was Required at All, and Certainly Not
            With Respect to the Roving Patrol......................15

            1.    Legal Framework.................................166

            2.    The Conception Was Such a Small Boat That It
                  Would Not Have Mattered How Frequently a Roving
                  Patrol Circulated..............................177

            3.    Based on the Evidence, No Lesser Included Offense
                  Was Warranted for the Roving Patrol.............18

      C.    Any Error Regarding the Lesser-Included Instruction
            Would Have Been Harmless..............................21

V.    CONCLUSION.................................................21

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Federal Cases**

Beardslee v. Woodford,
   358 F.3d 560 (9th Cir. 2004) ................................ 21
Carter v. United States,
   530 U.S. 255 (2000) ...................................... 9, 15
Chapman v. California,
   386 U.S. 18 (1967) ......................................... 21
Davis v. United States,
   185 F.2d 938 (9th Cir. 1950) ............................... 12
Gerlaugh v. Stewart,
   129 F.3d 1027 (9th Cir. 1997) .............................. 21
Ghent v. Woodford,
   279 F.3d 1121 (9th Cir. 2002) .............................. 21
Hopper v. Evans,
   456 U.S. 605 (1982) ........................................ 21
Mathis v. United States,
   579 U.S. 500 (2016) ......................................... 8
Sansone v. United States,
   380 U.S. 343 (1965) .................................... 16, 19
Schmuck v. United States,
   489 U.S. 705 (1989) .................................... passim
United States v. Alvarez,
   809 Fed. App'x. 562 (11th Cir. 2020) ...................... 14
United States v. Arnt,
   474 F.3d 1159 (9th Cir. 2007) ........................... 6, 16
United States v. Chapel,
   55 F.3d 1416 (9th Cir. 1995) ............................... 16
United States v. Dixon,
   509 U.S. 688 (1993) ......................................... 8
United States v. Harmon,
   537 F. App'x 719 (9th Cir. 2013) ........................... 21
United States v. Harvey,
   701 F.2d 800 (9th Cir. 1983) ........................... 16, 20
United States v. Hernandez,
   476 F.3d 791 (9th Cir. 2007) ............................... 16
United States v. LaBrecque,
   419 F. Supp. 430 (D. N.J. 1976) ............................ 11
United States v. Main,
   113 F.3d 1046 (9th Cir. 1997) .............................. 19
United States v. McKee,
   68 F.4th 1100 (8th Cir. 2023) .......................... 12, 13
United States v. Medina-Suarez,
   30 F.4th 816 (9th Cir. 2022) ........................... 16, 19
United States v. O'Keefe,
   426 F.3d 274 (5th Cir. 2005) ............................... 14

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

United States v. Rivera Alonzo,
  584 F.3d. 829 (9th Cir. 2009) ...................................... 5

**Federal Statutes**

18 U.S.C. § 16(b)......................................................... 8
18 U.S.C. § 1115.................................................... passim
18 U.S.C. § 2113(a) ...................................................... 9
46 U.S.C. § 2302 ..................................................... 4, 12
46 U.S.C. § 2302(a) ..................................................... 12
46 U.S.C. § 2302(b).................................................. passim

**Rules**

Fed. R. Crim. P. 31(c)(1) ................................................ 6
Fed. R. Crim. Proc. 52.................................................. 21

**Other Authorities**

3 Fed. Prac. & Proc. Crim. § 515...................................... 8

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

At 9:27 p.m. before the last day of trial, defense counsel

4

asked, for the first time in four years of litigation, that the jury

5

be instructed that "[t]he crime charged in the indictment of 18

6

U.S.C. § 1115 includes the lesser crime of 46 U.S.C. § 2302(b)."

7

(Dkt. 312 at 3.)  That request was unnecessarily last-minute, legally

8

incorrect, and unwarranted on the facts of this case.  But after

9

extensive argument (see 11/3/2023 a.m. RT 44-64), the defense got

10

what it asked for: an instruction that "[t]he crime of Misconduct or

11

Gross Negligence of Ship Officer, in violation of 18 U.S.C. § 1115,

12

includes the lesser crime of Grossly Negligent Operation of a Vessel,

13

in violation of 46 U.S.C. § 2302(b)," with a single exception

14

regarding defendant's failure to post a roving patrol.

15

Now the defense argues that they should have been given the

16

entire instruction they asked for, rather than almost all of it --

17

with no exception.  The defense is wrong.  The new-trial motion

18

should be denied.

19

## II.    RELEVANT TRIAL EVIDENCE

20

The Motion spends pages discussing the fire timeline, roving

21

patrols, and "periodicity" of night watches, but neglects to mention

22

two key facts conclusively established at trial.

23

First, defendant never conducted or ordered roving patrols on

24

the Conception.  The crewmembers onboard the Conception on the night

25

of the fire all testified that defendant had never ordered them to

26

conduct a night watch or a roving patrol.  (See 10/27/2023 a.m. RT 31

27

and 157; 10/27/2023 p.m. RT 13; 10/30/2023 a.m. RT 85.)  Michael

28

Kohls and Ryan Sims, the galley hands, testified that they had never

even heard the term "roving patrol" at the time of the fire. (10/27/2023 a.m. RT 156; 10/27/2023 p.m. RT 13.)  Mr. Sims further testified that although he asked defendant questions about safety procedures, defendant chuckled and only replied "[w]hen we get to it, Ryan" and never provided any fire or other safety-related training. (10/27/2023 p.m. RT 13.)

The Court also discussed roving patrols a number of times with counsel during trial.  For example, during one sidebar the Court noted that "the requirements are to have a roving patrol.  And again, in the situation of the boat itself, all you have to do is be awake." (11/6/2023 a.m. RT 50.)

Second, the undetected fire that killed the 34 victims was not fast moving -- it took time to develop.  It did not ignite and flashover in seconds.  The government's two fire experts both testified that the fire started small.  (10/31/2023 a.m. RT 38 and 132.)  Defense counsel concedes that the fire started and developed sometime in a 39-minute window.  (Mot. at 4.)  Consistent with that window, the senior fire research engineer expert testified that his fire tests took an average of 27.5 minutes to develop to the point where the crew would have first observed the fire.  (Id.)

During one sidebar, the Court correctly stated that "[t]here is no evidence of a fast-starting fire."  (11/6/2023 a.m. RT 51.)  The Court recognized that even if the fire started and developed in four minutes, as defense counsel contended at one point, "it's still an incredible amount of time on that small boat."  (Id. at 52.)  That caused the Court to press defense counsel by asking "[h]ow would a roving patrol not catch a four-minute fire on the vessel?"  (Id.)

2

Thus, at the end of trial, two facts were clear: defendant never conducted or ordered a roving patrol onboard the Conception, and the fire that ultimately claimed the lives of 34 victims went undetected for up to 39 minutes.

## III. JURY INSTRUCTIONS

At 9:27 p.m. before the ninth day of trial, the defense filed a motion raising (for the first time) a lesser-included jury instruction.  The lesser-included jury instruction was for a misdemeanor violation of 46 U.S.C. § 2302(b), a statute titled "penalties for negligent operations and interfering with safe operation."  Unlike 18 U.S.C. § 1115, Section 2302(b) applies to people who are not crewmembers employed on a ship, includes conduct that "endangers" life and limb, and criminalizes conduct that may endanger a person's property.

Defense counsel made clear that it was a tactical decision to raise the lesser-included jury instruction, for the first time, at the end of trial:

> COURT:          Although, I do agree with the government, that, you know, you guys should -- I don't understand why you didn't raise this earlier, because frankly, the arguments he's making now are exactly the arguments that could have been made earlier.
>
> MS. WAKEFIELD: We had to analyze the case as it came in, and look at the facts.
>
> COURT:          Come on, counsel.
>
> MS. WAKEFIELD: That's true.  We have to look and make a strategic decision about whether we want to propose this to the jury.  We are constantly making that --
>
> COURT:          I know life is hard for you guys.  It's hard for everyone.  That is the reason why --

3

MS. WAKEFIELD:   I apologize for the inconvenience, Your Honor.

COURT:   It's not a question of inconvenience, it's a question that if you don't give the Court enough time to make these decisions and look -- actually, reading and looking at the stuff you are providing, when you file the stuff at 10 o'clock when we're talking about the jury instructions, you should have known that when I said we're going to get a final set of jury instructions, and if you want to put something in of this magnitude, you basically offer it to the Court at an earlier point in time.

MS. WAKEFIELD:   I apologize, Your Honor.  We did not intend or mean to play any games here.

We were evaluating our case.  We were evaluating the government's case and deciding whether we even wanted to propose this at all.

(11/3/2023 a.m. RT 62-63.)

In hearing initial arguments regarding the lesser-included jury instruction, the Court correctly asked defense counsel an obvious question: "[w]hy would it be lesser-included if the one actually is limited to death, and the other one is just -- it doesn't require death at all or any injury, it just increases the risk." (11/3/2023 a.m. RT 48.)  The Court also noted that "I don't understand how the jury could acquit -- sorry, the jury could find the defendant guilty of a lesser-included without finding him in violation of the charged offense under the facts and evidence presented in this case."  (Id. at 79.)

On hearing additional arguments later that day, the Court stated that although the defense claimed that a case from a Maryland district court in 1956 found that 46 U.S.C. § 2302 was a lesser

4

included offense of 18 U.S.C. § 1115, both offenses had actually been charged in that case so the Court was "surprised you cited for that proposition since that is absolutely false" and that defense counsel's "citation in that case is misleading in the way you have characterized it." (11/3/2023 a.m. RT 77-78.)  The Court continued:

> Also, as to my understanding -- that is looking at United States versus Rivera Alonzo, 584 F.3d. 829 at 834, in order to be obligated to the give the lesser-included charge, the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser-included offense, yet acquit him of the greater.
>
> In that process, the Court does not w[eigh] the evidence, but the determination of whether or not it's a lesser-included is made considering the evidence as actually proffered during the trial.
>
> Also, a District Court may properly refuse to give the instruction of lesser-included offense if the jury could not have convicted a defendant on the lesser-included offense without finding the elements that would convert the lesser-included offense into the greater.
>
> My question here is, based on the evidence in this case, I don't understand how the jury could acquit – sorry, the jury could find the defendant guilty of a lesser-included without finding him in violation of the charged offense under the facts and evidence presented in this case.

(Id. at 78-79.)  The Court also correctly noted that with respect to roving patrols, "the whole purpose is to detect early on the presence of some danger, such as fire, such as, you know, some condition of the ocean that requires immediate attention," and also that during trial there was "no evidence of an immediate conflagration."  (Id. at 84, 86.)  The government agreed with the Court, noting that defendant could not have caused the endangerment (of death) without also causing the result (death).

Although the Court ultimately granted defense counsel's request for the lesser-included jury instruction, the Court specifically carved out the roving patrol issue from the lesser included offense. In doing so, the Court found that "I would say I would not include the lesser-included insofar as the roving patrol, because that one I don't think you are going to -- under the facts of this case, that it would be a lesser included." (11/3/2023 RT 88.)  With respect to the roving-patrol carve-out from the lesser included offense, the Court explained:

> I don't understand how it would be sufficient to create the endangerment, the endangerment being that the fire would go undetected and people would lose their lives because of a fire.
>
> Creating that type of endangerment to life versus what transpired, which, there was a fire, and these individuals lost their lives.
>
> I don't understand how you could get the endangerment element without also having found the deaths were caused.

(Id. at 89-90.)

Despite heavily litigating and obtaining this jury instruction, defense counsel never mentioned the lesser included offense in their closing argument.

## IV.  ARGUMENT

The Federal Rules of Criminal Procedure allow a defendant to "be found guilty of . . . an offense necessarily included in the offense charged."  Fed. R. Crim. P. 31(c)(1).  That provision contains both a legal component and a factual one.  See United States v. Arnt, 474 F.3d 1159, 1163 (9th Cir. 2007).  The defense cannot establish either requirement, let alone both.

**A. As a Matter of Law, the Grossly Negligent Operation of a Vessel Is Not Categorically a Lesser-Included Offense of Seaman's Manslaughter**

The first reason why the Court should deny the Motion is that, as a matter of law, 46 U.S.C. § 2302(b) is not a categorically lesser-included offense of 18 U.S.C. § 1115. When the Court ruled to the contrary at trial, the Court did so (1) without the benefit of any briefing from the government on the issue (because the defense sandbagged the Court and the government by deliberately springing the lesser-included argument at the last minute); and (2) upon misrepresentations made to the Court by defense counsel about the scope of Section 2302(b). While the Court could revisit its ruling, it does not need to do so because, as described below, the Court's ultimate conclusion was correct that no lesser-included instruction was appropriate with respect to defendant's failure to post a roving patrol.

The government argued at trial that § 2302(b) was not categorically a lesser included offense of § 1115 as a matter of law (see 11/3/2023 a.m. RT 51, 54; 11/06/23 RT 47-48) -- on the fly, with no notice except for a filing the night before and no opportunity to do any legal research. And the Court, equally sandbagged, rejected the government's arguments by giving the defense's lesser-included instruction anyway, with respect to every alleged act of gross negligence except one. Now, however, any difference between the government's position and what the Court actually did is immaterial. Defendant was not entitled to any lesser-included instruction -- as a matter of law. Defendant therefore cannot establish reversible error or a right to a new trial because the Court declined to give the full instruction he asked for.

1           1.   Legal Framework

2        As the defense recognizes (Mot. at 11), a lesser crime cannot be

3   a "lesser included" offense of a greater crime unless "it is

4   impossible to commit the greater without first having committed the

5   lesser."   Schmuck v. United States, 489 U.S. 705, 719 (1989)

6   (citation omitted).   The test is a categorical one: it is an

7   "elements approach" or an "elements test," id. at 716-17, just like

8   the "Blockburger test" for double jeopardy, see United States v.

9   Dixon, 509 U.S. 688, 696-97 (1993),[1] or the "categorical approach"

10  for defining what constitutes a "crime of violence" under 18 U.S.C.

11  § 16(b), see, e.g., Mathis v. United States, 579 U.S. 500, 504

12  (2016).   As an "elements test," "it depends on the elements in the

13  statute as opposed to the proof at trial."   Wright & Miller, 3 Fed.

14  Prac. & Proc. Crim. § 515 (5th Ed.).

15       That means that if "Crime A requires a unique element so that

16  its elements are not just a subset of the elements of Crime B," Crime

17  A cannot be lesser-included offense of Crime B.   Wright & Miller

18  § 515.   "For example, bank larceny [Crime A] is not a lesser-included

19  offense of bank robbery [Crime B] because the larceny statute

20  requires that the prosecution prove the defendant carried away the

21  property and that the property was valued over $1000."   Id.   Bank

22  larceny is not "included" within robbery because not all bank robbers

23  are also larcenists.   Critically, this is a purely legal question:

24  because it is a "textual comparison of criminal statutes and does not

25  depend on inferences that may be drawn from evidence introduced at

26  trial, the elements approach permits both sides to know in advance

27  ───────────────

28       [1] The defense also notes the equivalence of the Blockburger
    double-jeopardy caselaw, citing Dixon.   (Mot. at 12-13.)

1   what jury instructions will be available and to plan their trial

2   strategies accordingly." Schmuck, 489 U.S. at 720.[2]

3        The facts of the particular case are not part of this legal

4   inquiry: a defendant can rob $16,000 from a bank, in violation of 18

5   U.S.C. § 2113(a), and still not be entitled to a lesser-included

6   instruction on bank larceny, § 2113(b), because bank larceny requires

7   as an element (inter alia) a loss of more than $1,000. Carter v.

8   United States, 530 U.S. 255, 259, 262 (2000). All that is required

9   is a "textual comparison of the elements of the[] [two] offenses."

10  Id. at 262 (internal quotation marks omitted). If it is possible to

11  commit Crime B without also committing Crime A (e.g., robbing $500

12  from a bank without committing larceny), then Crime A cannot be a

13  lesser-included offense of Crime B. See Schmuck, 489 U.S. at 719

14  (must be "impossible to commit the greater without first having

15  committed the lesser"). The other crime might be "lesser," but it

16  would not be "included."

17              2.   Section 2302(b) Cannot Be a Lesser-Included Offense
                     Because the Elements of Section 2302(b) Are Not a
18                   Subset of the Elements of Section 1115

19       A "textual comparison" of the elements at issue in this case,

20  Schmuck, 489 U.S. at 720, shows that 46 U.S.C. § 2302(b) is not a

21  categorically lesser included offense of 18 U.S.C. § 1115. The Court

22  may deny the Motion on this basis alone.

23

24

25

26  _____

27       [2] As the government pointed out at trial (11/3/2023 a.m. RT 45),
    this legal question -- whether 46 U.S.C. § 2302(b) was categorically
    a lesser-included offense of 18 U.S.C. § 1115 -- did not need to be
28  briefed for the first time at 9:30 p.m. the night before the final
    day of trial. (Dkt. 312.)

Here is a chart outlining the elements of each crime:

|  | 46 U.S.C. § 2302(b) | 18 U.S.C. § 1115 |
|---|---|---|
| **Conduct** | Gross Negligence | Misconduct, negligence, or inattention to duties |
| **Subject** | A person operating a vessel | A captain, engineer, pilot, or other person employed on any steamboat or vessel |
| **Result** | Endangering the life, limb, or property of a person | Destroying the life of a person |
| **Jurisdiction** | Federal admiralty jurisdiction | Federal admiralty jurisdiction |

See 46 U.S.C. § 2302(b); 18 U.S.C. § 1115.

Focusing solely on the categorical/textual analysis of the elements, there are at least three reasons why Section 2302(b) is not a lesser included offense of Section 1115.

    *a. Section 2302(b) Applies to Anyone Operating a Vessel; Section 1115 Applies Only to Crewmembers Employed on a Vessel*

The "subject" requirement of Section 2302(b) is not a subset of the "subject" requirement of Section 1115. "A person operating a vessel" is not necessarily a "captain, engineer, pilot, or other person employed on any steamboat or vessel" under Section 1115. For example:

- If a retiree sailing his own 62-foot sailboat from Connecticut to Florida in winter along with three teenage crewmembers accidentally runs the boat aground, resulting in the drowning

10

of two of the teens, he could be found liable for violating
Section 2302(b) but not Section 1115 because he was not
employed as a crewmember on his vessel.  See United States v.
LaBrecque, 419 F. Supp. 430, 437 (D. N.J. 1976) (granting
defendant's motion for acquittal following the deaths of two
of his teenage crewmembers on his schooner because "Section
1115 only reaches commercial vessels.  Accordingly, the
defendant cannot be prosecuted under Section 1115 as a captain
of a vessel.").

- If Joe Fisherman borrows his neighbor's motorboat to go
  fishing with his girlfriend in Santa Monica Bay, and Joe
  Fisherman's girlfriend is killed on the excursion due to his
  gross negligence, his misconduct would be covered by Section
  2302(b).  But Joe Fisherman's conduct would not be covered by
  Section 1115 because he is not a "captain, engineer, pilot, or
  other person employed on any steamboat or vessel."

- Likewise, if Joe Fisherman works as a licensed captain on
  commercial dive boats during the week, and on Saturday
  afternoon he takes a few buddies out fishing in Santa Monica
  Bay on his own private motorboat and someone gets killed due
  to his misconduct, his misconduct would be covered by Section
  2302(b) but not Section 1115 because he is not a captain
  "employed" on his own motorboat.

The disconnect between the two statutes' "subjects" dooms
defendant's argument even within the narrower context of commercial
boats.  For example:

- On a commercial dive boat, a drunk passenger goes up to the
  empty wheelhouse at night, presses a button that pulls up the

11

anchor, and crashes the boat into a rocky shoreline, killing
one of his fellow passengers who was asleep but knocked out of
his upper bunk by the crash.  The drunk passenger could be
liable under Section 2302(b), but not under Section 1115,
because he was not a crewmember.

Each of these examples illustrate why the "subject" requirement
of Section 2302(b) is not a subset of the "subject" requirement of
Section 1115.

On the ninth day of trial, after the defense finally unveiled
its lesser-included theory, the defense represented to the Court that
Section 2302(b) applies "only to commercial vessels" and "not just a
person on a pleasure boat or something like that."  (11/3/2023 a.m.
RT 56:3-7.)  Defense counsel represented to the Court that United
States v. McKee, 68 F.4th 1100 (8th Cir. 2023), held that Section
2302(b) applies only to commercial vessels.  (Id. at 55:23-56:3.)

Defense counsel's representation to the Court was incorrect.
The plain language of the statute expressly encompasses conduct
aboard "a recreational vessel."  46 U.S.C. § 2302(a).  Given that
Section 2302(a) (setting forth civil penalties for the same conduct)
applies to "a recreational vessel," there is no basis to conclude
that the very next sentence in the statute (i.e., Section 2302(b))
somehow does not encompass recreational vessels.  Indeed, the
predecessor statute to Section 2302 was the "Motorboat Act of 1940,"
which (as the name suggests) primarily covered recreational vessels.
See 46 U.S.C. § 2302, rev. notes; Davis v. United States, 185 F.2d
938, 940 (9th Cir. 1950).

The defense conceded as much at trial (perhaps inadvertently).
In its late-night filing unveiling the lesser-included jury

instruction, the defense wrote: "The offense stated in § 2302(b) is comprised of four elements: (1) gross negligence, (2) <u>by a person operating a vessel</u>, (3) that endangers the life, limb, or property of a person; and (4) federal admiralty jurisdiction."  (Dkt. 312 at 3:2-5) (emphasis added.)  That was accurate.

Yet on the very next page of the defense's brief, the "a person operating a vessel" requirement had morphed into "a person operating a <u>commercial</u> vessel" requirement.  (<u>Id.</u> at 4:6-7) (emphasis added.)[3]

Contrary to defense counsel's representation to the Court, <u>United States v. McKee</u> does not limit the applicability of Section 2302(b) to commercial vessels.  <u>McKee</u>'s discussion of commercial vessels involved whether the place of McKee's alleged crime -- a lake in the Ozarks -- was a navigable-in-fact water within federal admiralty jurisdiction (<u>i.e.</u>, a lake capable of "commercial" shipping).  Contrary to defense counsel's representation to the Court, <u>McKee</u> never decided (or even discussed) whether -- for unknown reasons -- Section 2302(b) somehow should not apply to operators of recreational boats.  And of course, regardless, <u>McKee</u> is not binding on this Court.

In sum, unlike Section 1115, Section 2302(b) applies to anyone operating a vessel, not just crewmembers employed on a vessel.  As a result, Section 2302(b) cannot be a lesser-included offense of

---

[3] The defense employs a similar sleight of hand in its Motion.  The Motion claims that one element of Section 2302(b) is that "the Defendant operated a commercial vessel" (Mot. at 12:3), but the Motion is quoting this Court's jury instruction (which was erroneous due to the defense's misdirection).  Then the Motion cites Section 2302(b) (which does not limit itself to commercial vessels), and <u>United States v. McKee</u> (which does not address the issue, as discussed below).  (Mot. at 12:6-8.)  The Motion's legal support is circular on the one hand and wrong on the other.

1  Section 1115.  The Court may deny defendant's Motion on this basis

2  alone.

3          *b.  Section 2302(b) Requires Gross Negligence, While
           Every Circuit Court of Appeals To Have Addressed
4          the Issue Has Held That Section 1115 Requires
           Only Simple Negligence*

5

6      The Court's prior ruling that Section 1115 requires gross

7  negligence contradicts appellate rulings from the Fifth and Eleventh

8  Circuits holding that Section 1115 requires only negligence.  See

9  United States v. O'Keefe, 426 F.3d 274 (5th Cir. 2005); United States

10 v. Alvarez, 809 Fed. App'x. 562, 564 (11th Cir. 2020).  While for

11 present purposes the government is not challenging the Court's prior

12 ruling on gross negligence, the point here is that Section 2302(b) is

13 not a lesser included offense of Section 1115 in the Fifth and

14 Eleventh Circuits.  To the contrary, in those Circuits, Section

15 2302(b) is the opposite of a lesser included offense:  Section

16 2302(b) has a greater burden than the simple negligence required

17 under Section 1115 (presumably because Section 2302(b) criminalizes

18 misconduct by anyone operating a boat, whereas Section 1115 applies

19 more narrowly to crewmembers who should know better due to their

20 licenses and training).  The government is not aware of any other

21 crime that is a lesser included offense of another crime in the view

22 of one District Court but not in two other Circuits, particularly

23 where in the two other Circuits the purported "greater" offense has a

24 lesser burden than the purported "lesser" offense.

25          *c.  A Defendant Can Violate Section 1115 Without
           Violating Section 2302(b)*

26

27      Finally, because in some situations a defendant could be guilty

28 of violating Section 1115 but not Section 2302(b), Section 2302(b)

14

cannot possibly be a lesser-included offense.  Specifically, Section 1115 covers all crewmembers, but Section 2302(b) covers only people "operating a vessel."  So, for example:

- A bartender employed on a dive boat in waters known to be home to great white sharks plays a prank and yells to a few passengers in the middle of the night to jump overboard because the ship is sinking.  A shark kills a passenger, or a passenger drowns.  The bartender, who was not "operating a vessel," could be liable under Section 1115 but not Section 2302(b).

- An engineer on a vessel is repairing a leak in the fuel tank.  He takes a smoke break while working and an explosion occurs, killing a fellow crewmember.  The engineer could be liable under Section 1115 but not Section 2302(b) because he was not "operating a vessel."

As the Motion notes, "the lesser [offense] must be such that it is <u>impossible</u> to commit the greater [offense] without first having committed the lesser."  (Mot. at 11:15-17 (quoting <u>Schmuck</u>, 489 U.S. at 719)) (emphasis added.)  As the foregoing examples demonstrate, it is possible to violate Section 1115 without first having violated Section 2302(b).  Just as it is possible to commit bank robbery without committing bank larceny.  <u>See</u> <u>Carter</u>, 530 U.S. at 262.  Accordingly, Section 2302(b) cannot be a lesser included offense.  Again, the Court may deny the Motion on this basis alone.

**B.  On the Facts of This Case, No Lesser-Included-Offense Instruction Was Required at All, and Certainly Not With Respect to the Roving Patrol**

Even if 46 U.S.C. § 2302(b) were a lesser included offense of 18 U.S.C. § 1115 as a matter of law (it is not), defendant would not be

entitled to the lesser-included instruction he asked for based on the facts of this case.

### 1.    Legal Framework

Even if a lesser offense is categorically "included" within a greater, charged offense, a lesser-included instruction is still not warranted unless it fits the facts.  See Arnt, 474 F.3d at 1163; United States v. Harvey, 701 F.2d 800, 807 (9th Cir. 1983)[4] ("In considering th[is] second factor, the focus must be on the evidence adduced at trial.").  There has to be some daylight between the two offenses based on the evidence: a "lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses." United States v. Medina-Suarez, 30 F.4th 816, 822 (9th Cir. 2022) (quoting Sansone v. United States, 380 U.S. 343, 349-50 (1965)).  Instead, "the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." United States v. Hernandez, 476 F.3d 791, 798 (9th Cir. 2007) (quoting Schmuck, 489 U.S. at 716 n.8). This is an "independent prerequisite" for giving the instruction. Schmuck, 489 U.S. at 716 n.8.

Defense counsel correctly acknowledges this standard (Mot. at 13-14 (quoting these cases)), but incorrectly argues that this Court was required to give his lesser-included instruction with respect to the "roving patrol" component of the Section 1115 charge.  That is wrong.  Defendant was not entitled to a lesser-included instruction

---

[4] Harvey was overruled on unrelated Fourth Amendment grounds by United States v. Chapel, 55 F.3d 1416 (9th Cir. 1995).

with respect to <u>any</u> component of the charge against him, and certainly not the roving patrol.

### 2. The Conception Was Such a Small Boat That It Would Not Have Mattered How Frequently a Roving Patrol Circulated

Much of the Motion is taken up by a discussion of (1) slight differences in the testimony of the government's witnesses regarding how often a roving patrol should walk around a boat in search of a fire, man overboard, etc., and (2) different possibilities as to precisely the speed at which the fire on the <u>Conception</u> spread. The defense misses the point.

If anyone had been awake on the main deck or upper deck on the <u>Conception</u> when the fire started, they would have noticed the fire almost immediately.[5]  The fire started in the middle of the night in a very remote setting, so the flames would have been highly visible in the dark.  And the <u>Conception</u> was a relatively small ship -- about the length of your Honor's courtroom.  It does not matter if a hypothetical roving patrol on the <u>Conception</u> had been instructed to walk around the ship every twenty minutes, or every hour, or at some other interval: anyone who was awake would have spotted the fire more quickly than the ship's Second Galley Hand did (it was undisputed at trial that he was the first person to see the fire, after he woke up during the fire).

As the Court noted during jury deliberations when it rejected the defense's attempt to split hairs regarding the "periodicity" of a non-existent roving patrol (in order to change the verdict form and re-open closing arguments), "all you have to do is be awake."

---

[5] A roving patrol would not have been based in the cramped bunkroom, where all 33 passengers were asleep.

1   (11/6/2023 RT 50:20-21.)  As the Court noted in rejecting the same

2   arguments that the defense repackages here, even if the fire took

3   only four minutes to spread to the extent it did before being

4   discovered, four minutes is "still an incredible amount of time on

5   that small boat."  (Id. at 52:9-10.)

6       Again, there was no evidence of a sudden explosion causing the

7   fire on the Conception.  As the Court noted in rejecting the

8   defense's challenge to the scope of the lesser-included instruction,

9   "[t]here is no evidence of a fast-starting fire."  (Id. at 51:24-25.)

10  Instead, it was undisputed at trial that the fire started small, it

11  started on the main deck, and it subsequently grew to the point where

12  the surviving crewmembers barely tried to fight the fire before

13  jumping overboard.  And it was undisputed that there was no roving

14  patrol that night.  As a result, as explained below, Section 2302(b)

15  cannot be a lesser included offense on the issue of defendant's lack

16  of a roving patrol.

17          3.   Based on the Evidence, No Lesser Included Offense Was
                 Warranted for the Roving Patrol

18

19      Defense counsel summarizes the government's evidence of deadly

20  gross negligence in this case as based on three failures: (1) failure

21  to train, (2) failure to post a roving patrol, and (3) failure to

22  rescue.  (See Mot. at 7.)  As noted, the defense got the instruction

23  it asked for with respect to two of those three failures.  But even

24  that much was not required.  As the government argued at trial

25  (11/3/2023 a.m. RT 81-88), the evidence of causation for the charges

26  in this case (for 18 U.S.C. § 1115) was the same as the evidence of

27  endangerment (for 46 U.S.C. § 2302(b)): "you wouldn't have causation

28  at all if there [were] no endangering."  (11/3/2023 a.m. RT 82.)  As

the Court noted, there was no way for the jury to "find that the defendant's grossly negligent conduct endangered the life of the decedents without also having found the cause of death." Id. The only difference between dangerous gross negligence and deadly gross negligence is death -- and here, "[o]f course, there is no dispute that 34 people perished." (Id. at 84.)

The defense argument in its new-trial motion is that, to the contrary, something can be "dangerous as a general matter" but not "proximately cause . . . loss of life" in a particular case. (Mot. at 6; see also id. at 19 ("unsafe as a general matter").) That's certainly true if no one dies. And it also may be true if one defines "dangerous as a general matter" sufficiently broadly that it encompasses "dangers" like forgetting to lock one's front door, running in dress shoes, or staying up too late the night before trial. But when the issue is deadly dangers -- something "that endangers the life . . . of a person," 46 U.S.C. § 2302(b)[6] -- the only difference between merely posing a deadly danger and actually "play[ing] a substantial part in bringing about [a] death" is whether someone died. Ninth Cir. Model (Criminal) Jury Instr. 16.4 (quoting United States v. Main, 113 F.3d 1046, 1050 (9th Cir. 1997)). People died: there's no dispute about that here. 11/3/2023 a.m. RT 84; Medina-Suarez, 30 F.4th at 822 (a "lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses," quoting Sansone). If defendant's grossly negligent failures were harmless and did not substantially contribute to his

---

[6] The statute also refers to "limb" or "property," though neither is at issue on the facts of this case.

passengers' deaths, then by definition those failures did not "endanger" their lives.

The defense responds that "where one statute criminalizes conduct that creates a <u>risk</u> of harm to people or property and another criminalizes conduct that <u>causes</u> the loss of life, courts routinely treat the former as a lesser offense included in the latter." (Mot. at 12 (citing <u>Harvey</u>, 701 F.2d at 807).) The case they cite does not help them, however. In <u>Harvey</u>, the defense's proposed lesser-included instruction was <u>not</u> warranted -- even though the lesser offense of careless driving was categorically included within the greater offense of involuntary manslaughter as a legal matter. <u>Harvey</u>, 701 F.2d at 807. There, as here, it did not fit the disputed facts of the case. <u>Id.</u> There was no dispute about any fact that would "go to prove" one but not the other. <u>Id.</u>

Finally, although the defense makes much of the government's position at trial that the lesser-included question presented an all-or-nothing choice based on the "totality" of the evidence (Mot. at 6, 24-25), the issue before the Court now -- on defendant's motion for a new trial -- is not whether defendant was entitled to <u>any</u> lesser-included instruction. The defense <u>received</u> a lesser-included instruction, on two of defendant's three failures (failure to train and rescue). Defendant's argument is that he was entitled to <u>all</u> three (<u>i.e.</u>, including the roving patrol). The Court correctly determined that defendant was not, because there was no way a rational jury could find that the failure to post a roving patrol -- on the facts of this case -- fit the Section 2302(b) offense but not the Section 1115 charge. (<u>See</u> 11/06/23 RT 50-52.) Whether it was correct to give the lesser-included instruction on the other two of

20

three failures is beside the point.  (See Mot. at 6 & n.2 (noting the government's argument that none of the three should receive a lesser-included instruction).)  The Court decided that defendant was not entitled to such an instruction with respect to the roving patrol. That is the decision defendant complains about, and that decision was correct.  Defendant's motion for a new trial should be denied.

## C.  Any Error Regarding the Lesser-Included Instruction Would Have Been Harmless

Finally, any error would be harmless.  See, e.g., Hopper v. Evans, 456 U.S. 605, 613-614 (1982) (citing Chapman v. California, 386 U.S. 18 (1967), and finding no prejudice from trial court's failure to give lesser-included offense instruction); United States v. Harmon, 537 F. App'x 719, 720 (9th Cir. 2013) ("harmless error rule applies to the district court's consideration of motions for a new trial") (citing Fed. R. Crim. Proc. 52 advisory committee's note).[7]

The defense did not even mention the lesser included offense in its closing argument.  Almost the entire trial was over before the Court decided to give the lesser-included instruction.  The jury found defendant guilty of the "greater" offense, just as it necessarily would have if the Court never instructed the jury regarding Section 2302(b).  Any error was harmless.

## V.   CONCLUSION

Defendant's motion should be denied.

---

[7] Likewise, a court's failure to give an unwarranted lesser-included instruction is subject to harmless-error analysis.  See, e.g., Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004); Ghent v. Woodford, 279 F.3d 1121, 1134 (9th Cir. 2002); Gerlaugh v. Stewart, 129 F.3d 1027, 1031 (9th Cir. 1997).