E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Chief, Environmental Crimes and Consumer Protection Section
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Deputy Chief, Appeals Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Public Corruption and Civil Rights Section
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3359/8644/3819/0304
    E-mail:  Mark.A.Williams@usdoj.gov
             Alexander.P.Robbins@usdoj.gov
             Matthew.O'Brien@usdoj.gov
             Brian.Faerstein@usdoj.gov
             Juan.Rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>JERRY NEHL BOYLAN,<br><br>          Defendant. | No. CR 22-482-GW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT JERRY NEHL BOYLAN'S MOTION FOR BOND PENDING APPEAL (DKT. NO. 473)<br><br>Hearing Date: July 29, 2024<br>Hearing Time: 8:00 a.m.<br>Location:      Courtroom of the<br>               Hon. George H. Wu |

Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Mark Williams,

Alexander Robbins, Matthew O'Brien, Brian Faerstein, and Juan

Rodriguez, hereby files its opposition to defendant Jerry Nehl Boylan's Motion for Bond Pending Appeal (Dkt. No. 473).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 8, 2024              Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


 /s/ *Brian Faerstein*
MARK A. WILLIAMS
ALEXANDER P. ROBBINS
MATTHEW W. O'BRIEN
BRIAN R. FAERSTEIN
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................i

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   RELEVANT BACKGROUND..........................................3

      A.    Indictment and Trial...................................3

      B.    Post-Trial Motions.....................................4

      C.    Sentencing, Appeal, and Surrender Date.................5

III.  STANDARD FOR BAIL PENDING APPEAL.............................5

IV.   DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL IS NOT FOR THE
      PURPOSE OF DELAY AND RAISES A SUBSTANTIAL QUESTION OF LAW
      OR FACT LIKELY TO RESULT IN REVERSAL OR A NEW TRIAL..........7

      A.    Defendant Fails to Raise Any Substantial Question as
            to the Court's Lesser-Included Offense Instruction.....7

            1.    A Lesser-Included Offense Instruction Should Not
                  Have Been Given as a Matter of Law...............8

            2.    The Court's Lesser-Included Offense Instruction
                  Does Not Raise Any Substantial Question on the
                  Facts of This Case in Any Event.................11

      B.    Defendant Fails to Raise Any Substantial Question as
            to the Causation Standard for His Offense of
            Conviction...........................................13

            1.    The Court's Instruction on Causation Correctly
                  Included Both Cause-in-Fact and Proximate Cause
                  and Does Not Raise Any Substantial Question on
                  Appeal.........................................13

            2.    The Court's Denial of Defendant's Motion to
                  Dismiss Was Correct and Does Not Raise Any
                  Substantial Question on Appeal.................21

      C.    Defendant Fails to Establish That His Appeal Is Not
            For the Purpose of Delay.............................23

V.    DEFENDANT ALSO HAS NOT ESTABLISHED BY CLEAR AND CONVINCING
      EVIDENCE THAT HE IS NOT LIKELY TO FLEE......................24

VI.   CONCLUSION..................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Burrage v. United States,
   571 U.S. 204 (2014) ......................................... passim

Carter v. United States,
   530 U.S. 255 (2000) .............................................. 8

Chapman v. California,
   386 U.S. 18 (1967) ............................................. 13

Hopper v. Evans,
   456 U.S. 605 (1982) ........................................... 13

Miller v. Gammie,
   335 F.3d 889 (9th Cir. 2003) .................................. 20

Park v. Thompson,
   851 F.3d 910 (9th Cir. 2017) .................................. 19

Paroline v. United States,
   575 U.S. 434 (2014) ....................................... 15, 19

Richards v. County of San Bernardino,
   39 F.4th 562 (9th Cir. 2022) .................................. 15

Sansone v. United States,
   380 U.S. 343 (1965) ........................................... 13

Schmuck v. United States,
   489 U.S. 705 (1989) ....................................... 8, 9, 11

United States v. Arnt,
   474 F.3d 1159 (9th Cir. 2007) ............................. 11, 12

United States v. George,
   949 F.3d 1181 (9th Cir. 2020) ............................. 16, 21

United States v. Gerald N.,
   900 F.2d 189 (9th Cir. 1990) .................................. 6

United States v. Handy,
   761 F.2d 1279 (9th Cir. 1985) ........................... passim

United States v. Hernandez,
   476 F.3d 791 (9th Cir. 2007) .................................. 10

United States v. Houston,
    406 F.3d 1121 (9th Cir. 2005) ................................... 18

United States v. Jeffries,
    958 F.3d 517 (6th Cir. 2020) ................................... 19

United States v. Knowles,
    4 Sawy. 517 (N.D. Cal. 1864) ................................... 20

United States v. Lischewski,
    860 F. App'x 512 (9th Cir. 2021) ............................... 21

United States v. Main,
    113 F.3d 1046 (9th Cir. 1997) ............................. passim

United States v. Mechanik,
    475 U.S. 66 (1986) ......................................... 22, 23

United States v. Meckling,
    141 F. Supp. 608 (D. Md. 1956) ............................... 4, 20

United States v. Medina-Suarez,
    30 F.4th 816 (9th Cir. 2022) .......................... 8, 9, 10, 13

United States v. Miller,
    753 F.2d 19 (3d Cir. 1985) ..................................... 5, 6

United States v. Pineda-Doval,
    614 F.3d 1019 (9th Cir. 2010) ................................... 19

United States v. Rodriguez,
    766 F.3d 970 (9th Cir. 2014) ................................... 14

United States v. Rodriguez,
    971 F.3d 1005 (9th Cir. 2020) ................................... 19

United States v. Shoffner,
    791 F.2d 586 (7th Cir. 1986) ................................... 24

United States v. Spinney,
    795 F.2d 1410 (9th Cir. 1986) ................................... 16

United States v. Young,
    720 F. App'x 846 (9th Cir. 2017) ............................... 19

**Statutes**

18 U.S.C. § 1112 ............................................... passim

18 U.S.C. § 1115 ............................................... passim

18 U.S.C. § 3143(b) .............................................. passim

21 U.S.C. § 841(b)(1) ............................................... 18

46 U.S.C. § 2302(b) .............................................. passim

**Other Authorities**

Wayne R. LaFave, 1 Subst. Crim. L. § 6.4(b) (3d ed.) ............... 16

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3    Defendant JERRY NEHL BOYLAN was convicted and sentenced to four

4    years in prison for causing the deaths of 34 innocent people aboard

5    the *Conception* on September 2, 2019.  Since his initial indictment in

6    December 2020, defendant has sought to continue and delay the

7    proceedings time and time again.  This Court sentenced defendant to

8    imprisonment and ordered him to surrender on August 8, 2024, and he

9    must now serve that prison sentence.  There are no legitimate grounds

10   for further delay.

11   The Bail Reform Act recognizes this very point, setting the

12   presumption at this stage that detention is <u>mandatory</u> and shifting

13   the burden to defendant to prove that he is entitled to release

14   pending appeal.  Among other things, defendant must establish "by

15   clear and convincing evidence that [he] is not likely to flee" <u>and</u>

16   that his "appeal is not for the purpose of delay and raises a

17   substantial question of law or fact likely to result in . . .

18   reversal [or] . . . a new trial."  18 U.S.C. § 3143(b)(1).

19   Defendant fails to meet either of these burdens in his Motion

20   for Bond Pending Appeal (the "Motion" or "Mot.").  As to raising a

21   "substantial question," defendant points to two alleged errors he

22   claims satisfy this burden: (1) the Court's formulation of the

23   lesser-included offense instruction; and (2) the lack of a "but-for"

24   cause standard in the Court's instruction on causation.  Neither of

25   these issues presents a substantial question of law or fact likely to

26   result in reversal or a new trial.

27   First, as the Court correctly found in denying defendant's

28   motion for a new trial, the lesser crime instruction should never have

been given in the first place.  However, defendant completely fails to acknowledge the import of the Court's ruling and does not address whatsoever the dispositive "elements test" at step one of the two-part test governing the applicability of a lesser-included offense instruction.  The defense skips over the first step of the test because it cannot get past it.  Accordingly, no further analysis of the issue is warranted nor necessary, though defendant's claim fails at step two as well.  The defense's obfuscation of the central issues in play, including through pretending as if step one does not exist, is not a substitute for raising a substantial question on appeal.

Second, the Court correctly found that "but-for" cause is not a component of causation for involuntary manslaughter nor Seaman's Manslaughter.  The causation standard in the jury instructions at trial tracked, verbatim, the standard set forth in the Ninth Circuit's binding opinion in United States v. Main, 113 F.3d 1046 (9th Cir. 1997).  That standard included both cause-in-fact (also referred to as actual cause) and proximate (or legal) cause components.  Defendant's proposed "but-for" cause requirement was superfluous and contrary to governing law.  Whether cast as an alleged error in the jury instructions or in the Court's denial of his eleventh-hour motion to dismiss, defendant's causation arguments are without merit and do not raise any substantial question likely to result in reversal or a new trial.

Defendant also fails to satisfy his burden of demonstrating his appeal is not for purposes of delay and that he is not likely to flee during an appeal he posits will take an "unusual amount of time."

For all these reasons, defendant falls far short of meeting the requirements for bail pending appeal.  The Court should deny his Motion.

1   **II.   RELEVANT BACKGROUND**

2       **A.   Indictment and Trial**

3       On October 18, 2022, defendant was indicted on one count of

4  misconduct or neglect of ship officer (commonly referred to as

5  Seaman's Manslaughter), in violation of 18 U.S.C. § 1115, for causing

6  the deaths of the 34 victims aboard the *Conception* on September 2,

7  2019.[1]  (Dkt. No. 1.)

8       On Saturday, October 21, 2023, less than three days before trial

9  commenced (and three months after the deadline for dispositive

10  pretrial motions had passed, Dkt. No. 52), the defense filed a motion

11  to dismiss the indictment premised on the government's purported

12  failure to allege but-for causation, which the government opposed.

13  (Dkt. Nos. 261, 270.)  The Court denied the motion on the first day

14  of trial, relying on the causation standard for involuntary

15  manslaughter set forth in the Ninth Circuit's Model Criminal Jury

16  Instructions and corresponding binding case law.  (Dkt. No. 359

17  (10/24/23 Trial Tr.) at 9:11-11:23.)

18       Then, at 9:27 p.m. on November 2, 2023, the night before closing

19  arguments, the defense filed a request for a proposed jury instruction

20  on the purported lesser-included misdemeanor offense of 46 U.S.C.

21  § 2302(b) (titled "Penalties for negligent operations and interfering

22  with safe operation").  (Dkt. No. 312.)  The defense had not raised

23  this potential issue at any point earlier in the case.  (Dkt. No. 371

24  (11/3/23 Trial Tr.) at 62:6-63:9.)  Having virtually no time to

25

26  ───────────────

27      [1] Defendant initially was indicted on December 1, 2020, in Case
Number 20-CR-600-GW.  The Court dismissed that case upon defendant's
motion asserting that the gross negligence standard applicable to

28  involuntary manslaughter under 18 U.S.C. § 1112 should be applied to
18 U.S.C. § 1115 as well.  (Case No. 20-CR-600-GW, Dkt. Nos. 63, 79.)

consider the law relied upon by the defense (much less any briefing

from the government regarding this critical issue), the Court acceded

to the defense's last-minute request.[2]   (Dkt. No. 421 at 1.)   The

Court included a lesser crime instruction in the final jury

instructions, with the exception that the purported lesser crime did

not encompass defendant's failure to maintain a roving patrol.   (Dkt.

No. 320 at 5; see also Dkt. No. 371 at 91:7-9.)

On November 6, 2023, following one day of deliberations, the

jury returned a verdict of guilty as to defendant's violation of 18

U.S.C. § 1115.   (Dkt. No. 330.)   The jury did not make any finding as

to the proposed lesser-included offense.   (Id.)

**B.   Post-Trial Motions**

Defendant filed two post-trial Rule 33 motions for a new trial.

In the first, defendant alleged an error in the lesser-included

offense instruction, specifically with respect to the exception for

lack of a roving patrol.   (Dkt. No. 387.)   Following full briefing on

the motion (including the government's sur-reply to a new argument

the defense raised for the first time on reply), the Court denied

defendant's motion.   (Dkt. Nos. 421, 425.)   The Court concluded that

it never should have given the instruction in the first place:

> [T]he error [the Court] committed, if any, was in
> instructing the jury as to the lesser-included offense at
> all.  Because the Court now concludes that the jury never
> should have been so instructed . . . any error Defendant
> perceives in the manner of the Court's lesser-included
> instruction is beside the point.

---

[2] Even with only a morning break to review the case law upon
which the defense relied, the Court still identified as "absolutely
false" the defense's misrepresentation that a predecessor statute to
46 U.S.C. § 2302(b) was found to be a lesser-included offense of 18
U.S.C. § 1115 in United States v. Meckling, 141 F. Supp. 608 (D. Md.
1956).  (Dkt. No. 371 at 77:19-78:2.)

4

1    (Dkt. No. 421 at 2.)   The Court also denied defendant's second Rule
2    33 motion premised on an alleged <u>Napue</u> error.   (<u>Id.</u> at 4-9.)

3        **C.   Sentencing, Appeal, and Surrender Date**

4        On May 2, 2024, the Court sentenced defendant to four years in
5    prison and three years of supervised release.   (Dkt. Nos. 442, 443.)

6        Defendant filed a notice of appeal on May 14, 2024.   (Dkt. No.
7    445.)   Notably, the defense informed the Ninth Circuit that the case
8    would be "unusually extended or complex," stating that "[b]ecause the
9    record will be large due to extensive motion practice and lengthy
10   trial, an unusual amount of time will be necessary for review and
11   research."   (9th Cir. Case No. 24-3077, Dkt. Entry 6.1.)

12       On June 12, 2024, the Court granted defendant's <u>ex parte</u>
13   application to continue his surrender date (which the government
14   opposed) and extended defendant's surrender to August 8, 2024.   (Dkt.
15   Nos. 464, 466, 468.)   The Court indicated that it "will not grant any
16   further continuances of [d]efendant's surrender date on the grounds
17   described in the <u>ex parte</u> application."   (Dkt. No. 468.)

18       On July 1, 2024, defendant filed his Motion, seeking to prolong
19   his release once again, this time on bail while his counsel spend "an
20   unusual amount of time" working on his appeal.

21   **III. STANDARD FOR BAIL PENDING APPEAL**

22       In enacting the Bail Reform Act of 1984, Congress intended "to
23   reverse the presumption in favor of bail," <u>United States v. Miller</u>,
24   753 F.2d 19, 22 (3d Cir. 1985), and "to toughen the law with respect
25   to bail pending appeal," <u>United States v. Handy</u>, 761 F.2d 1279, 1283
26   (9th Cir. 1985).   Congress recognized that, "[o]nce a person has been
27   convicted and sentenced to jail, there is absolutely no reason for
28   the law to favor release pending appeal or even permit it in the

                                      5

1  absence of exceptional circumstances."  H. Rep. No. 907, 91st Cong.,

2  2d Sess. 186-87 (1970) (regarding D.C. Code model for bail pending

3  appeal provision in Bail Reform Act of 1984), quoted in Miller, 753

4  F.2d at 22; see also United States v. Gerald N., 900 F.2d 189, 191

5  (9th Cir. 1990) (recognizing that "under the Bail Reform Act of 1984

6  it is no easy matter to obtain bail pending appeal").

7      Thus, under 18 U.S.C. § 3143(b), a defendant who has been found

8  guilty and sentenced to imprisonment is ineligible for bail pending

9  appeal unless: (1) he proves "by clear and convincing evidence that

10  [he] is not likely to flee or pose a danger to the safety of any

11  other person or the community if released"; and (2) his "appeal is

12  not for the purpose of delay and raises a substantial question of law

13  or fact likely to result in (i) reversal, (ii) an order for a new

14  trial, (iii) a sentence that does not include a term of imprisonment,

15  or (iv) a reduced sentence to a term of imprisonment less than the

16  total of the time already served plus the expected duration of the

17  appeal process."[3]  18 U.S.C. § 3143(b)(1).  The defendant bears the

18  burden of satisfying these requirements.  Handy, 761 F.2d at 1283.

19      In Handy, the Ninth Circuit explained that "the word

20  'substantial' defines the level of merit required in the question

21  raised on appeal."  Id. at 1281.  A "substantial question" is one

22  that is "fairly debatable" or "fairly doubtful."  Id. at 1283.

23  Contrary to defendant's assertion, "fairly debatable" does not merely

24  mean the issue is "not frivolous" (Mot. at 5); rather, it "is one of

25  more substance than would be necessary to a finding that it is not

---

[3] Defendant does not raise any challenge to his sentence nor does he assert his term of imprisonment could exceed the duration of his appeal under prongs (iii) or (iv) of the § 3143(b)(1) test.

frivolous." <u>Handy</u>, 761 F.2d at 1283 (emphasis added).  "Fairly debatable" questions include those that are "novel and not readily answerable," or that pose issues "debatable among jurists of reason." <u>Id.</u> at 1281-82 (quotation marks omitted).

As for the nature of the "substantial question" a defendant must raise, "the phrase 'likely to result in reversal' defines the type of question that must be presented." <u>Id.</u> at 1281.  The "substantial question" must be one that is "likely" to result in reversal or a new trial.  18 U.S.C. § 3143(b)(1)(B).  While this standard does not require that reversal be more likely than not, <u>Handy</u>, 761 F.2d at 1281, neither is it so toothless that it eviscerates Congress' intent to "tighten[] the standards for bail pending appeal," <u>id.</u> at 1283.

Neither of defendant's arguments -- that the Court erred in formulating the lesser crime instruction nor that 18 U.S.C. § 1115 includes an element of "but-for" causation -- raises a substantial question meeting the requirements for bail pending appeal.

**IV.  DEFENDANT FAILS TO ESTABLISH THAT HIS APPEAL IS NOT FOR THE PURPOSE OF DELAY AND RAISES A SUBSTANTIAL QUESTION OF LAW OR FACT LIKELY TO RESULT IN REVERSAL OR A NEW TRIAL**

**A.  Defendant Fails to Raise Any Substantial Question as to the Court's Lesser-Included Offense Instruction**

The Court's formulation of the lesser-included offense instruction does not present any substantial question on appeal because, as the Court found upon a full analysis of the issue, the instruction should never have been given in the first place.

Incredibly, defendant ignores the Court's post-trial ruling reaching this conclusion as well as the binding authority upon which it was based.  (Mot. at 10-14.)  Other than a fleeting reference to the Court denying defendant's Rule 33 motion (Mot. at 10), the

1  defense sidesteps the Court's unequivocal finding that, "after

2  briefing and adequate time for consideration . . . [the Court] should

3  not have given a lesser-included instruction in this case."  (Dkt.

4  No. 421 at 4.)  Just as remarkably, the defense completely fails to

5  address the threshold question -- i.e., the "elements test" set forth

6  in Schmuck v. United States, 489 U.S. 705 (1989) -- that makes clear

7  that 46 U.S.C. § 2302(b) is not a lesser-included offense of 18

8  U.S.C. § 1115.  The defense's distorted analysis of the record and

9  the law is frivolous and falls far short of raising any substantial

10  question on appeal.

   1.  A Lesser-Included Offense Instruction Should Not Have
11      Been Given as a Matter of Law

12

13      Defendant's failure to raise a substantial question as to the

14  lesser crime jury instruction issue boils down to first principles.

15  There is a two-part test that governs the applicability of a lesser-

16  included offense instruction, and defendant cannot get past step one.

17      The two-part test requires defendant to establish: "1) the

18  elements of the lesser offense are a subset of the elements of the

19  charged offense; and 2) the evidence would permit a jury rationally

20  to find [the defendant] guilty of the lesser offense and acquit [him]

21  of the greater."  United States v. Medina-Suarez, 30 F.4th 816, 819-

22  20 (9th Cir. 2022) (cleaned up).  For step one, all that is required

23  is a "'textual comparison' of the elements of the[] [two] offenses."

24  Carter v. United States, 530 U.S. 255, 259, 262 (2000) (quoting

25  Schmuck, 489 U.S. at 720).  Because § 2302(b) is not categorically a

26  lesser-included offense of § 1115 based on a textual comparison of

27  their elements, defendant fails the elements test at step one as a

28  matter of law.  (See Dkt. No. 394 at 7-15.)  Defendant thus was not

1    entitled to a lesser crime instruction at trial.

2         The Court correctly denied defendant's Rule 33 motion on this

3    very basis.  The Court explained that "the question of whether a

4    lesser-included offense instruction must be given looks <u>first</u> to

5    whether 'the elements of the lesser offense are a subset of the

6    elements of the charged offense,' meaning that 'it is impossible to

7    commit the greater without first having committed the lesser.'"

8    (Dkt. No. 421 at 2 (first quoting <u>Medina-Suarez</u>, 30 F.4th at 819; and

9    then quoting <u>Schmuck</u>, 489 U.S. at 719) (emphasis in original).)  The

10   Court recognized that "it is clearly <u>possible</u> to commit the greater,

11   Section 1115, offense, without having committed the lesser, Section

12   2302(b)."  (Dkt. No. 421 at 3 (emphasis in original).)  By way of

13   example, the Court observed, "[a]t a minimum, a person need not be

14   'operating a vessel' [as required by 46 U.S.C. § 2302(b)] to be

15   convicted under the plain language of Section 1115."  (<u>Id.</u>)

16   Accordingly, the Court concluded that a "conviction under Section

17   1115 does not require that an individual have also, necessarily,

18   violated Section 2302(b)," such that 46 U.S.C. § 2302(b) is not a

19   lesser-included offense of 18 U.S.C. § 1115.[4]  (<u>Id.</u> at 3-4.)

20        The defense fails to address this threshold and dispositive

21

22        [4] As the government briefed in its Rule 33 opposition and sur-
     reply (which the government incorporate herein by reference), there
23   are other reasons Section 2302(b) is not a lesser-included offense of
     Section 1115.  (<u>See</u> Dkt. Nos. 394, 413.)  Among other things, Section
24   1115 has been interpreted in at least the Fifth and Eleventh Circuits
     as not requiring gross negligence, whereas Section 2302(b) does
25   require it.  Thus, a ship employee could violate Section 1115 through
     simple negligence in those Circuits while not violating Section
26   2302(b).  (Dkt. No. 394 at 14.)  The government acknowledges the
     Court's ruling that gross negligence is an element of Section 1115,
27   but points out here that, at least in other Circuits, there is yet
     another incongruity between the elements of the offenses that
28   precludes a finding that Section 2302(b) is a lesser-included offense
     of Section 1115 as a matter of law.

                                     9

1    issue in any way: it does not acknowledge the reasoning underlying

2    the Court's denial of its Rule 33 motion; it does not confront the

3    elemental distinctions that categorically preclude a finding that

4    Section 2302(b) is a lesser-included offense of Section 1115; it does

5    not engage in any analysis of the step one elements test whatsoever.

6         The defense instead refers to the <u>Schmuck</u> elements test in

7    passing, but then immediately and misleadingly claims that "[a]t

8    trial, the Court <u>correctly</u> concluded that 46 U.S.C. § 2302(b) is a

9    lesser included offense of 18 U.S.C. § 1115." (Mot. at 11 (emphasis

10   added).)  What the defense fails to mention is that, after further

11   briefing and time to thoroughly consider the issues, the Court

12   concluded that it <u>should not have given</u> the lesser crime instruction.

13   (Dkt. No. 421 at 4.)  The defense's failure to acknowledge this point

14   and make <u>any showing whatsoever</u> at step one of the two-part test

15   highlights the hollowness of the "substantial question" it purports

16   to raise.  By entirely sidestepping the issue, the defense presents

17   nothing "fairly debatable" or "fairly doubtful," much less anything

18   "novel and not readily answerable," about the Court's ultimate legal

19   conclusion in its Rule 33 order.  <u>Handy</u>, 761 F.2d at 1281-83.

20        The cases the defense relies upon in its Motion -- albeit after

21   skipping to step two of the analysis -- only further illustrate the

22   fatal flaw in its challenge here.  (Mot. at 10-14).  In each case

23   decided after <u>Schmuck</u>, there was no dispute that the elements test at

24   step one was satisfied.  <u>See Medina-Suarez</u>, 30 F.4th at 820 ("There

25   is no dispute in this case about the first step of the two-part test

26   for lesser-included instructions . . . [I]t is well-established that

27   misdemeanor attempted illegal entry is a lesser-included offense of

28   felony attempted illegal reentry."); <u>United States v. Hernandez</u>, 476

F.3d 791, 797-98 (9th Cir. 2007) (as to step one, "[t]he government concedes that [] simple possession of methamphetamine, is a lesser included offense of [] possession of methamphetamine with intent to distribute"); United States v. Arnt, 474 F.3d 1159, 1163 (9th Cir. 2007) (as to step one, "[i]t is well established that involuntary manslaughter is a lesser-included offense of murder").  The same cannot be said here.  Section 2302(b) is not a lesser included offense of Section 1115 at step one.  This Court correctly concluded that "the error it committed, if any, was in instructing the jury as to the lesser-included offense at all."  (Dkt. No. 421 at 2.)

Thus, based on the elements test standing alone, the defense fails to raise any substantial question as to the Court's lesser-included offense instruction, which never should have been given.

> ### 2.   The Court's Lesser-Included Offense Instruction Does Not Raise Any Substantial Question on the Facts of This Case in Any Event

Because defendant fails step one, neither this Court nor the Ninth Circuit need proceed any further.[5]  Indeed, the Supreme Court has recognized that the elements test at step one is particularly well-suited to avoiding substantial questions about lesser-included offenses on appeal:  "The objective elements approach . . . promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference."  Schmuck, 489 U.S. at 720-21.

But even if 46 U.S.C. § 2302(b) were a lesser-included offense of 18 U.S.C. § 1115 as a matter of law (it is not), defendant was not

---

[5] This Court correctly denied defendant's Rule 33 challenge to the lesser-included instruction at step one alone.  (Dkt. No. 421.)

entitled to the lesser crime instruction he asked for based on the facts of this case.  Under step two, a lesser-included instruction is still not warranted unless it fits the evidence, a determination the Ninth Circuit reviews for abuse of discretion.  See Arnt, 474 F.3d at 1163 ("The trial judge obviously is better situated than we are to make this factual determination.").

Focusing solely on step two of the two-part test, and in particular, on the carve-out for lack of a roving patrol, the defense contends that a rational jury supposedly could have found his failure to post a roving patrol "endangered the life, limb, or property of a person, but [] did not proximately cause the loss of life in this case." (Mot. at 12 (emphases in original).)  But the Court sensibly rejected this argument at trial.

Based on the evidence, the Court recognized that, with respect to the roving patrol, there was no way for the jury to find "the endangerment element [of Section 2302(b)] without also having found the deaths were caused [under Section 1115]." (Dkt. No. 371 at 90:4-5; see also id. at 90:20-22 ("But the fact that you don't have a roving patrol, you don't catch the fire to begin with, so you can't do anything, so the result is a fait accompli.").)  The only difference between dangerous gross negligence and deadly gross negligence is death -- and here, as the defense acknowledged, there was no dispute that 34 people died.  (Id. at 84:7.)  As the Court further recognized, "[t]here [wa]s no evidence of a fast-starting fire" (Dkt. No. 372 (11/6/23 Trial Tr.) at 51:24-25), and that even if the fire developed in four minutes, as the defense speculated at one point, "it's still an incredible amount of time on that small boat" for a roving patrol to catch a fire (id. at 52:6-10).  Thus,

consistent with the evidence and the Court's reasoning, the "lesser-offense charge [wa]s not proper where, on the evidence presented, the factual issues to be resolved by the jury [we]re the same as to both the lesser and greater offenses." Medina-Suarez, 30 F.4th at 822 (quoting Sansone v. United States, 380 U.S. 343, 349–50 (1965)).[6]

In sum, defendant was not entitled to a lesser-included offense instruction with respect to any aspect of the charge against him, and certainly not the roving patrol based on the evidence at trial. He thus fails to raise any substantial question on appeal to justify his continued release from imprisonment.

**B.   Defendant Fails to Raise Any Substantial Question as to the Causation Standard for His Offense of Conviction**

Defendant's other "substantial question" claim rests on the fundamentally flawed premise that there was a "missing element" (i.e., "but-for" cause) in the jury instructions. (Mot. 4–10.) Defendant is wrong, and he fails to raise any substantial question -- whether as a challenge to the jury instructions or the Court's denial of his last-minute motion to dismiss -- on this issue as well.

**1.   The Court's Instruction on Causation Correctly Included Both Cause-in-Fact and Proximate Cause and Does Not Raise Any Substantial Question on Appeal**

Contrary to defendant's claim, "but-for" cause is neither an

---

[6] The government also briefed defendant's failure to demonstrate error at step two of the two-part test in its Rule 33 opposition. (See Dkt. No. 394 at 15–21.) The government incorporates but does not repeat those arguments here, especially given there is no need for the Court to reach step two of the analysis. Moreover, any purported error in the formulation of the instruction was harmless because it should not have been given in the first place nor did the defense even mention the lesser-included offense during its closing argument. See, e.g., Hopper v. Evans, 456 U.S. 605, 613–614 (1982) (citing Chapman v. California, 386 U.S. 18 (1967), and finding no prejudice from trial court's failure to give lesser-offense charge).

element of the charged offense (18 U.S.C. § 1115) nor of involuntary manslaughter (18 U.S.C. § 1112).  The Court correctly omitted "but-for" cause in its jury instruction on causation.

At trial, the Court followed Ninth Circuit Model Criminal Jury Instruction 16.4 (Manslaughter—Involuntary) in instructing the jury that 18 U.S.C. § 1115 required the government to prove "proximate cause," defined as a cause "that played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the Defendant's misconduct and/or gross negligence."  (Dkt. No. 320 at 4.)  This causation standard comes from United States v. Main, 113 F.3d 1046 (9th Cir. 1997), where the Ninth Circuit reversed an involuntary manslaughter conviction because the trial court's causation standard did not include a proximate cause component.  Id. at 1050.  At the end of its opinion, the Ninth Circuit set forth, verbatim, the causation standard adopted by Model Instruction 16.4 and the Court here.  Id.

Main is still the law.  The Ninth Circuit has discussed and adhered to the proximate cause standard in Main multiple times, including in United States v. Rodriguez, 766 F.3d 970 (9th Cir. 2014), which was decided after Burrage v. United States, 571 U.S. 204 (2014), the case upon which the defense pins its argument.  The Ninth Circuit Model Instruction for involuntary manslaughter also kept the causation standard from Main when it was revised in 2019, five years after Burrage.  And defendant even proposed the proximate cause standard from Main and Model Instruction 16.4 in his proposed jury instructions at trial.  (See Dkt. No. 246 at 20:13-17.)

Defendant contends, however, that the Court erred in not adding the "but-for" causation requirement from Burrage to the "proximate

14

cause" standard from Main in the jury instructions.  (The defense's proposed additional element at trial would have required the government to prove that "the defendant's grossly negligence [sic] act was the actual cause of the deaths of 34 people."  (Dkt. No. 246 at 20.).)  Defendant confuses the issues and fails to meet his burden of raising a substantial question for the following reasons.

First, going back to first principles, "but-for cause" and "actual cause" are not one and the same.  "Actual cause" (also referred to as "cause-in-fact") is one component of causation.[7] Burrage, 571 U.S. at 210.  It has to do with the physical effect of the defendant's conduct, no matter how remote.  "But-for" cause is one type of "actual cause" or "cause-in-fact" that often, but not always, serves this purpose.  See id. at 214 (noting the "undoubted reality that courts have not always required strict but-for causality, even where criminal liability is at issue"); Paroline v. United States, 575 U.S. 434, 458 (2014) ("[T]he availability of alternative causal standards where circumstances warrant is, no less than the but-for test itself as a default, part of the background legal tradition against which Congress has legislated."); Richards v. County of San Bernardino, 39 F.4th 562, 572 (9th Cir. 2022) ("But factual causation is not per se lacking when a showing of but-for causation cannot be made." (citing Paroline and Burrage)).  Although Burrage adopted "but-for" cause in the context of that case, the Supreme Court identified alternative, "less demanding" actual cause standards such as "'substantial' or 'contributing' factor in producing a given result."  Burrage, 571 U.S. at 215; see also Wayne

_____

[7] Burrage uses "actual cause" and Main "cause in fact," but as defendant acknowledges, they are the same. (Mot. at 5, 7.)

R. LaFave, 1 Subst. Crim. L. § 6.4(b) (3d ed.) (recognizing in some cases "the test for causation-in-fact is more accurately worded, not in terms of but-for cause, but rather: Was the defendant's conduct a substantial factor in bringing about the forbidden result?") (emphasis added).

The second component of causation, "proximate cause" or "legal cause," has to do with the foreseeability of the effects, or whether the harm "was within the risk created by the defendant's conduct." Burrage, 571 U.S. at 210; Main, 113 F.3d at 1050. Proximate cause is generally the higher or more demanding standard. See, e.g., United States v. George, 949 F.3d 1181, 1187 (9th Cir. 2020).

Main -- and, consequently, this Court's instruction at trial -- incorporated both "cause-in-fact" and "proximate cause." Main followed United States v. Spinney, 795 F.2d 1410 (9th Cir. 1986), a case upon which defendant correctly relies for the overall causation standard (Mot. at 7), in recognizing that "[c]ausation in criminal law has two requirements: cause in fact and proximate cause." Main, 113 F.3d at 1050 (quoting Spinney, 795 F.2d at 1415). Spinney had analyzed cause-in-fact as whether the charged conduct was "a substantial factor in causing [the victim's] death."[8] Spinney, 795 F.2d at 1415 (emphasis added).

The Ninth Circuit in Main adopted the principles of Spinney (as well as other legal authorities) in formulating the causation standard for involuntary manslaughter, ultimately set out in Model Instruction 16.4. Main, 113 F.3d at 1050. Consistent with Spinney, the Main court expressed the cause-in-fact component as the charged

---

[8] Spinney also considered "but-for" cause as an alternative basis for satisfying the cause-in-fact component. Spinney, 795 F.2d at 1415.

1    conduct "play[ing] a <u>substantial part</u> in bringing about the death."

2    <u>Id.</u> (emphasis added).  Thus, this Court's jury instruction for

3    causation, based on <u>Main</u> and Model Instruction 16.4, included <u>both</u>

4    cause-in-fact (<u>i.e.</u>, actual cause) and proximate cause:

> Third, the Defendant's misconduct and/or gross negligence
> was the proximate cause of the death of a person on board
> the vessel.  A proximate cause is one that played a
> <u>substantial part</u> **[cause-in-fact]** in bringing about the
> death, so that the death was the direct result or a
> <u>reasonably probable consequence</u> of the Defendant's
> misconduct and/or gross negligence **[proximate cause]**.

9    (Dkt. No. 320 at 4 (emphases added).) [9]

10       <u>Second</u>, defendant misapprehends (or inexplicably ignores) that

11   the <u>Main</u> proximate cause standard incorporates the cause-in-fact

12   requirement.  The defense's confusion appears to stem from its

13   misleading use of "but-for" and "actual" cause interchangeably, as if

14   they are the same thing.  (<u>See, e.g.</u>, Mot. at 5 ("if a person is

15   charged with causing a certain result, then actual or but-for causation

16   is a necessary predicate"); <u>id.</u> at 7 ("[<u>Main</u>] noted that causation

17   generally involves both proximate and but-for cause" [in reality, <u>Main</u>

18   discussed "cause in fact"].)  As illustrated above, they are not.

19       The practical impact of the defense's error is that it wrongly

20   claims, multiple times, that "the defense was held back by the fact

21   that the government was only required to prove proximate causation."

22   (Mot. at 9; <u>see also</u> Mot. at 6 ("the government would simply limit

23   [the causation requirement] to proximate cause"); <u>id.</u> at 9 ("only

24   proximate cause was instructed").)  In fact, the government was

25

26   _____

27       [9] Although the defense may quibble with <u>Main</u>'s and the Court's
     instruction's use of the term "proximate cause" to cover both cause-
     in-fact and proximate cause, any such claim is purely semantical and
28   does not change the fact that the jury was properly instructed on --
     and the government had to prove -- both components of causation.

required to prove both cause-in-fact (_i.e._, actual cause) and proximate cause.  This central faulty premise -- whether intended or not -- infects the entirety of the defense's "but-for cause" argument; its purported "substantial question" is based on an alternate reality that does not exist.

Third, nothing in _Burrage_ calls into question the holding in _Main_ nor justifies adding a third, superfluous causation element for involuntary manslaughter or Seaman's Manslaughter.  _Burrage_ held that, under the drug-distribution-resulting-in-death context, "actual cause" required "strict but-for causality," but, as previously noted, acknowledged that this is "not _always_ required."  571 U.S. at 214 (emphasis in original).  Importantly, _Burrage_ made clear that context matters in assessing the appropriate causation standard, both as to "textual or contextual" indicators from the charged crime.  _Id._ at 212.  _Burrage_ interpreted the language "results from" under 21 U.S.C. § 841(b)(1), as well as closely related terms, none of which are found in 18 U.S.C. §§ 1112 or 1115.  _Id._ at 212-14.  _Burrage_ also scoped the issue presented and limited its holding within the specific context of death-resulting charges under the Controlled Substances Act.  _See id._ at 210, 218-19.

The context here makes it perfectly sensical to apply a lower cause-in-fact standard as to involuntary manslaughter, as the Ninth Circuit determined in _Main_.  _Burrage_ involved a different statutory context, dealing with an intentional and inherently illegal act (drug distribution) rather than a broader negligence or gross negligence standard.  And the higher "but-for" standard for actual cause in _Burrage_ also makes sense given that, in the death-resulting-drug-distribution context, there is no reasonable foreseeability requirement.  _See United_

18

States v. Houston, 406 F.3d 1121, 1123 (9th Cir. 2005).[10]  Here, by contrast, there is such a proximate cause requirement ("reasonably probable consequence"), so it makes sense that, under Main, the standard for the other component, actual cause, is correspondingly lower.  The Supreme Court in Paroline (after Burrage) recognized the wisdom of this approach:  "It would be unacceptable to adopt a causal standard so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition demands such an approach."  Paroline, 575 U.S. at 458.[11]

Fourth, since Burrage, the Ninth Circuit has addressed claims in other contexts contending that Burrage purportedly altered causation standards more broadly.  The Ninth Circuit has rejected these types of claims and maintained focus on the context at issue.  See, e.g., United States v. Rodriguez, 971 F.3d 1005, 1010 (9th Cir. 2020) (rejecting Burrage claim in VICAR context where the "two cases grappled with entirely distinct statutes, in an analytic exercise that is heavily dependent on context"); United States v. Young, 720 F. App'x 846, 850 (9th Cir. 2017) ("Burrage's interpretation of the causation element in the Controlled Substances Act is not obviously applicable in the VICAR context"); Park v. Thompson, 851 F.3d 910,

---

[10] While Burrage declined to address whether the death-resulting-drug-distribution context requires a showing of proximate cause, "every circuit [court] to address the question (before and after Burrage) holds that the penalty enhancement does not require proof of proximate causation."  United States v. Jeffries, 958 F.3d 517, 520 (6th Cir. 2020) (collecting cases).

[11] Defendant's reliance on United States v. Pineda-Doval, 614 F.3d 1019 (9th Cir. 2010) for applying but-for cause is similarly distinguishable and irrelevant, as that case involved the intentional crime of transportation of illegal aliens resulting in death.  (Mot. at 6.)  In any event, Pineda-Doval only reaffirmed Main as binding authority, following Main in applying a proximate cause standard.  Pineda-Doval, 614 F.3d at 1026-28 (relying on Main, 113 F.3d at 1050).

922 n.12 (9th Cir. 2017) ("Burrage did not provide a causation standard for [Sixth Amendment] compulsory process claims.").

The same holds true here.  Burrage is not applicable to the involuntary manslaughter nor the Seaman's Manslaughter contexts.[12] Even defendant concedes that Burrage is not "clearly irreconcilable" with Main.  (Mot. at 7 (applying Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003)).  The defense thus acknowledges, perhaps unwittingly, that Main is still binding authority such that there is no substantial question as to the continuing vitality of Main as the governing causation standard here.

Finally, the two out-of-district and out-of-century cases the defense cites for the claim that "courts have read a but-for causation requirement into the seaman's manslaughter statute" fare no better. (Mot. at 6.)  The district court case from 1864 does not directly address 18 U.S.C. § 1115 nor does it appear to reflect anything more than a scripted jury charge with virtually no discussion of legal authority or anything of precedential value.  See United States v. Knowles, 4 Sawy. 517 (N.D. Cal. 1864).  The more recent case, from 1956, does not appear to support the claim above nor does it discuss "but-for" cause or any apparent equivalent.  See United States v. Meckling, 141 F. Supp. 608 (D. Md. 1956).  Neither case provides any support for upending modern causation jurisprudence, especially as applicable to involuntary manslaughter, which the defense has, from the outset, advocated as the appropriate source of law in this case.

---

[12] This Court similarly declined to import causation standards from outside the involuntary manslaughter context at trial:  "But as I have indicated, I'm going to be utilizing the causation requirement from involuntary manslaughter, not the ones for, like some other crime."  (Dkt. No. 369 (11/1/23 Trial Tr.) at 112:7-9.)

1                          *    *    *

2       Defendant's challenge to the causation jury instruction is steeped

3  in confusion and misdirection.  Asserting that "[t]here is no Ninth

4  Circuit caselaw stating that but-for cause is not required" (Mot. at

5  7), the defense lays bare in this single pronouncement the two-fold

6  frivolousness of its claim: it wrongly conflates "but-for" and "actual"

7  cause, and it fails to grasp that <u>Main</u> has directly spoken to this

8  issue.  As with its lesser-included offense challenge, the defense's

9  obfuscation does not create a "fairly debatable" substantial

10 question, much less one likely to result in reversal or a new trial.[13]

11             2.   <u>The Court's Denial of Defendant's Motion to Dismiss
                    Was Correct and Does Not Raise Any Substantial</u>
12                  <u>Question on Appeal</u>

13      With the above analysis in mind, the disposal of defendant's

14 challenge to the Court's denial of his last-minute motion to dismiss

15 the indictment is straightforward.

16      Defendant's second motion to dismiss (Dkt. No. 261) -- his fifth

17 overall between this and the initial case -- was premised solely on

18 an alleged "deficiency in the grand jury proceedings" due to the lack

19 of a "but-for" cause instruction.[14]  (<u>Id.</u>; Mot. at 4.)  As explained

20  _____

21      [13] Given that the Court's causation instruction <u>did</u> include a
    cause-in-fact/actual cause component (just not articulated as "but
22  for" cause), and in consideration of the uncontroverted evidence at
    trial that, among other things, defendant did not post a night watch
23  and the fire started slowly such that a roving patrol would have
    caught it, any possible error in the causation instruction is
    harmless beyond a reasonable doubt.  <u>United States v. Lischewski</u>, 860
24  F. App'x 512, 514-15 (9th Cir. 2021).  Moreover, the defense focuses
    on "proximate cause [being] fiercely disputed at trial" (Mot. at 12),
25  and there is no dispute that the jury was correctly instructed on the
    proximate cause component, which is the more demanding causation
26  standard.  <u>See</u> <u>George</u>, 949 F.3d at 1187.

27      [14] The defense once again selectively quotes language taken out
    of context from the government's objections to the defense's proposed
28  jury instructions (Dkt. No. 246), asserting incorrectly that the
                                         <i>(footnote cont'd on next page)</i>

above and further in the government's opposition to defendant's motion to dismiss (Dkt. No. 270), which the government incorporates herein by reference, because "but-for" cause is not an element of 18 U.S.C. § 1112 nor 18 U.S.C. § 1115, there could not have been any alleged "error in the grand jury proceedings." (Mot. at 8.) The defense concedes as much, acknowledging that its dismissal claim potentially holds water only "so long as the Court agrees that but-for causation is an element of Section 1115." (Id.) It is not. Thus, defendant does not and cannot raise a substantial question on appeal.

In addition, "[a] grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." United States v. Mechanik, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring). The defense proceeds solely upon pure conjecture as to how the grand jury was instructed and what actually occurred during grand jury proceedings, which is insufficient to overcome this presumption of regularity. Moreover, if incorrect legal instructions are inadvertently given during grand jury proceedings (they were not), a subsequent conviction by a petit jury, as was the case here, cures any initial defect by demonstrating that the error was

---

government made a "concession" or "pretrial admission that it could not prove but-for causation." (Mot. at 4, 8, 8 n.1, 9.) In fact, as the government explained more fully in its opposition to defendant's motion to dismiss (Dkt. No. 270 at 8-9), the government highlighted the defense's gamesmanship in not filing its motion much earlier and merely characterized the argument the defense presumably should have made earlier: "a motion to dismiss the indictment because the government did not allege nor can it prove 'actual cause' in this case." (Dkt. No. 246 at 21 (emphasis added).) The government did not make any "concessions." In any event, as explained herein, the government could and did prove "actual cause" (i.e., cause-in-fact), which was appropriately included in the Court's instruction from Main.

harmless.[15]   See Mechanik, 475 U.S. at 72–73.

The defense thus fails to raise a substantial question as to the Court's denial of his motion to dismiss as well.

### C. Defendant Fails to Establish That His Appeal Is Not For the Purpose of Delay

Aside from a conclusory assertion (Mot. at 3), defendant makes no effort to demonstrate that his appeal is not for the purpose of delay, as 18 U.S.C. § 3143(b)(1)(B) requires.  The Ninth Circuit interprets this requirement as separate from raising a substantial question on appeal.  See Handy, 761 F.2d at 1283.  The hollowness of defendant's two alleged "substantial questions" -- one that wholly ignores an entire step of a required dispositive test, and another that mires itself in confusion about the governing principles of causation -- further underscores that delay motivates defendant's appeal and his application for bail here.  So too do the countless continuances defendant sought (over the government's repeated objections) during both the initial case and the instant proceeding. And defense counsel's most recent representation that the appeal will take "an unusual amount of time" highlights that (further) delay is exactly what defendant hopes to achieve through his Motion.

---

[15] Defendant's last-minute motion to dismiss, more than three months past the Rule 12 motions deadline, also was untimely.  From the outset of the initial case, the defense looked to 18 U.S.C. § 1112 for the appropriate legal standards governing Seaman's Manslaughter, successfully obtaining dismissal of the first case on this basis.  The defense had ready access to Ninth Circuit Model Criminal Jury Instruction 16.4, which clearly set forth the causation standard for involuntary manslaughter and cited to Main for the appropriate standard.  Thus, the defense had all it needed to raise a Rule 12 challenge to alleged deficiencies in the applicable causation standard relied on by the government, but it waited until less than three days before trial to file the motion.  The defense's claim should be rejected for this reason as well.

23

For these reasons, it is reasonable for the Court to infer that defendant is attempting to avoid as long as possible the service of his sentence.  However, delay is no longer appropriate.  In enacting the Bail Reform Act, Congress made a clear policy choice that bail pending appeal should be confined to a limited few:

> Congress' desire to reverse what it perceived as a "presumption in favor of bail even after conviction" under prior bail law demonstrates its recognition that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit. Some showing is therefore necessary to assume [sic] that post-conviction bail is confined to those who are among the more promising candidates for ultimate exoneration.

United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986).  The defense has not made the required showing here.

## V.    DEFENDANT ALSO HAS NOT ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT HE IS NOT LIKELY TO FLEE

Defendant also makes a meager showing that he is "not likely to flee," 18 U.S.C. § 3143(b)(1)(A), despite the burden being his to do so on clear and convincing evidence.  Handy, 761 F.2d at 1283.

The defense points to defendant's lifelong residence in the community and his compliance with his conditions of pretrial release (Mot. at 2-3), including that he "has never missed a court appearance" (though the defense fails to acknowledge defendant waived his presence for virtually every court appearance other than arraignment, trial, and sentencing).  But, for the lion's share of his time on pretrial release, defendant had yet to stand trial, be found guilty, and be sentenced to four years in prison.

As described in the Presentence Investigation Report, defendant has virtually no family ties in Southern California nor does he own any property or anything else tying him down to the area.  (Dkt. No.

24

437, ¶¶ 90-94, 107.)  He lives in a mobile home that he apparently leases though he has not made any payments on it since 2019.  (Id. ¶ 111.)  And while he does not have a passport, he is a seasoned boat captain with more than 30 years of experience on the high seas.  Moreover, given the health issues defendant put forth at sentencing and in moving to continue his surrender date, defendant has genuine incentives to avoid voluntarily reporting to prison for four years.

The defense fails to demonstrate by clear and convincing evidence why defendant would not simply abscond instead of serving some of the final years of his life in prison.  The calculus for not fleeing has changed significantly from before trial and sentencing, a fact the Bail Reform Act recognizes in shifting the burden to the defendant post-conviction and pending appeal.[16]  And, as the defense's promised "unusually extended" appeal potentially unfolds over years, the incentives pendulum will only swing further in the direction of defendant not remaining in the jurisdiction to serve his sentence.

Defendant cannot meet his burden of proving by clear and convincing evidence that he is not a flight risk.  The Court thus should deny defendant's Motion for this reason as well.

**VI.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion for Bond Pending Appeal.

---

[16] Even assuming defendant has remained in the jurisdiction since his sentencing (the government does not know one way or the other), that was for a period of approximately three months, as opposed to the period of years likely to pass until defendant's appeal is resolved.  The prolonged period of appeal would allow defendant significantly more time and opportunity to flee.